GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
Ballon@gtlaw.com
NINA D. BOYAJIAN (SBN 246415)
BoyajianN@gtlaw.com
JULIANNA M. SIMON (SBN 307664)
simonju@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendant AJ Press LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUNCHBOWL, INC., a Delaware corporation<br><br>      Plaintiff,<br><br>v.<br><br>AJ PRESS LLC, a Delaware limited liability company,<br><br>      Defendant. | CASE NO.: 2:21-cv-03010-SVW-MAR<br><br>**DEFENDANT AJ PRESS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: June 14, 2021<br>Time: 1:30 PM<br>Location: Courtroom 10A, 10th Floor, 350 W. 1st Street, Los Angeles, CA 90012<br>Judge: Hon. Stephen V. Wilson |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on June 14, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson, via zoom, in Courtroom 10A, 10th Floor, 350 W. 1st Street, Los Angeles, CA 90012, Defendant AJ Press LLC ("AJ Press") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing plaintiff Punchbowl, Inc.'s Complaint (Dkt. 1) in its entirety without leave to amend. This Motion is made on the grounds that the Complaint fails to and cannot state a claim for relief under Rule 12(b)(6). Specifically, AJ Press' challenged use of "Punchbowl News" is protected by the First Amendment under the test first set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) because AJ Press' use relates to AJ Press' underlying expressive work, online news publications conveying inside news about people and politics in the *Punchbowl* – the Secret Service nickname for the U.S. Capitol – and AJ Press' use is not explicitly misleading with respect to the source of the content. Therefore, each of Plaintiff's claims are barred.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the Declaration Julianna M. Simon, all pleadings and other records on file in this action, any other matters that may be judicially noticed, and such further evidence and arguments as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 3, 2021.

DATED:                    GREENBERG TRAURIG, LLP

By:  /s/ Ian C. Ballon
       Ian C. Ballon
       Nina D. Boyajian
       Julianna M. Simon
       Attorneys for Defendant AJ Press LLC

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND................................................................2

      A.   Defendant AJ Press and Its News Reporting ...............................2
      B.   Plaintiff's Business and the punchbowl Mark ...............................3
      C.   Plaintiff's Claims...........................................................................5

III.  LEGAL STANDARD ..........................................................................5

IV.   THE FIRST AMENDMENT BARS EACH OF PLAINTIFF'S CLAIMS .............6

      A.   *Rogers* Test Applies to AJ Press' Use of "Punchbowl News" .......7
      B.   AJ Press' Use of "Punchbowl News" Has Artistic Relevance .......8
      C.   AJ Press' Use of "Punchbowl News" Does Not Explicitly Mislead ...........10

           1.   AJ Press Has Not Made an Explicit Indication, Overt Claim, or Affirmative Statement That Plaintiff Endorsed or Was Involved with AJ Press' Online Publication ........................11
           2.   AJ Press and Plaintiff Use "Punchbowl" in Vastly Distinct Ways ....12
           3.   AJ Press Has Added Its Own Expressive Content to the Work Beyond the punchbowl Mark Itself ...................................12

V.    CONCLUSION....................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................5

*Branzburg v. Hayes*,
408 U.S. 665 (1972)................................................................................8

*Brown v. Electronic Arts, Inc.*,
724 F.3d 1235, 1241 (9th Cir. 2013) ........................................*passim*

*Caiz v. Roberts*,
382 F. Supp. 3d 942 (C.D. Cal. 2019), *appeal dismissed*, No. 19-55611,
2019 WL 6331647 (9th Cir. Aug. 30, 2019) ..............................*passim*

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) .....................................................*passim*

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ...................................................*passim*

*Friedman v. MedJet Assistance, LLC*,
No. CV0907585MMMVBKX, 2010 WL 11463109 (C.D. Cal. May 13,
2010) ......................................................................................................6

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018) ...............................................10, 12, 13

*Jackson v. Netflix, Inc.*,
_ F. Supp. 3d _, No. 220CV06354MCSGJS, 2020 WL 8028615 (C.D.
Cal. 2020)........................................................................................7, 8, 9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ...............................................................6

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ....................................................6, 7, 10

*Naimi et al v. Starbucks Corp. et al.*,
No. LACV176484VAPGJSX, 2018 WL 11255596 (C.D. Cal. Feb. 28,
2018) ......................................................................................................6

ii

*New Kids On The Block v. News Am. Pub., Inc.*,
   745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992) ...........8

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013) ....................................................................9

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
   No. CV 18-2260-GW(FFMX), 2018 WL 6566561 (C.D. Cal. Aug. 27,
   2018) ...............................................................................................................7, 9

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ....................................................................1, 6, 11

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
   875 F.3d 1192 (9th Cir. 2017) .........................................................8, 10, 12

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..............................................................5, 6

*VIP Productions LLC v. Jack Daniel's Properties, Inc.*,
   953 F.3d 1170 (9th Cir. 2020) .................................................................7

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
   699 F. App'x 667 (9th Cir. 2017) ............................................................7

**Federal Statutes**

15 U.S.C. § 1114 ...............................................................................................5

15 U.S.C. § 1125(a) ..........................................................................................5

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ..................................................................5, 7

**Rules**

Fed. R. Civ. P. § 12 ........................................................................................1, 7

Fed. R. Civ. P. § 12(b)(6) ..................................................................................5

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks & Unfair
   Competition § 31:144.50 (5th ed.) ................................................................12

*Punchbowl News* ...................................................................................*passim*

www.punchbowl.com .......................................................................................4, 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Punchbowl, Inc. ("Plaintiff"), a company that identifies itself on its website as specializing in online invitations and greeting cards in connection with the mark "punchbowl," seeks to impinge on the First Amendment rights of AJ Press LLC ("AJ Press"), the publisher of *Punchbowl News*, an online news publication centered around inside news about people and politics in the "Punchbowl," or what insiders know to be the Secret Service's term for the U.S. Capitol. *Punchbowl News* is a popular online news publication that provides inside news, newsletters, podcasts, and videos in the fields of government, politics, public policy, and current events. In line with AJ Press' credo – "Power. People. Politics." – AJ Press' online news publication focuses on the people who make decisions in Washington D.C. and the "Punchbowl," and on the news and events that will move political markets. Its website prominently displays the U.S. Capitol – or "Punchbowl" – in an overturned, exposed manner:



Plaintiff claims that AJ Press' use of the name *Punchbowl News* in connection with an online news publication is likely to cause confusion with Plaintiff's goods and services and infringes upon Plaintiff's rights to its punchbowl mark. While Plaintiff's claim that AJ Press' use of *Punchbowl News* is likely to cause confusion with Plaintiff's mark is not plausible, the Court need not reach a decision on the merits of that issue because each of Plaintiff's claims fail as a matter of law because AJ Press' use is protected by the First Amendment under the test first set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Specifically, under the Ninth Circuit's two prong test for resolution on Rule 12 motions, each of Plaintiff's claims are barred because (1) AJ Press' challenged use of "Punchbowl News" is relevant to and suggestive of its underlying expressive work, an online news publication about politics centered on the "Punchbowl" (the U.S. Capitol), and (2) AJ Press' use is not "explicitly misleading" with respect to the source of the content.

1

Allowing Plaintiff's claims to advance would chill the free speech of AJ Press and others who create and distribute expressive works. AJ Press respectfully requests the Court to dismiss with prejudice each of Plaintiff's claims because Plaintiff cannot plead around the First Amendment's bar of its trademark infringement or unfair competition claims.

## II.   FACTUAL BACKGROUND

### A.   Defendant AJ Press and Its News Reporting

AJ Press owns and operates *Punchbowl News*, an online membership-based news publication that provides newsletters, podcasts, and videos in the fields of government, politics, public policy, and current events. Compl. ¶ 19. In line with AJ Press' credo, "Power, People, Politics," AJ Press' online news publication "focus[es] relentlessly on the people in Washington who make decisions, and on the news and events that will move political markets." *See id.* ¶ 20. *Punchbowl News* was founded by journalists and best-selling authors Jake Sherman and Anna Palmer, and co-founded by veteran Capitol Hill reporter John Bresnahan. *See id.* As a publisher of news reporting and commentary on U.S. federal politics and the people, power, and events that shape public policy in the U.S. Capitol, AJ Press and its journalist founders use the name *Punchbowl News* to suggest a connection with the Secret Service's nickname for the United States Capitol building – "Punchbowl." *Id.* AJ Press provides explicit information about its founders and the suggested meaning of the term "punchbowl" on the homepage of its website, as shown below. *Id.*; Declaration of Julianna M. Simon, Ex. A.

**WHAT IS PUNCHBOWL NEWS?**



**PUNCHBOWL NEWS** is a membership-based news community founded by journalists and best-selling authors JAKE SHERMAN and ANNA PALMER, and co-founded by veteran Capitol Hill reporter JOHN BRESNAHAN. Punchbowl is the Secret Service nickname for the Capitol. Our credo is Power, People, Politics. We'll focus relentlessly on the people in Washington who make decisions, and on the news and events that will move political markets. Punchbowl News events will bring you closer to the news, and help you better understand Washington's leadership. Join the community today.

In addition to explicitly stating that "Punchbowl" is evocative of the U.S. Capitol, AJ Press emphasizes the suggested meaning of Punchbowl News by displaying its logo, depicting an overturned Capitol building, and credo throughout its website, as shown below. Compl. ¶ 20; Declaration of Julianna M. Simon, Ex. A.



Plaintiff does not allege that AJ Press refers to Plaintiff in its news reporting, on its website, or otherwise. Nor does Plaintiff allege that AJ Press has ever used the name *Punchbowl News* or any punchbowl-formative mark or term in connection with greeting cards, information about vendors, and other party planning services (nor could it do so).

**B.**     **Plaintiff's Business and the punchbowl Mark**

Plaintiff owns and operates punchbowl, an online platform that provides greeting cards, online invitations, information about vendors, and other party planning services and

3

uses the mark punchbowl in connection with those services. Compl. ¶¶ 9, 12-14.[1] Plaintiff advertises and promotes the punchbowl mark in various media, including its website www.punchbowl.com (*id.* ¶ 12), and markets itself as being "The Gold Standard in Online Invitations & Greeting Cards." Declaration of Julianna M. Simon, Ex. B.



Plaintiff frequently displays its logo, a ladle, with its punchbowl mark, as shown below. Compl. ¶ 21.



Plaintiff owns U.S. Trademark Registration 4,341,102 for the punchbowl mark in connection with its greeting cards, online invitations, information about venders, and other party planning services. Compl. ¶ 14. Plaintiff does not allege that it engages in any activity

---

[1]   Plaintiff describes itself as an "online communication service" in a transparent attempt to blur the obvious distinction between the greeting card and party-based services it provides with the politics-based online news publication AJ Press provides. *See id.* ¶ 18

related to news reporting nor the fields of government, politics, public policy, or current events. *See id.* Nor does Plaintiff have a trademark registration for goods or services in news reporting or the fields of government, politics, public policy, or current events. *See id.*

### C.   Plaintiff's Claims

Plaintiff asserts claims against AJ Press for (1) federal trademark infringement under 15 U.S.C. § 1114, (2) federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a), (3) common law trademark infringement, unfair competition, and passing off, and (4) violations of California unfair competition law under Cal. Bus. & Prof. Code § 17200 arising from AJ Press' use of *Punchbowl News*, Punchbowl Press, and other alleged uses of the term "punchbowl." Compl. ¶¶ 30-58.

## III.   LEGAL STANDARD

To state a valid claim for relief, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id.* quoting *Twombly*, 550 U.S. at 555. Nor need it accept as true unreasonable inferences or conclusory legal allegations. *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document may be incorporated by reference into a complaint if the plaintiff refers to the document or the document forms a basis of the plaintiff's claim. *Id.* Where a plaintiff includes in its allegations a screenshot from a webpage, the full context from which a screenshot or webpage was taken and included in a pleading may be incorporated by

reference. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (considering webpage incorporated by reference where additional portions of website were relevant to and incorporated by the plaintiffs' allegations); *Naimi et al v. Starbucks Corp. et al.*, No. LACV176484VAPGJSX, 2018 WL 11255596, at *3 (C.D. Cal. Feb. 28, 2018); *Friedman v. MedJet Assistance, LLC*, No. CV0907585MMMVBKX, 2010 WL 11463109, at *4 (C.D. Cal. May 13, 2010).

Plaintiff incorporated by reference into the Complaint its website and AJ Press' website. Plaintiff asserts various allegations regarding its promotion of the punchbowl mark online, including on its website, www.punchbowl.com. Compl. ¶¶ 11-12. Plaintiff also asserts allegations regarding AJ Press' use of *Punchbowl News* on AJ Press' website and even includes a screenshot of AJ Press' website, and the URL of the webpage from which it took the screenshot, in the Complaint. *See id.* ¶¶ 19-21. Because Plaintiff extensively refers to AJ Press' website and includes a screenshot of AJ Press website, the website is incorporated by reference. *Ritchie*, 342 F.3d at 908. Likewise, because Plaintiff extensively references its online marketing and refers to its website, AJ Press' website is also incorporated by reference. *Id.* Accordingly, in deciding this motion, the Court may consider printouts of AJ Press' website and Plaintiff's website, which are attached to the Declaration of Julianna M. Simon as Exhibits A and B, respectively.

**IV.**   **THE FIRST AMENDMENT BARS EACH OF PLAINTIFF'S CLAIMS**

AJ Press' use of *Punchbowl News* is protected by the First Amendment under the test first set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and subsequently adopted by the Ninth Circuit in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002). The *Rogers* court warned that the "overextension" of Lanham Act restrictions "might intrude on First Amendment values," and concluded that expressive works required "more protection than the labeling of ordinary commercial products." *Id*. at 998. Under the *Rogers* test, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable '[1] unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, [2] if it has some artistic relevance, unless it explicitly misleads as to the

source or the content of the work.'" *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (alterations omitted) (quoting *MCA*, 296 F.3d at 902). "Neither of these prongs is easy to meet." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020), *quoting VIP Productions LLC v. Jack Daniel's Properties, Inc*., 953 F.3d 1170, 1174 (9th Cir. 2020). The *Rogers* test also applies to claims for common law trademark infringement, unfair competition, and violations of California unfair competition law under Cal. Bus. & Prof. Code § 17200. *See, e.g. MCA*, 296 F.3d at 901 & n.2 (holding that defendants' successful assertion of a First Amendment defense entitled them to summary judgment on plaintiff's Lanham Act claim and on state law claims for unfair competition*); E.S.S*, 547 F.3d at 1101 ("Since the First Amendment defense applies equally to [defendant's] state law claims as to its Lanham Act claim, the district court properly dismissed the entire case . . ."); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. CV 18-2260-GW(FFMX), 2018 WL 6566561, at *6 (C.D. Cal. Aug. 27, 2018); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 953 (C.D. Cal. 2019), *appeal dismissed*, No. 19-55611, 2019 WL 6331647 (9th Cir. Aug. 30, 2019).

## A.   *Rogers* Test Applies to AJ Press' Use of "Punchbowl News"

The Ninth Circuit often applies *Rogers* to trademark infringement and unfair competition claims at the motion to dismiss phase. *Jackson v. Netflix, Inc.*, _ F. Supp. 3d _, No. 220CV06354MCSGJS, 2020 WL 8028615, *3 (C.D. Cal. 2020) (citing *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming Rule 12 dismissal of Lanham Act claims under *Rogers*)); *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013) (same).

The Ninth Circuit has unequivocally held that *Rogers* precludes claims for trademark infringement and unfair competition where, as here, a defendant uses a trademark in connection with an expressive work and the use is not explicitly misleading. *See, e.g. MCA*, 296 F.3d at 902 (use of "Barbie" mark in song title "Barbie Girl"); *E.S.S.*, 547 F.3d at 1099 (holding that a video game creator's use of a strip club's trademark in the video game Grand Theft Auto was protected by the First Amendment); *Dr. Seuss Enterprises, L.P. v.*

*ComicMix LLC,* 983 F.3d 443, 461-63 (9th Cir. 2020) (holding that Dr. Seuss Enterprises did not have a cognizable trademark infringement claim against defendant for defendant's use of *Oh The Places You'll Go!* and related trademarks in *Oh, the Places You'll Boldly Go!,* a book mashup of the Dr. Seuss book with the television series Star Trek despite holding that the work infringed Dr. Seuss's copyrights and was not a fair use under copyright law); *Netflix,* 2020 WL 8028615 (holding that use of trademark TIGER KING as the name of a documentary and in the documentary itself was protected by the First Amendment).

Here, AJ Press' online news publication is indisputably an expressive work. *See New Kids On The Block v. News Am. Pub., Inc.*, 745 F. Supp. 1540, 1544 (C.D. Cal. 1990), *aff'd,* 971 F.2d 302 (9th Cir. 1992) ("Although *Rogers* concerned First Amendment values in the context of artistic expression, the First Amendment plays the same central role regarding news gathering and dissemination") (citing *Branzburg v. Hayes,* 408 U.S. 665, 681 (1972) ("We do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated."). In addition, AJ Press's title for its website and online news service is intimately tied to its creative logo of the U.S. Capitol "Punchbowl" and tagline. For all of these reasons, the *Rogers* test applies.

## B.   AJ Press' Use of "Punchbowl News" Has Artistic Relevance

A use of a mark "may have artistic relevance by linking the work to another mark . . . or it may have artistic relevance by supporting the themes and geographic setting of the work . . . ." *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017). "Reference to another work may be a component of artistic relevance, but it is not a prerequisite." *Id.* The amount of artistic relevance needed to satisfy the first prong of the *Rogers* test is minimal: "the level of relevance merely must be above zero." *E.S.S.*, 547 F.3d at 1100. "Indeed, even the slightest artistic relevance will suffice; courts and juries should not have to engage in extensive artistic analysis." *Caiz*, 382 F. Supp. 3d

at 949 (internal quotations and citation omitted); *see also Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013) (holding that use of the marks at issue "easily met the artistic relevance requirement under *Rogers* because their use [wa]s *not wholly unrelated* to the content of the work.") (emphasis added).

In *Caiz*, plaintiff, a hip-hop artist who owned a trademark registration for the mark MASTERMIND in connection with sound recordings, asserted state and federal trademark infringement and unfair competition claims, among others, against various defendants, including hip-hop artist William Leonard Roberts II ("Roberts"), after Roberts released an album entitled "Mastermind," named his tour "Mastermind," and took on the persona of "Mastermind." 382 F. Supp. 3d at 945. The court held that the title of album was artistically relevant because six of the nineteen songs on the album used the term "mastermind" in the lyrics and because hip-hop artists used the term "mastermind" as part of a larger, abstract theme in which they claim to be masterminds of music. *Id.* at 949.

In *Netflix*, the court held that the tile of Netflix's documentary, "Tiger King: Murder, Mayhem and Madness," which incorporated the plaintiff's mark TIGER KING, and Netflix's use of the phrase "Tiger King" in the documentary, satisfied the "artistic relevance" prong because the documentary chronicled the life and business of Joe Exotic, known publicly as the Tiger King, who starred in a television series named "Joe Exotic Tiger King" and sold products branded "Tiger King." 2020 WL 8028615, at *4; *see also Reflex Media*, 2018 WL 6566561, *6 (holding that use of LOVE AT FIRST FLIGHT for the name of a TV show was artistically relevant to the premise of the TV show, which involved multiple-day dates in exotic locations where singles participated in bonding activities).

Here, AJ Press' use of *Punchbowl News* is artistically relevant to AJ Press' goods and services. Plaintiff concedes in the Complaint that "Punchbowl" is the Secret Service nickname for the United States Capitol building. Compl. ¶ 20. AJ Press provides an online news publication in the fields of government, politics, public policy, and current events. *Id.* ¶ 19. AJ Press' publication predominantly focuses on government, politics, public policy,

9

and current events that occur at or near the Capitol building or involve persons that work at the Capitol building. *Id.* The name, logo, and credo of AJ Press' online news publication are all suggestive of the themes and geographic setting of the work, which provides news reporting and commentary about government, politics, public policy, and current events at or near the "Punchbowl." *See Twentieth Century Fox Television*, 875 F.3d at 1198 (holding that defendant's use of "Empire" as the name of a TV show was artistically relevant because "the show's setting is New York, the Empire State, and its subject matter is a music and entertainment conglomerate, 'Empire Enterprises,' which is itself a figurative empire").

## C.   AJ Press' Use of "Punchbowl News" Does Not Explicitly Mislead

*Rogers* and its Ninth Circuit progeny provide that the standard for satisfying the "explicitly misleading" requirement is "a high bar that requires the use to be an 'explicit indication,' 'overt claim,' or 'explicit misstatement' about the source of the work." *ComicMix*, 983 F.3d at 462 (quoting *Brown*, 724 F.3d at 1245). In most instances, "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Id.* (quoting *E.S.S.*, 547 F.3d at 1100); *see also MCA*, 296 F.3d at 902 (explaining that if use of the alleged mark alone were sufficient to explicitly mislead, "it would render *Rogers* a nullity"). Because use of a mark alone is usually not determinative, two other considerations weigh in evaluating whether the mark is explicitly misleading: (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *ComicMix*, 983 F.3d at 463, *quoting Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270-271 (9th Cir. 2018).

Evidence of actual confusion alone does not satisfy the second prong of the *Rogers* test unless the defendant also made an overt claim that the plaintiff was involved with defendant's work. In *Rogers*, for example, the court held that the defendants did not "explicitly mislead" despite evidence that "some members of the public would draw the incorrect inference that Rogers had some involvement with the film," and that one of defendant's own publicists mistakenly believed that the plaintiff was involved with the film.

*Rogers*, 875 F.2d at 997, 1001. Similarly, in *Caiz*, the court held that a declaration from plaintiff detailing the confusion of his and Roberts' consumers was insufficient to satisfy the second prong of the *Rogers* test. 382 F. Supp. 3d at 951; *see also ComicMix*, 983 F.3d at 462 (holding that plaintiff's evidence of consumer confusion did not establish that defendant explicitly misled consumers); *Brown*, 724 F.3d at 1246 ("Even if Brown could offer a survey demonstrating that consumers of [defendant's *Madden NFL* games] believed that Brown endorsed the game, that would not support the claim that the use was explicitly misleading to consumers."). As a matter of law, AJ Press does not explicitly mislead consumer about the source or content of its news reporting.

<ol start="1" style="list-style-type: decimal;">
<li><u>AJ Press Has Not Made an Explicit Indication, Overt Claim, or Affirmative Statement That Plaintiff Endorsed or Was Involved with AJ Press' Online Publication</u></li>
</ol>

Plaintiff does not allege, nor can it, that AJ Press has made an "explicit indication," "overt claim," or "affirmative statement" about Plaintiff's affiliation with or sponsorship and endorsement of its online news publication, in its news reporting, or otherwise. To the contrary, Plaintiff demonstrates in the Complaint that AJ Press expressly states on its website that *Punchbowl News* was "founded by journalists and best-selling authors JAKE SHERMAN and ANNA PALMER, and co-founded by veteran Capitol Hill reporter JOHN BRESNAHAN," not Plaintiff, and that AJ Press even displays a picture of AJ Press' three co-founders. Compl. ¶ 20. AJ Press' explicit identification of its founders would not make the public believe that Plaintiff was "somehow behind the [news reporting] or that it sponsors [the news reporting]." *E.S.S.*, 547 F.3d at 1100; *ComicMix LLC*, 983 F.3d at 463 (finding that defendant's use of the mark at issue was not explicitly misleading in part because the cover of the work "conspicuously list[ed]" defendants, not plaintiff, as the authors). Thus, Plaintiff has not pled, and cannot establish, that AJ Press made an express representation regarding Plaintiff's affiliation with or sponsorship and endorsement of AJ Press or its goods or services.

2.    <u>AJ Press and Plaintiff Use "Punchbowl" in Vastly Distinct Ways</u>

The First Amendment strongly favors protecting a junior user's interests when the senior user and junior user use the mark in different ways. *Gordon*, 909 F.3d at 270 (citing cases that involved disparate uses of the mark, including *MCA*, which involved plaintiff's use of a mark in connection with toys and defendant's use of the mark in connection with a song and *Twentieth Century Fox Television*, 875 F.3d 1192, which involved plaintiff's use of a mark in connection with a recording label and defendant's use of the mark in connection with a TV show). Even if parties use a mark in the exact same manner, the junior user's use of the mark may not be explicitly misleading. *ComicMix*, 983 F.3d at 463 (defendant's use of *Oh, the Places You'll Boldly Go!* was not explicitly misleading to plaintiff's use of Oh, *the Places You'll Go!* even though both parties used the marks in connection with books).

Here, Plaintiff's use of the punchbowl mark is categorically different than AJ Press' use of *Punchbowl News*. AJ Press uses *Punchbowl News* in connection with its online news publication and "news service that provides newsletters, podcasts, and videos in the field of government, politics, and current events." Compl. ¶ 19. In stark contrast, Plaintiff uses the punchbowl mark in connection with party planning, online "celebration invitations and greeting cards," and other communications that have "a particular focus on celebrations, holidays, events and memory-making…" *Id.* ¶¶ 9, 14. Just as no one would "think a company that owns one strip club in East Los Angeles ... also produces a technologically sophisticated video game" (*E.S.S.*, 547 F.3d at 1100–01), no one would think that a company that provides party planning services and greeting cards also produces a sophisticated online news publication about the government, politics, and current events. Thus, this factor favors AJ Press.

3.    <u>AJ Press Has Added Its Own Expressive Content to the Work Beyond the punchbowl Mark Itself</u>

The concern that consumers will be misled about the source of a product "is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most implicitly suggest[s] that the product is

12

associated with the mark's owner." *Gordon*, 909 F.3d at 271 (citations and internal quotations omitted); *see also* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 31:144.50 (5th ed.) ("[T]he deception or confusion must be relatively obvious and express, not subtle and implied"). Conversely, if a junior user uses a mark as "the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user," the junior user's use may reflect nothing more than an effort to "induce the sale of goods or services" by confusion or "lessen . . . the distinctiveness and thus the commercial value of" a competitor's mark. *Gordon*, 909 F.3d at 271.

In *Gordon,* plaintiff owned a registration for the mark HONEY BADGER DON'T CARE - a popular comical statement that represents an "aggressive assertion of apathy - in connection with various goods, including greeting cards. 909 F.3d at 268-269. The defendant created greeting cards featuring, on the front, a honey badger and an indication of the occasion the card is designed for (birthday, Halloween, etc.), and on the inside, the punchline: "Honey Badger Don't Care." *Id.* at 260–62. The Ninth Circuit held that defendant's use held "demonstrate[d] *Roger*'s outer limits," because defendant's expressive work consisted of the mark and not much else. *Id.* at 261, 268–69. Under these circumstances, the court concluded that there was a triable issue of fact as to whether the mark was explicitly misleading. *Id.* at 271. In *Comix*, defendant created the book titled "*Oh, the Places You'll Boldly Go!* (BOLDLY)" borrowed liberally—graphically and otherwise—from Dr. Seuss' works, including "*Oh, the Places You'll Go!*" ("GO!"), and that used Star Trek characters to tell readers that "life is an adventure but it will be tough." 983 F.3d 448. The Ninth Circuit held that defendant added expressive content to the BOLDLY mark because the mark was used in a book even though defendant's book used the same font as Dr. Seuss on the cover and used illustrations in the style of Dr. Seuss' illustrations. *Id.* at 462-463. The Ninth Circuit stated that defendant's use of Dr. Seuss' mark did not test the outer limits of *Rogers*.

13

Here, AJ Press' use of *Punchbowl News* does not test the outer limits of *Rogers*. Unlike the defendant's greeting cards in *Gordon*, AJ Press' goods and services are not centered around the *Punchbowl News* name or the mark punchbowl. Instead, AJ Press offers online news publications and news reporting and uses *Punchbowl News* to suggest the subject matter of its news reporting. Thus, *Punchbowl News* is used as only one component of AJ Press' larger expressive creation, online news publications.

## V.  <u>CONCLUSION</u>

The Court should dismiss the Complaint, in its entirety, with prejudice.


DATED:                          GREENBERG TRAURIG, LLP


                         By:   /s/ Ian C. Ballon
                                Ian C. Ballon
                                Nina D. Boyajian
                                Julianna M. Simon
                                Attorneys for Defendant AJ Press LLC

14