David M. Stein #198256
dstein@brownrudnick.com
Franklin S. Krbechek #322170
fkrbechek@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Phone:     949.752.7100
Fax:        949.252.1514

Peter J. Willsey (*pro hac vice*)
pwillsey@brownrudnick.com
Vincent J. Badolato (*pro hac vice*)
vbadolato@brownrudnick.com
**BROWN RUDNICK LLP**
601 Thirteenth Street NW, Suite 600
Washington, D.C.  20005
Phone:     202.536.1700
Fax:        202.536.1701

Attorneys for PUNCHBOWL, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUNCHBOWL, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>          v.<br><br>AJ PRESS LLC, a Delaware limited liability company,<br><br>                              Defendant. | Case No.:  2:21-cv-03010-SVW-MAR<br><br>**OPPOSITION OF PLAINTIFF PUNCHBOWL, INC. TO MOTION TO DISMISS**<br><br>Date:        June 14, 2021<br>Time:       1:30 p.m.<br>Ctrm:       10A<br>Location:  350 W. 1st St, 10th Floor<br>               Los Angeles, CA  90012<br>Judge:     Hon. Stephen V. Wilson |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ............................................................................................. 5

II.  FACTUAL BACKGROUND .......................................................................... 6

III.  ARGUMENT ................................................................................................... 8

    A.  Standard for Motion to Dismiss ............................................................. 8

    B.  The *Rogers* Test ..................................................................................... 9

        (1)  The *Rogers* Test Does Not Apply to Defendant's Use of the
            PUNCHBOWL Mark. ................................................................. 10

        (2)  Defendant's Use of the PUNCHBOWL Mark is Not
            "Artistically Relevant" to Defendant's News Publications. ......... 16

        (3)  Defendant's Use Of The PUNCHBOWL Mark Is
            Misleading. ................................................................................. 18

    C.  Defendant's Motion is Premature Because Discovery Is Necessary
        to Evaluate Defendant's Arguments. ...................................................... 21

IV.  CONCLUSION ............................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................................*passim*

*Babb v. California Teachers Ass'n*,
  378 F. Supp. 3d 857 (C.D. Cal. 2019) ............................................... 8, 19

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) ............................................................................. 14

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ............................................................... 8

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. 2019) ............................................ 11, 12

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ............................................................................. 18

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ......................................................... 10, 12

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ............................................................. 11

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
  618 F.3d 1025, 96 U.S.P.Q.2d 1585 (9th Cir. 2010) ............................. 9

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ................................................ 10, 12, 19

*Jackson v. Netflix, Inc.*,
  __ F. Supp. 3d __, No. 2:20-cv-06354-MCS-GJS, 2020 WL 8028615
  (C.D. Cal. Dec. 9, 2020) .................................................... 10, 11, 15

*Mattel, Inc. v. MCA Recs., Inc.*,
  296 F.3d 894 (9th Cir. 2002) ................................... 10, 17, 18, 19

*In Re NCAA Student-Athlete Name & Likeness*,
  724 F.3d 1268 (9th Cir. 2013) ............................................................. 18

3

*New Kids On The Block v. News Am. Pub., Inc.*,
   745 F. Supp. 1540 (C.D. Cal. 1990) ........................................................ 13, 14, 15

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ................................................................. 14

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
   No. CV 18-2260-GW(FFMX), 2018 WL 6566561 (C.D. Cal. Aug.
   27, 2018) ................................................................................ 10

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ................................................................ *passim*

*Rupp v. Courier J., Inc.*,
   No. 3:18-CV-277-RGJ, 2020 WL 1310491, (W.D. Ky. Mar. 19,
   2020), *aff'd*, 839 F. App'x 1003 (6th Cir. 2021) ........................................ 14, 15

*Twentieth Century Fox TV v. Empire Distrib., Inc.*,
   875 F.3d 1192 (9th Cir. 2017) ................................................. 12, 16, 17, 21

*Zixiang Li v. Kerry*,
   710 F. 3d 995 (9th Cir. 2013) .............................................................. 8

**Federal Statutes**

Lanham Act ......................................................................... *passim*

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 24:39 (5th ed.) ................... 9

6 McCarthy on Trademarks and Unfair Competition § 31:144.50 (5th ed.) ........... 10

First Amendment ....................................................................... *passim*

G. Alexander Piccionelli, *News Gathering, Intangible Property Rights
   and 900-Line Telephone Services: One Court Makes a Bad
   Connection*, 11 Loy. L.A. Ent. L. Rev. 535 (1991) .................................... 15

Stahlkopf, et al., 5 Successful Partnering Between Inside and Outside
   Counsel § 69:47 (April 2021 Update) ................................................ 11

THE WALL STREET JOURNAL ......................................................... 20

Plaintiff Punchbowl, Inc. ("Plaintiff" or "Punchbowl") respectfully submits this Opposition to Defendant AJ Press LLC's ("Defendant") Motion to Dismiss Plaintiff's Complaint (Dkt. 23) ("Motion").

## I.  __INTRODUCTION__

The allegations in Plaintiff Punchbowl's Complaint present a straightforward, well-pled trademark infringement case that should be analyzed under the Lanham Act and corresponding state law.  Punchbowl brings this action because Defendant adopted a trademark identical to Plaintiff's PUNCHBOWL mark, uses that mark as its own "centerpiece" brand, and has already caused significant consumer confusion.  Courts in this Circuit typically analyze allegations of trademark infringement like this by applying the multi-factor likelihood of confusion test in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ("*Sleekcraft*").

Defendant, however, seeks to summarily avoid any repercussions from adopting a trademark identical to Plaintiff's through a motion to dismiss in which it claims First Amendment protection for its infringing actions.  To do so, Defendant essentially characterizes its news and reporting products and services as artistic works, and its source-identifying use of the PUNCHBOWL mark as "artistically relevant" to products and services that are anything but artistic, so as to shift the analysis to the framework first set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ("*Rogers*").  But the *Rogers* framework does not apply to a case like this.  Defendant's attempt to apply it here would stretch the boundaries of *Rogers* to an unprecedented extreme and eviscerate the Lanham Act as applied to businesses in the field of news reporting and journalism.

Defendant's effort to move the proper analysis of its allegedly infringing conduct to the *Rogers* test by claiming that its conduct is entitled to First Amendment protection suffers from three fundamental flaws.  *First*, Defendant's online news publications and services ("Punchbowl News") are not the type of artistic or expressive works protected

/ / /

/ / /

by the First Amendment that would trigger application of the *Rogers* test.[1]  *Second*, even if the *Rogers* test could be properly applied here (which it cannot), Defendant is not using the PUNCHBOWL mark in a manner that is "*artistically* relevant" to the content of its products and services.  Although Defendant supplies an apparent reason for selecting the PUNCHBOWL mark as its brand, that does not render the term artistically relevant to anything – indeed, every suggestive trademark necessarily has some relationship to the goods or services with which it is used, but that relevance is commercial, not artistic.  *Third*, Defendant uses the PUNCHBOWL mark not simply to comment, whether artistically or not, on any theme or issue, but rather as its own centerpiece source-identifier for a website, series of subscription-based newsletters, and podcasts (*i.e.*, as a "house mark"), which in and of itself is explicitly misleading.

In short, prohibiting Defendant from using a mark identical to Plaintiff's PUNCHBOWL mark would serve only to prevent confusion among consumers.  It would not implicate any First Amendment considerations or undercut the public's interest in free expression.  Defendant can, of course, continue with its journalistic endeavors, but it should not be permitted to do so while offering its products and services under an infringing trademark.

Because this is a standard trademark infringement case governed by *Sleekcraft,* and one that does not implicate the First Amendment considerations the *Rogers* test was designed to protect, Defendant's Motion should be denied in its entirety.

## II.     **FACTUAL BACKGROUND**

Plaintiff is a premier technology company that develops online communications

---

[1] In its Motion, Defendant repeatedly refers to its publication as an "expressive work" rather than an "artistic work," but that is merely semantics.  Although courts have held that the *Rogers* test applies to "artistic works" and "expressive works protected by the First Amendment," the vast majority of cases in which the test has been applied have involved works that are clearly artistic in nature.

solutions for consumers, comprised in part of online event and celebration invitations and greetings cards, with a focus on celebrations, holidays, events and memory-making, all sold as a subscription-based service.  Dkt. 1, ¶ 9.  Plaintiff's communications services are enormously successful, have garnered widespread acclaim and recognition, and are used by millions of consumers across the United States and around the world. *Id.*

Since at least April 2006, Plaintiff has used the highly distinctive and commercially strong PUNCHBOWL mark. *Id.* at ¶ 11.  On March 28, 2013, the United States Patent & Trademark Office ("USPTO") issued U.S. Trademark Registration No. 4,341,102 for the PUNCHBOWL mark in connection with online communications services, which is now incontestable. *Id.* at ¶¶ 14, 16-17.  Plaintiff has advertised and promoted its PUNCHBOWL mark through various mediums, including through its website and social media websites such as Facebook, Twitter, Instagram, and Pinterest. *Id.* at ¶ 12.  Plaintiff's efforts to develop and promote the PUNCHBOWL mark and its services offered thereunder have resulted in public recognition of the PUNCHBOWL mark as indicating Plaintiff as the source of high-quality communications services. *Id.* at ¶ 13.

In early 2021, Defendant began to operate "Punchbowl News," an online subscription-based news service that provides information regarding government, politics, and current events. *Id.* at ¶¶ 19, 24.  Defendant has filed trademark applications for the marks "PUNCHBOWL NEWS" and "PUNCHBOWL PRESS" covering, among other things, newsletters, podcasts, and a website providing information regarding government, politics, public policy, and current events.  *Id.* at ¶ 22. Defendant frequently uses the PUNCHBOWL mark standing alone, a use identical to Plaintiff's, or with generic or merely descriptive terms (e.g., "News" or "Press") that have no source-identifying or distinguishing value. *Id.* at ¶¶ 19-21.  As is shown in the Complaint, Defendant's use of the PUNCHBOWL mark features a font and color similar to that used by Plaintiff, so as to be identical or virtually identical to Plaintiff's

PUNCHBOWL mark. *Id.* at ¶¶ 20-21. Moreover, Defendant offers its services through the same marketing and trade channels that Plaintiff utilizes, such as Google and Bing, and social media platforms like Facebook, Instagram, and Twitter, and also promotes its services to the same customers as Plaintiff. *Id.* at ¶ 23.

Defendant's use of the PUNCHBOWL mark constitutes a textbook example of trademark infringement, as it is likely to cause consumer confusion regarding the source of Defendant's services, and, in fact, has already done so. *Id.* at ¶ 28.

### III.   ARGUMENT

#### A.   Standard for Motion to Dismiss

Motions to dismiss are generally disfavored by courts, and the bar to overcome such motions is set low. More specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F. 3d 995, 999 (9th Cir. 2013). "In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all 'well-pleaded factual allegations' in a complaint. Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party." *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857, 869 (C.D. Cal. 2019) (internal citations omitted). "Rule 12(b)(6) motions are viewed with disfavor. Dismissal without leave to amend is proper only in 'extraordinary' cases." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (internal citations omitted).

Plaintiff's Complaint contains factual and legal allegations that far exceed the low bar necessary to overcome Defendant's Motion and provides all of the necessary elements of a well-pled case of trademark infringement. For example, Plaintiff alleges that it owns the mark PUNCHBOWL® (the "PUNCHBOWL Mark"), an inherently distinctive, commercially strong, and federally registered trademark, which identifies Plaintiff as the source of its online communications services. The Complaint also

includes other factual allegations that amount to the "hallmarks" of a straightforward trademark infringement case: (1) Defendant uses the identical or nearly identical PUNCHBOWL Mark in connection with its website, Punchbowl News, and its newsletters and podcasts, to identify the source of its online news products and services, (2) the parties' respective services are related and provided via the same channels of trade, and (3) Defendant's use of the PUNCHBOWL mark has already caused significant consumer confusion.  Dkt. 1 at ¶¶ 19, 21, 23, 28.

The factual allegations in Plaintiff's Complaint have more than the "facial plausibility" that would allow this Court to draw the reasonable inference that Defendant is liable for trademark infringement through its unauthorized use of the PUNCHBOWL Mark.  Accepting these factual allegations as true and drawing all reasonable inferences in favor of Plaintiff as the non-moving party, dismissing Plaintiff's Complaint at the pleadings stage would be improper.

### B.  The *Rogers* Test

Most trademark infringement cases in the Ninth Circuit are analyzed by applying the multi-factor "likelihood of confusion" test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  "While later decisions have used slightly different sets of factors, the 1979 *Sleekcraft* eight factors remain the test for infringement in the Ninth Circuit:  (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."  4 McCarthy on Trademarks and Unfair Competition § 24:39 (5th ed.).  Courts in the Ninth Circuit continue to apply these eight factors.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1030–1031, 1044, 96 U.S.P.Q.2d 1585 (9th Cir. 2010) (applying the *Sleekcraft* factors to reverse summary judgment).

Here, Defendant argues that First Amendment concerns are implicated by its use of the PUNCHBOWL Mark in connection with its products and services, and therefore

the more lenient test first established in *Rogers* should apply.  Application of the *Rogers* test, however, is appropriate only in rare circumstances and "is not an automatic safe harbor for any minimally expressive work that copies someone else's mark." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 261 (9th Cir. 2018); *see also* 6 McCarthy on Trademarks and Unfair Competition § 31:144.50 (5th ed.) ("[t]he *Rogers* test is not to be applied mechanically, but with a realization that the test requires that the trademark rights of the senior user and the public's right not to be confused must be carefully balanced against the artistic license granted to the junior user who has used the mark in a creative work.").

The *Rogers* test requires a three-step analysis: first, a defendant must demonstrate that the "allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264; *see also Jackson v. Netflix, Inc.*, __ F. Supp. 3d __, No. 2:20-cv-06354-MCS-GJS, 2020 WL 8028615, at*3 (C.D. Cal. Dec. 9, 2020) ("[t]he test construes the Lanham Act to apply to expressive works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression") (internal quotation marks omitted).  If a defendant is able to satisfy that threshold requirement, then "the plaintiff claiming infringement must show (1) that it has a valid, protectable trademark, and (2) that the mark is either not artistically relevant to the underlying work *or* explicitly misleading as to the source or content of the work." *Gordon*, 909 F.3d at 265 (emphasis in original).

### (1) <u>The *Rogers* Test Does Not Apply to Defendant's Use of the PUNCHBOWL Mark.</u>

As an initial matter, the goods and services Defendant offers in connection with the PUNCHBOWL Mark are not the type of artistic or expressive works to which courts in the Ninth Circuit apply the *Rogers* test.  Courts have applied the test to film titles (*Rogers*, 875 F.2d at 1000-1002), song titles (*Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 902 (9th Cir. 2002)), book titles (*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 461-462 (9th Cir. 2020)), television show titles (*Reflex Media, Inc. v.*

*Pilgrim Studios, Inc.*, No. CV 18-2260-GW(FFMX), 2018 WL 6566561, at *5 (C.D. Cal. Aug. 27, 2018)); music album and tour titles (*Caiz v. Roberts*, 382 F. Supp. 3d 942, 948-949  (C.D. Cal. 2019)), video games (*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099-1100 (9th Cir. 2008)), and documentary films (*Jackson*, 2020 WL 8028615, at *3 (C.D. Cal. 2020)); *see also* Stahlkopf, et al., 5 Successful Partnering Between Inside and Outside Counsel § 69:47 (April 2021 Update) ("The First Amendment can provide a complete defense to Lanham Act claims when the alleged infringing product is a work of *artistic expression*, such as a movie, a video game, a song, a book, a toy, or a photograph, or a television show.") (emphasis added).[2]

Courts have never applied the *Rogers* test to the *name* of a news reporting website, podcast, newsletter, television network, or print newspaper, and for good reason: there is no inherently artistic quality to a news publication, which of course functions to report and comment on *facts*.  One can argue that there is a degree of editorial skill in presenting facts to an audience in a particularly effective manner, or that commentary on news events requires some degree of intellectual capability.  But those aspects of news publications do not elevate them to the category of artistic works to which the *Rogers* test applies.  Indeed, most commercial marketing speech requires creativity and expressive content, yet advertisements are not subject to the *Rogers* test.

Almost all speech communicates an idea or could be considered "expressive";

---

[2] Courts in the Ninth Circuit have emphasized that the *Rogers* test applies to artistic works.  "An artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work."  *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1099; *Jackson*, 2020 WL 8028615 at *3 (same) ); *see also Caiz*, 382 F. Supp. 3d at 949 (quoting *Rogers* to refer to expressive works as "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection").

the *Rogers* test, on the other hand, applies more narrowly to only "expressive works *protected under the First Amendment*." *Gordon*, 909 F.3d at 268 (emphasis added). Undoubtedly, Defendant's news-related content is protected by the First Amendment, but one cannot conflate that *content* with the type of commercial speech represented by Defendant's use of the PUNCHBOWL Mark as a *brand* to market and sell its publications.

Plaintiff does not seek through the filing of its Complaint to stop Defendant from using the word "punchbowl" in the text of any of its news stories or commentaries if that term has any relevance to the content of the news reported by Defendant. Put another way, Plaintiff's lawsuit does not seek to restrict Defendant's ability to engage in truly expressive conduct and would do nothing to curtail the public interest in free expression, as Defendant remains free to continue reporting and commenting on news and politics. Defendant is entitled to use the term "punchbowl" in any news story as a reference to the U.S. Capitol, as the Secret Service has supposedly nicknamed the building. But Defendant's use of PUNCHBOWL as a source-identifier, or as its own trademark, serves only to market and sell its various news reporting products and publications, which is purely commercial in nature. In other words, the manner in which Defendant uses the PUNCHBOWL Mark (as a brand) does not qualify as the type of "expressive speech protected by the First Amendment." *Caiz*, 382 F. Supp. 3d at 948.

The importance of limiting the *Rogers* test to artistic works is demonstrated by the fact that courts applying the test most frequently refer to "artistic" works. *See Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) (emphasizing the artistic relevance prong throughout the opinion). In addition, the first prong of the test, *i.e.,* whether the use of the trademarked term has "artistic relevance," further suggests that a work falling within the scope of *Rogers* must be "artistic." Indeed, if the underlying work is not artistic, the use of trademarks within or as a part of that work cannot have "artistic relevance." *See Dr. Seuss Enterprises, L.P.*, 983 F.3d

at 462 (noting that for a literary title, "the allegedly valid trademarks in the title, the typeface, and the style of [the senior user] are relevant to achieving [the junior user's] *artistic* purpose") (emphasis added).

Moreover, Defendant's reliance on *New Kids On The Block v. News Am. Pub., Inc.*, 745 F. Supp. 1540 (C.D. Cal. 1990) ("*New Kids*") to suggest extension of the *Rogers* test to the circumstances here (Motion at 8) is misplaced.   Contrary to Defendant's assertions, that case does not stand for the proposition that any trademark infringement claims for activities related to "news gathering and dissemination" are controlled by the *Rogers* test, and no court has accepted that conclusion.  In *New Kids*, the defendants published articles asking readers to call a "900 number service" to participate in a poll regarding members of the "New Kids on the Block" music group, which allegedly infringed on plaintiffs' trademark of the same name.  *Id.* at 1542-1546. The *New Kids* court reasoned that the unauthorized use of the trademark at issue was employed to "to find out which member of the New Kids was the public's favorite and then publish those results."  *Id.* at 1545.

In that limited sense, the court found that "[defendants'] use of the New Kids trademark was related to news gathering and dissemination[,]" and that type of "surveying" conduct was protected by the First Amendment.  *Id.*  The court specifically noted, however, that:

> ". . . the Court is not holding that the First Amendment provides absolute immunity for tortious conduct in connection with news gathering and dissemination. Rather, the Court has balanced the First Amendment values against Plaintiffs' intangible property rights."

*Id.* at 1547.

And although the *New Kids* court did apply the *Rogers* test, (1) it stopped well short of holding that all uses of trademarks by news publishers should be analyzed under the *Rogers* framework, and (2) nothing in the *New Kids* decision remotely suggests that the defendants in that case would have been permitted to name their

13

OPPOSITION OF PLAINTIFF TO MOTION TO DISMISS

/ / /

newspapers "The New Kids On The Block Daily," which is essentially what Defendant is arguing it should be able to do here.

Unlike *New Kids*, the present Complaint does not merely allege that Defendant uses the PUNCHBOWL Mark in one (or more) of its news articles.  Instead, Plaintiff alleges in the Complaint that Defendant adopted Plaintiff's mark for its own source-identifying use, and that use has resulted in consumer confusion.  Those material differences alone are sufficient to distinguish this case from *New Kids*.[3]  The holding in *New Kids*, at most, permits the unauthorized use of a trademark as *part* of a news article or story itself but not as a *source-identifier* for a news publication as Defendant suggests.

Not a single court has extended *New Kids* to hold that online news publications are "indisputably" expressive works, as Defendant contends.[4]  In fact, other district courts have expressly rejected Defendant's contention.

For example, in *Rupp v. Courier J., Inc.*, No. 3:18-CV-277-RGJ, 2020 WL 1310491, the plaintiff owned the trademark "Derby-Pie," and the defendant used "Derby pie" in two articles it published.  Denying the defendant's motion to dismiss on First Amendment grounds, the court reasoned that "[d]efendant contends that '[c]ourts have not hesitated to apply the *Rogers* test to newsgathering activities and hold that the First Amendment prohibits newspapers from being sued for trademark infringement for

---

[3] It is also worth noting that the Ninth Circuit affirmed *New Kids* on different grounds and did not reach the constitutional First Amendment question, further limiting the application of the doctrine that Defendant seeks to rely on here.  *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992).

[4] Defendant's reference to *Branzburg v. Hayes*, 408 U.S. 665 (1972) is similarly unavailing.  The quoted language from *Branzburg* is merely dicta, and, inappropriately attempts to reframe the issue here as being whether news gathering is generally subject to First Amendment protections, instead of whether the *Rogers* test properly applies to Defendant's conduct.

---

14

OPPOSITION OF PLAINTIFF TO MOTION TO DISMISS

news articles that happen to use a trademarked term.' [] *But, this is untrue: no circuit courts have done this and, outside [New Kids], no district courts have either.* And although the Sixth Circuit adopted *Rogers* in *Parks v. LaFace Records* [full citation omitted], it has yet to extend it from 'artistic works' to 'newsgathering activities.'" *Rupp v. Courier J., Inc.*, No. 3:18-CV-277-RGJ, 2020 WL 1310491, at *2 (W.D. Ky. Mar. 19, 2020), *aff'd*, 839 F. App'x 1003 (6th Cir. 2021) (emphasis added).[5]

In some situations, courts have applied the *Rogers* test to an expressive work that is quasi-factual. *See Jackson*, *supra*, 2020 WL 8028615 (holding that Netflix could distribute a documentary film that referred to and depicted the plaintiff's trademarked "Hollywood Weekly" magazine under the *Rogers* test without infringement liability). But *Jackson* is factually distinguishable from the present case. The plaintiff there used the TIGER KING Mark only as a sub-brand for a series of articles within its magazine (identified by its HOLLYWOOD WEEKLY house mark), which minimized the risk of consumer confusion when Netflix used that mark as the title of its documentary.

Here, both parties are using the PUNCHBOWL Mark alone as the source-identifier for their respective goods and services. Further, the plaintiff in *Jackson* only had a pending application for the TIGER KING mark (which had been preliminarily refused by the USPTO), so that party, unlike Plaintiff, did not have the benefit of the legal presumptions that a federal trademark registration would have afforded – namely, that its alleged TIGER KING mark was valid, that it owned the mark, or that it had the exclusive right to use the mark. Further, the holding in *Jackson* did not permit distributors such as Netflix license to adopt a plaintiff's trademark as its own source-

---

[5] In addition to having limited impact, *New Kids* has also been criticized as being incorrectly decided. *See* G. Alexander Piccionelli, *News Gathering, Intangible Property Rights and 900-Line Telephone Services: One Court Makes a Bad Connection*, 11 Loy. L.A. Ent. L. Rev. 535 (1991) (arguing that the court in *New Kids* erred by applying the *Rogers* test to news gathering and not works of artistic expression).

identifier simply because it distributed a documentary film, as Defendant argues here.

Defendant asks this Court to expand application of the *Rogers* test to an entirely new category of trademark usage – commercial news reporting and publication. Such an extension is not warranted here, particularly given Defendant's source-identifying usage of the PUNCHBOWL Mark and the lack of artistic and expressionistic quality of that usage.

### (2)   Defendant's Use of the PUNCHBOWL Mark is Not "Artistically Relevant" to Defendant's News Publications.

Even if the Court were to stretch the boundaries of the *Rogers* test to cover the use of a trademark as the title of a series of non-artistic works (Defendant's newsletters, website and podcasts), Defendant's infringement of Plaintiff's PUNCHBOWL Mark would not be protected under *Rogers* because such use is not "*artistically*" relevant to those works. Although discovery has not started, solely for purposes of this Motion Plaintiff will assume that Defendant did in fact select "PUNCHBOWL" as its house mark because, unbeknownst to most, the Secret Service uses "punchbowl" as the nickname for the United States Capitol.[6] But any such relevance to Defendant's news publications is commercial, not artistic.

*Every* suggestive trademark, by its nature, has some relevance to the goods or services offered under the mark, in that the mark suggests something about the nature, quality, characteristics, or other attributes of the goods or services. That does not automatically make suggestive marks "artistically" relevant. It merely means that, in a commercial sense, there is a relationship between the mark and the goods or services,

---

[6] Defendant should be forced to prove through discovery that PUNCHBOWL has attained some sort of cultural significance instead of making conclusory statements to that effect. If the term has not taken on any such significance, it is less likely that Defendant is using the term in "artistically relevant ways." *See Twentieth Century Fox TV*, 875 F.3d at 1198 (9th Cir. 2017) (stating that "[t]rademarks that transcend their identifying purpose are more likely to be used in artistically relevant ways.") (internal quotation marks and citation omitted).

/ / /

and that relationship (or relevance) helps the trademark owner market and sell its products.

Defendant has not shown, and cannot show, that its use of the PUNCHBOWL Mark as the title of commercial news reporting products and services satisfies the "artistic relevance" requirement of the *Rogers* test. That is because, as alleged in the Complaint, it is using the PUNCHBOWL Mark as a house mark and source-identifier for its online news website, newsletters and podcasts. Dkt. 1 at ¶¶ 19-21, 28. The title of a news provider is materially different from the titles of seminal types of artistic or expressive works that have received First Amendment protection such as "[m]ovies, plays, books, and songs" by application of the *Rogers* test. For example, in contrast to the defendant's use of the word EMPIRE in *Twentieth Century Fox TV*, which was made in a creative manner as the name of a clearly artistic work, *i.e.*, a television show, Defendant is simply using Plaintiff's mark in a commercial manner as its own source-identifier. Although audiences may not expect the title of artistic works to reflect who is the publisher or producer, they would reasonably expect a source-identifier, brand, or in a loose sense, the "title" of a fact-based news gatherer like Defendant to identify *who* is providing that service. *Mattel, Inc.*, 296 F.3d at 902. And this is exactly how Defendant is using the PUNCHBOWL Mark – as the source-identifier of its services generally, which use is in a traditional, suggestive trademark manner.

Further belying Defendant's claims that its use of the PUNCHBOWL Mark is "artistically relevant," Defendant has filed two applications with the USPTO seeking registration of the PUNCHBOWL NEWS and PUNCHBOWL PRESS marks for exactly the same products and services at issue here. *Id.* at ¶ 22. In doing so, Defendant sent the world a clear signal as to its primary purpose in using the PUNCHBOWL Mark: it identifies the source of its goods and services. Defendant's use of the PUNCHBOWL Mark as a source-identifier, rather than in any "artistically relevant" manner, confirms that this dispute is subject to the standard infringement analysis test

set forth in *Sleekcraft*.

(3)     **Defendant's Use Of The PUNCHBOWL Mark Is Misleading.**

The premise of Defendant's Motion is based on a fundamental misapplication of the *Rogers* test.  Yet even if *Rogers* applied to the facts at hand (it does not), and even if Defendant's use of the PUNCHBOWL Mark were "artistically" rather than "commercially" relevant to its news-related products and services (it is not), Plaintiff's allegations are also sufficient to defeat dismissal under the second prong of the *Rogers* test, which examines whether the junior user's use of the mark is "explicitly misleading as to source or content."  *Rogers*, 875 F.2d at 999.  Defendant's Motion should be denied because its use of the PUNCHBOWL Mark is explicitly misleading.

As the *Rogers* court explained, "Poetic license is not without limits.  The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product."  *Rogers*, 875 F.2d at 997; *see also In Re NCAA Student-Athlete Name & Likeness*, 724 F.3d 1268, 1279 (9th Cir. 2013) (same); *Mattel, Inc.*, 296 F.3d at 900 ("Whatever first amendment rights you may have in calling the brew you make in your bathtub 'Pepsi' are easily outweighed by the buyer's interest in not being fooled into buying it") (internal quotation marks and citation omitted); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980) ("there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity.")

Just as competitors are not free under the First Amendment to confuse consumers regarding the source of a beverage called "Pepsi," Defendant is not permitted to confuse consumers as to who provides the "Punchbowl News" suite of news reporting products and services.  Here, not only has Plaintiff alleged all of the elements of "traditional" or "standard" trademark infringement meriting application of the *Sleekcraft* likelihood of confusion factors, which itself should far surpass the standard required to overcome a motion to dismiss, but Plaintiff also has alleged that Defendant's use of Plaintiff's PUNCHBOWL Mark has resulted in *actual* consumer confusion.  Dkt. 1 at ¶ 28.  The

18

basis for that confusion is properly alleged in the Complaint:  both parties offer their respective services through the same trade channels, namely, on the Internet; both use the same marketing services; both reach the same customers; and both use an identical or nearly identical PUNCHBOWL Mark for related goods and services.  Dkt. 1 at ¶ 21, 23.

Defendant, citing the *Mattel* case, argues that the use of another party's mark, in and of itself, cannot be sufficiently misleading under the *Rogers* test.  But the Ninth Circuit has recently explained that "the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." *Gordon*, 909 F.3d at 270.  That is exactly what Plaintiff has alleged here:  "Defendant's unauthorized use of the PUNCHBOWL mark is misleading and is likely to confuse consumers into believing that Defendant's services are authorized by, sponsored by, or otherwise affiliated with or approved by Plaintiff.  *In fact, a steady stream of consumers continue to contact Plaintiff under the mistaken belief that Plaintiff is, or is affiliated with, Punchbowl News*."  Dkt. 1 at ¶ 28 (emphasis added).

That allegation is far from conclusory; the preceding paragraphs in the Complaint describe how the parties both use the PUNCHBOWL Mark in the same way, to identify the source of their respective services, and further illustrate how similarly the parties use the PUNCHBOWL Mark.  *Id.* at ¶ 11, 19-21.  At the pleadings stage, those allegations must be credited as true, and the inferences arising therefrom must be drawn in Plaintiff's favor.  *Babb,* 378 F. Supp. 3d at 869.  These standards obligate the Court to deny the Motion because the Complaint establishes how, even if the *Rogers* test applies (which it does not), Defendant's use of the PUNCHBOWL Mark is explicitly misleading.

Defendant urges this Court to hold that a defendant can use another's trademark as the name of a journalistic publication as long as it does not do something that is "explicitly misleading" about its relationship to trademark owner.  Motion at 10-11. Such a result would give journalistic publications a free pass to use any trademark as

/ / /

the name of their publications as long as they come up with a plausible reason as to why they adopted it.

For example, the registered trademark "THE WALL STREET JOURNAL" covers "[d]ownloadable electronic publications in the nature of newspapers and newspaper articles in the fields of general news and current events."  (U.S. Reg. No. 4297318).  Assume that Company X, unrelated to the owner of THE WALL STREET JOURNAL trademark, started doing business as "THE WALL STREET JOURNAL OF DINING" and began publishing stories regarding eateries in the Wall Street area of Manhattan.  If the argument in Defendant's Motion is accepted, Company X would not be liable for trademark infringement: the *Rogers* test would apply because Company X's publication delivers news; the phrase "THE WALL STREET JOURNAL OF DINING" has artistic relevance given that the restaurants reviewed in the publication are located in the "Wall Street" area of Manhattan; and under the final prong, without an overt claim that the senior user of the "THE WALL STREET JOURNAL" trademark was the source of Company X's website, there could be no infringement.

The First Amendment cannot trump the Lanham Act to that degree, as doing so would leave the door wide open to confusion among a significant portion of relevant consumers while doing nothing to foster actual news and reporting (free speech).  Defendant's Motion asks the Court to independently evaluate only the Defendant's evidence, and reach the conclusion that is the opposite of what is alleged in the Complaint – that "no one" could be confused by Defendant's usage of the PUNCHBOWL Mark as a matter of law.  Motion at 12.  The Court should decline Defendant's invitation to ignore the well-established standards that allegations in the Complaint must be accepted as true, and instead deny the Motion to allow this matter to proceed.

/ / /

/ / /

### C.  Defendant's Motion is Premature Because Discovery Is Necessary to Evaluate Defendant's Arguments.

Even if this Court is inclined to apply the *Rogers* test to the circumstances presented here, it should do so only after having the benefit of all the relevant facts developed during discovery between the parties, not only those Defendant has highlighted in its Motion.

In particular, the development of facts pertaining to two issues would further demonstrate the inapplicability of the *Rogers* test to this case.  First, Defendant does not use the PUNCHBOWL Mark as the title of one website only but rather as a brand name for several other news-related products, including subscription-based newsletters and podcasts.  Unlike *Twentieth Century Fox TV*, *supra*, 875 F.3d 1192, where the Ninth Circuit extended the *Rogers* test to apply to promotional materials that were ancillary to the expressive television show at the center of the dispute, Defendant's additional products are not "merely promotional."  Plaintiff and the Court should have the benefit of examining those products.  Second, as alleged in the Complaint, many instances of consumer confusion have already occurred due to Defendant's use of the PUNCHBOWL mark, which the Court should evaluate under the second prong of the *Rogers* test to determine whether Defendant's mere use of the PUNCHBOWL Mark is explicitly misleading (it is).

### IV.  CONCLUSION

This Court is not faced with a situation where the First Amendment should circumscribe the protections of the Lanham Act.  Rather, this case involves a plaintiff with a strong, registered trademark in which it has invested significant time, effort, and money to develop, and which was subsequently usurped by a defendant as its own name, leading to not only a likelihood of consumer confusion but *actual* confusion.  Plaintiff has more than adequately alleged facts supporting its trademark claims.  Further, the *Rogers* test does not apply to this dispute because the products and services offered by Defendant under the PUNCHBOWL Mark do not qualify for protection

under *Rogers*; Defendant's use of the PUNCHBOWL Mark is only commercially, not artistically, relevant to its publications; and Defendant's use of the PUNCHBOWL Mark as a source-identifying house mark is alone enough to be explicitly misleading. As a result, the Motion should be denied.

Dated: May 24, 2021                    Respectfully submitted,

                                       **BROWN RUDNICK LLP**


                                       By:   */s/ David M. Stein*
                                             David M. Stein #198256
                                             Peter J. Willsey (*pro hac vice*)
                                             Vincent J. Badolato (*pro hac vice*)
                                             Franklin S. Krbechek #322170

                                             Attorneys for Plaintiff PUNCHBOWL, INC.

OPPOSITION OF PLAINTIFF TO MOTION TO DISMISS