UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**     ORDER GRANTING [23] MOTION FOR SUMMARY JUDGMENT.

Before the Court is a motion for summary judgment filed by Defendant AJ Press LLC.  *See* Dkt. 23.[1]  The Court finds that the motion is suitable for disposition without oral argument.  L.R. 7-15.  For the below reasons, the motion is GRANTED.

**I.     Factual and Procedural Background.[2]**

Plaintiff is a technology company that develops online communications solutions for consumers, including online event invitations and greetings cards, with a focus on celebrations, holidays, and events. Plaintiff's services are used by millions of consumers across the United States and around the world. Punchbowl works with companies such as The Walt Disney Company, Party City Holdings, Sesame Workshop, Chuck E. Cheese's, and Dave & Busters.

Plaintiff has allegedly used the mark PUNCHBOWL® since April 2006.  On March 28, 2013, the United States Patent & Trademark Office issued U.S. Trademark Registration No. 4,341,102 to Plaintiff for the Punchbowl mark in connection with online communications services.

---

[1] Although the motion was initially filed as a motion to dismiss, the Court notified the parties that it was converting the motion to a motion for summary judgment and provided the parties an opportunity to submit supplemental briefing and evidence.  *See* Dkt. 27.

[2] The facts in this section are intended to provide background information regarding the instant dispute.  Nothing in this section should be construed as a factual finding by the Court.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Defendant operates an online news publication that provides newsletters, podcasts, and videos in the fields of government, politics, public policy, and current events. The publication is called "Punchbowl News." The publication offers curated, non-partisan commentary, opinions, and critiques regarding politicians, lobbyists, and aides. Defendant uses the word "Punchbowl" because that is the Secret Service nickname for the U.S. Capitol and, accordingly, "Punchbowl" elicits the geographic location of the U.S. Capitol and Washington, D.C.

On April 7, 2021, Plaintiff filed a complaint against Defendant alleging trademark violations and related claims. Dkt. 1. Defendant filed a motion to dismiss on May 10, 2021. Dkt. 23. This Court converted Defendant's motion to dismiss to a motion for summary judgment on June 21, 2021. Dkt. 27.

**II.     Legal Standard.**

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007).

                                                                                                              :
                                                                                         _____
                                                    Initials of Preparer
                                                                                              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

**III.   Analysis.**

Under the *Rogers* test, a trademark owner does not have an actionable Lanham Act claim unless the defendant's use of the trademark either (1) is not artistically relevant to the underlying work, or (2) explicitly misleads consumers as to the source or content of the work.   *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020).   "Neither of these prongs is easy to meet."   *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020), cert. denied, No. 20-1616, 2021 WL 2519166 (U.S. June 21, 2021).

Here, no reasonable juror could find that Defendant's use of Plaintiff's mark either (1) is not artistically relevant to the underlying work, or (2) explicitly misleads consumers as to the source or content of the work.   Accordingly, summary judgment is warranted in favor of Defendant.

**A.   No Reasonable Juror Could Find that Defendant's Use of Plaintiff's Mark is Not Artistically Relevant to Defendant's Underlying Work.**

As to the first prong, any artistic relevance "above zero" is sufficient.   *Id.*; *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) ("even the slightest artistic relevance" is enough).

In *Twentieth-Century Fox v. Empire Distribution, Inc.*, the plaintiff, Empire Distribution, Inc.,[3] was a "well-known and respected record label that records and releases albums in the urban music genre."   875 F.3d 1192, 1195 (9th Cir. 2017).   The defendant was Twentieth Century Fox ("Fox"), the television broadcasting company.   *Id.*   Fox released a television show called *Empire*, which portrayed a fictional hip hop music label based in New York.   *Id.*   The television show featured music in every episode and, pursuant to an agreement with Fox, Columbia Records would release music for the public after each episode aired.   *Id.*   The plaintiff sued Fox, alleging trademark infringement under the Lanham Act.   *Id.*   The district court granted summary judgment in favor of Fox on the basis that the plaintiff could not satisfy either prong of the *Rogers* test.   *Id.*

---

[3] Although it is not clear why, the title of the case lists Twentieth-Century Fox—the defendant in the case—first, rather than listing Empire Distribution, Inc., first.   Regardless, the opinion makes clear that Twentieth-Century Fox was the defendant accused of trademark infringement.   *See generally* 875 F.3d 1192.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

The Ninth Circuit affirmed. In doing so, the court explained that no reasonable juror could find that Fox's use of the plaintiff's mark was not artistically relevant. This was because Fox's use of the mark "support[ed] the themes and geographic setting of the work." *Id.* at 1199. More specifically, "the show's setting is New York, the Empire State, and its subject matter is a music and entertainment conglomerate, 'Empire Enterprises,' which is itself a figurative empire." *Id.* at 1198.

The instant case is analogous to *Twentieth-Century Fox*. Defendant is in the business of publishing "curated, non-partisan commentary, opinions, and critiques" regarding "politicians, lobbyists, and aides" in Washington, D.C. Sherman Decl. ¶ 6. Defendant wanted the name of its publication to be "evocative of the U.S. Capitol" because its publication "heavily focuses on people and events in Washington D.C. and the Capitol." *Id.* ¶ 7. Defendant "selected the name Punchbowl News to elicit the theme and geographic location of [its] news publication—people and events in and near the U.S. Capitol." The reason that "Punchbowl" elicits the theme and geographic setting of Defendant's publication is that "'Punchbowl'" is the Secret Service nickname for the U.S. Capitol."[4] *Id.* ¶ 8.

In designing its logo, Defendant worked with a third-party marketing agency and sought to tie its imaging to the Capitol. *Id.* ¶ 10. Accordingly, the proposed designs largely invoked the Capitol building or its features. *Id.*; *see also id.* Ex. 1. Defendant's final logo also invokes the Capitol building:



Under these circumstances, no reasonable juror could conclude that Defendant's use of Plaintiff's mark is not artistically relevant to Defendant's underlying work. As in *Twentieth-Century*

---

[4] At no point does Plaintiff genuinely dispute the fact that the Secret Service's nickname for the Capitol is "Punchbowl." *See Matsushita*., 475 U.S. at (nonmoving party must present "specific facts showing that there is a *genuine issue for trial*.").

: _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

*Fox*, Defendant uses Plaintiff's mark to "support[] the themes and geographic setting of the work." 875 F.3d 1199. More specifically, Defendant's underlying work focuses on people and events in Washington D.C., including politicians, lobbyists, and aides—*i.e.*, individuals whose lives are largely centered around the Capitol building. The term "Punchbowl" is evocative of the Capitol building because it is the Secret Service's nickname for that building. And Defendant's logo makes that clear by including an image of the Capitol dome, upside down.

Accordingly, no reasonable juror could find in favor of Plaintiff on the first prong of the *Rogers* test.

**B. No Reasonable Juror Could Find that Defendant's Use of Plaintiff's Mark Explicitly Misleads Consumers as to the Source or Content of Defendant's Work.**

The second prong of the *Rogers* test is a "high bar that requires the use to be an explicit indication, overt claim, or explicit misstatement about the source of the work." *Dr. Seuss*, 983 F.3d at 462 (quotations and citations omitted). A plaintiff does not necessarily satisfy this prong merely by showing that the defendant expressly uses the trademark. *See id.* ("[A]lthough titling a book 'Nimmer on Copyright,' 'Jane Fonda's Workout Book,' or 'an authorized biography' can explicitly misstate who authored or endorsed the book, a title that 'include[s] a well-known name' is not *explicitly* misleading if it only '*implicitly* suggest[s] endorsement or sponsorship.'").

Indeed, the Ninth Circuit has found that a defendant selling a children's book did not explicitly mislead when using a title strikingly similar to that of a well-known children's book. *See id.* (finding title "Oh, the Places You'll Boldly Go!" not explicitly misleading to plaintiff's use of "Oh, the Places You'll Go!"); *see also id.* ("*Boldly* is not explicitly misleading as to its source, though it uses the Seussian font in the cover, the Seussian style of illustrations, and even a title that adds just one word—Boldly—to the famous title—*Oh, the Places You'll Go!*").

Rather, "because use of a trademark alone is not necessarily determinative, two more relevant considerations weigh in evaluating whether the mark is explicitly misleading: (1) the degree to which the junior user uses the mark in the same way as the senior user; and (2) the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Id.* (cleaned up).

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Here, no reasonable juror could find that either of these two considerations weigh in favor of Plaintiff. And, at a broader level, no reasonable juror could find that Defendant's use of Plaintiff's mark explicitly misleads consumers.

   **1. No Reasonable Juror Could Find that Defendant Uses "Punchbowl" In the Same Way That Plaintiff Does.**

In assessing this first consideration, courts evaluate whether "the junior user has employed the mark in a different context—often in an entirely different market—than the senior user." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018). "This is not a mechanical test—all of the relevant facts and circumstances must be considered." *Id.* at 269 (quotations omitted). Plaintiff acknowledges that "[t]he similarity of the parties' services is critical." Opp. at 13.

Here, Defendant operates an "an online membership-based news publication that provides newsletters, podcasts, and videos in the fields of government, politics, public policy, and current events." Sherman Decl. ¶ 5. The publication offers "curated, non-partisan commentary, opinions, and critiques" regarding "politicians, lobbyists, and aides." *Id.* ¶ 6. In sum, Defendant operates in the field of journalism.

By contrast, Plaintiff is a "technology company that develops online communications solutions for consumers, including online event and celebration invitations and greetings cards, sold as a subscription-based service." Douglas Decl. ¶ 3. Plaintiff's services are used by "millions of consumers including individuals and corporations across the United States and around the world." *Id.* ¶ 4. Plaintiff works with "prestigious companies such as The Walt Disney Company, Party City Holdings, Sesame Workshop, Chuck E. Cheese's, Dave & Busters, and many others." *Id.* ¶ 6.

As the foregoing discussion demonstrates, the services operated by Plaintiff and Defendant are not similar. Instead, each party operates in "entirely different market[s]." *Gordon*, 909 F.3d at 270. Defendant operates a news publication; Plaintiff operates a technology company that creates online invitations and greeting cards. Those two businesses "do not go together like a horse and carriage or, perish the thought, love and marriage." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100–01 (9th Cir. 2008) (finding defendant's use of trademark not explicitly misleading where

                                                          :

Initials of Preparer

                                       PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

defendant produced video games and plaintiff operated strip club).

Plaintiff argues that both parties' services in this case are "targeted at the same general category of consumers." Opp. at 5. No reasonable juror could agree. As noted above, Defendant operates an online news publication focused on politicians, lobbyists, and aides in Washington, D.C. Simply put, Defendant targets individuals who follow politics closely.

By contrast, Plaintiff targets families and, specifically, mothers with young children. Plaintiff's Chief Operating Officer states in emails that Plaintiff's audience is "primarily moms with young kids." Douglas Decl., Ex. B at 10, 12. This target audience is confirmed by some of the companies that Plaintiff works with: The Walt Disney Company, Party City Holdings, Sesame Workshop, Chuck E. Cheese's, and Dave & Busters. *See id.* ¶ 6. Accordingly, the Court is not persuaded by Plaintiff's argument that both parties in the instant case target the same category of consumers.

Plaintiff argues that Defendant uses the mark in the same way as Plaintiff because they both use the mark "to identify the source of [their] products and services." Opp. at 12–17.

This argument fails for three reasons. First, it is effectively an argument that mere use of the mark itself is sufficient for a finding that a defendant uses the mark in an explicitly misleading manner. Yet, "if this were enough to satisfy this prong of the *Rogers* test, it would render *Rogers* a nullity." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 902 (9th Cir. 2002); *see also id.* (finding music record company did not explicitly mislead when it used "Barbie" in song title because "[t]he *only* indication that Mattel might be associated with the song is the use of Barbie in the title") (emphasis in original).

Second, what Plaintiff is really getting at is that, because both Defendant and Plaintiff operate commercially and sell services to consumers, it is explicitly misleading for Defendant to use Plaintiff's mark as the name of its news publishing operation. Yet, this argument is foreclosed by *Twentieth-Century Fox*. There, not only did Fox produce a TV show called *Empire*—i.e., the name of plaintiff's company—it also used the mark as "an umbrella brand to promote and sell music and other commercial products," including "the sale or licensing of consumer goods."[5]  875 F.3d at 1196. In other words,

---

[5] Indeed, Fox's use of the mark "Empire" was perhaps more misleading because the television show *Empire* and the products

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Fox was doing exactly what Plaintiff argues is explicitly misleading: using the trademark to label "the individual products it creates and the services it provides." Opp. at 16.

Despite the overlapping industries—a circumstance not present here—and the fact that both Fox and the plaintiff used the "Empire" mark as a source-identifier, the Ninth Circuit held that the plaintiff could not satisfy either prong of the *Rogers* test. *Id.*; *see also Dr. Seuss*, 983 F.3d at 460 (finding Plaintiff failed to satisfy *Rogers* test even though both parties sold book with strikingly similar title that "aimed to capitalize on the same graduation market").

Third, the argument is inconsistent with the facts. Specifically, unlike Plaintiff, Defendant does not use the mark "Punchbowl" alone.[6] Rather, it consistently uses it in conjunction with the word "news," *i.e.*, "Punchbowl News." *See* Sherman Decl., Exs. 2, 3, 4, 5, 6; *see also Gordon*, 909 F.3d at 271 (finding triable issue of fact existed in part because defendant used plaintiff's mark "without any other text").[7] And, as discussed below, Defendant adds its own expressive content every time it uses the mark "Punchbowl." *See infra* at 10.

---

associated with the brand directly related to the same industry that the plaintiff operated in: hip-hop music production. *Twentieth-Century Fox*, 875 F.3d at 1195.

[6] Even if Defendant did, that still may be insufficient. *See Twentieth-Century Fox*, 875 F.3d at 1199 (holding plaintiff failed to satisfy second prong of *Rogers* test even though Fox used mark "Empire" alone).

[7] This case is distinguishable from *Gordon* for another key reason: both the plaintiff and defendant in *Gordon* sold, at least in part, the same product. Specifically, both the plaintiff and defendant sold greeting cards. *See Gordon*, 909 F.3d at 271. Although the plaintiff sold other goods as well, this overlap in goods sold was the primary reason the Ninth Circuit found a triable issue regarding whether the defendant's use of the mark was explicitly misleading:

> Gordon has introduced evidence that he sold greeting cards and other merchandise with his mark; that in at least some of defendants' cards, Gordon's mark was used without any other text; and that defendants used the mark knowing that consumers rely on marks on the inside of cards to identify their source. Gordon's evidence is not bulletproof; for example, defendants' cards generally use a slight variation of the HBDGS phrase, and they list defendants' website on the back cover. But a jury could conclude that defendants' use of Gordon's mark on one or more of their cards is "explicitly misleading as to [their] source."

*Id.* Here, by contrast, Defendant operates in an "entirely different market" than Plaintiff. *See supra* at 6–7.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Finally, Plaintiff presents evidence of actual confusion from consumers and argues that said evidence establishes Defendant is explicitly misleading consumers. Opp. at 17–18; *see also* Douglas Decl., Ex. B.

This argument is unavailing. As the Ninth Circuit explained in *Gordon*, the key aspect of the second prong of the *Rogers* test is that "the creator must explicitly mislead consumers . . . [the] focus [is] on the nature of the junior user's behavior rather than on *the impact of the use*." 909 F.3d at 269 (emphasis added) (cleaned up). Accordingly, evidence of actual confusion is not particularly relevant to the second prong of the *Rogers* test. Nor is evidence that third parties refer to Defendant as "Punchbowl" and not "Punchbowl News."

In fact, the Ninth Circuit expressly rejected the relevance of actual confusion in a recent analysis of this issue. In *Dr. Seuss*, the plaintiff conducted a survey for actual confusion. *See* 983 F.3d at 462. The survey showed that 24% of respondents confused the products of the defendant and plaintiff. *See Dr. Seuss*, Plaintiff-Appellant's Opening Brief, 2019 WL 3816473 at *14. The Ninth Circuit unequivocally explained that the survey evidence was of no consequence:

> *Boldly* is not explicitly misleading as to its source, though it uses the Seussian font in the cover, the Seussian style of illustrations, and even a title that adds just one word—Boldly—to the famous title—*Oh, the Places You'll Go!*. *Seuss's evidence of consumer confusion in its expert survey does not change the result*. The *Rogers* test drew a balance in favor of artistic expression and tolerates the slight risk that the use of the trademark might implicitly suggest endorsement or sponsorship to some people.

*Dr. Seuss*, 983 F.3d at 462 (emphasis added) (cleaned up); *see also Brown*, 724 F.3d at 1245 ("Adding survey evidence changes nothing.").

Considering "all of the relevant facts and circumstances," no reasonable juror could conclude that Defendant uses "Punchbowl" in the same way that Plaintiff does.[8]

---

[8] Even if a reasonable juror could find that Defendant uses the mark in the same way, that would not necessarily be sufficient to meet Plaintiff's burden. *See Dr. Seuss*, 983 F.3d at 463 (holding plaintiff failed to satisfy second *Rogers* prong where

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

    **2.**    **No Reasonable Juror Could Find that the Extent to Which Defendant Added Its Own Expressive Content to the Work Beyond the Mark Itself .[9]**

    This consideration turns on whether a defendant uses the mark "as only one component of [their] larger expressive creation, such that the use of the mark at most implicitly suggests that the product is associated with the mark's owner," or whether the defendant uses the mark "as the centerpiece of an expressive work itself, unadorned with any artistic contribution."   *Gordon*, 909 F.3d at 271.

    Here, no reasonable juror could find that Defendant uses the mark as the centerpiece of an expressive work itself, without any artistic contribution.   As noted above, Defendant always uses the mark in conjunction with the word "news," thereby titling its publications with the phrase "Punchbowl News."   *See* Sherman Decl., Exs. 2, 3, 4, 5, 6.   That phrase is sometimes accompanied by another slogan: "Power.   People.   Politics."   *See id.*   And the phrase "Punchbowl News" appears, almost always, next to the image of the Capitol dome, upside down and filled with punch.   *See id.*

    Moreover, Defendant consistently connects its publication to its founders: Jake Sherman, Anna Palmer, and John Bresnahan.   Sherman Decl. ¶ 12.   Each of these individuals are highly credentialed journalists.   *See id.* ¶¶ 2–5.   Defendant's state on the website that Punchbowl News was founded by those three individuals, and Defendant's publications consistently tie Punchbowl News to those three founders in an explicit manner.   *See id.*; *see also id.* Exs. 2, 3, 4, 5, 6.   This further supports the Court's conclusion that no reasonable juror could find that Defendant uses the mark in an explicitly misleading manner.   *See Dr. Seuss*, 983 F.3d at 463 (finding defendant's use of mark not explicitly misleading in part because cover of defendant's book "conspicuously lists" the authors of the book and not the plaintiff).[10]

---

both parties used marks in same way but defendant added expressive content to work beyond mark itself).

[9] Plaintiff does not analyze this consideration in either of its briefs.   *See generally* Dkts. 24, 29.

[10] Indeed, Plaintiff acknowledges that a court must assess this prong of the *Rogers* test "[i]n light of the information available to consumers about who created [the] work."   Opp. at 15.

                                                                                                                                           :

Initials of Preparer

                                                                                                                             PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Thus, Defendant uses the mark "Punchbowl" as only "one component" of its work, such that "the use of the mark at most implicitly suggests that the product is associated with the mark's owner." *Gordon*, 909 F.3d at 271.

Accordingly, no reasonable juror could find that this consideration weighs in favor of Plaintiff.

\* \* \*

Finally, Plaintiff argues that "Defendant's First Amendment rights are not being impinged in any way because Defendant remains able to select any non-infringing mark as the source identifier for its goods and services without any impact on its Constitutional right to report and comment on the news." Opp. at 5.

The Court rejects this argument because it would eviscerate the *Rogers* test. The *Rogers* test applies to "expressive works." *Jack Daniel's*, 953 F.3d at 1174. An "expressive work" is a work that is "communicating ideas or expressing points of view." *Id.* "A work need not be the expressive equal of *Anna Karenina* or *Citizen Kane* to satisfy this requirement." *Id.* (quotations omitted).

Inherently, an expressive work could always be "expressed" differently. For example, each of the defendants in *Dr. Seuss*, *E.S.S.*, *Mattel*, and *Twentieth-Century Fox* could have chosen a different title or used a different word. If that were sufficient for the plaintiffs in those cases to prevail, the Ninth Circuit would not have applied the *Rogers* test. Indeed, if the existence of alternative titles were sufficient, the *Rogers* test would rarely, if ever, apply. Yet, in none of those cases did the Ninth Circuit even discuss alternative titles or words.

This is likely because *Rogers* itself rejects consideration of alternative means: "In the context of titles, this 'no alternative' standard provides insufficient leeway for literary expression." 875 F.2d 994, 999 (2d Cir. 1989).

This is not a time, place, and manner case where courts must consider alternative means of access or expression. *Cf. Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) ("While alternative means of access to Mandel's ideas might be a relevant factor were we called upon to balance First Amendment

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

rights against governmental regulatory interests . . . we are loath to hold on this record that existence of other alternatives extinguishes altogether any constitutional interest on the part of the appellees in this particular form of access."). The key inquiry here is not whether there are alternative titles that Defendant could have chosen. Rather, the issue is whether "the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.*

For the reasons discussed above, the Court concludes that the public interest in avoiding consumer confusion does not outweigh the public interest in free expression. This is because no reasonable juror could find that Defendant's use of Plaintiff's mark either (1) is not artistically relevant to the underlying work, or (2) explicitly misleads consumers as to the source or content of the work. Accordingly, summary judgment is warranted in favor of Defendant.

**IV.    Plaintiff's Evidentiary Objections Are Unavailing.**

In his declaration, Sherman describes, among other things, why AJ Press, LLC—*i.e.*, Defendant—chose the name "Punchbowl News." Sherman Decl. ¶ 6. In doing so, Sherman uses the term "we" and speaks on Defendant's behalf.

Plaintiff makes two objections to this declaration. First, Plaintiff argues that Sherman lacks personal knowledge of the statements in his declaration. According to Plaintiff, Sherman cannot use the word "we" or describe AJ Press's position on anything because "entities cannot be credibly understood as having independent viewpoints." Opp. at 18. Second—and similarly—Plaintiff argues that the Sherman declaration contains inadmissible hearsay because Sherman uses the term "we" in reference to AJ Press, LLC and, accordingly, Sherman "appears to be summarizing the statements and opinions of multiple people throughout his declaration." *Id.* at 19.

These arguments ignore the obvious: Sherman is the co-founder of AJ Press, LLC. Sherman Decl. ¶ 6. Accordingly, he most certainly has personal knowledge of AJ Press, LLC's decision-making process. Indeed, Plaintiff seeks discovery regarding AJ Press's awareness of the Punchbowl mark prior to starting Punchbowl News. Presumably Plaintiff would want to depose an official representing AJ Press under FRE 30(b)(6). That individual would likely be Sherman.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

There is also no hearsay issue. Sherman is not "summarizing the statements and opinions of multiple people throughout his declaration." Opp. at 19. Instead, he is speaking on behalf of AJ Press, LLC. *See* Sherman Decl. ¶ 6 ("AJ Press, LLC ('AJ Press' or 'we') owns and operates Punchbowl News."). There can be no doubt that, if Sherman were to present his declaration in the form of live testimony at trial, that testimony would not constitute inadmissible hearsay. Accordingly, Sherman's declaration is properly considered on summary judgment. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.").

**V.     A Rule 56(d) Continuance is Not Warranted.**

Plaintiff requests a continuance under Rule 56(d) to obtain discovery regarding the following: (1) Defendant's awareness of Plaintiff when Defendant chose the name "Punchbowl News"; (2) whether Defendant intended to associate itself with Plaintiff when it chose the name "Punchbowl News"; (3) the "full array of goods and services offered by Defendant . . . which would further demonstrate that Defendant uses the mark to identify the source of all of its goods and services (*i.e.*, as a source identifier)"; and (4) evidence of actual confusion. Willsey Decl. ¶¶ 5, 6.

The Court declines Plaintiff's request. *Twentieth-Century Fox* forecloses any continuance based on the first three items that Plaintiff seeks in discovery. *See* 875 F.3d at 1199–1200 (affirming denial of Rule 56(d) request where "[t]he subjects of further discovery that Empire Distribution claims would have been relevant are 'FOX's reason for selecting the 'EMPIRE' name, FOX's prior knowledge of EMPIRE's trademarks ..., and FOX's marketing strategy to mislead consumers.'"). Moreover, the mere allegation that Defendant uses the mark as a source-identifier is insufficient for Plaintiff to prevail. *See generally id.*; *see also supra* at 7–8.

The fourth basis for the Rule 56(d) request is similarly unavailing, because, as discussed above, "[a]dding survey evidence changes nothing." *Brown*, 724 F.3d at 1245; *see also supra* at 9.

Accordingly, Plaintiff's request under Rule 56(d) is denied.

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

**VI.  Conclusion**

For the foregoing reasons, the motion for summary judgment is GRANTED.[11]

**IT IS SO ORDERED.**

---

[11] The Court's ruling applies to all claims asserted in this case, not just the trademark infringement claims.  *See Mattell*, 296 F.3d at 901, 902 n.2 (successful First Amendment defense entitles defendant to summary judgment on state law claims for unfair competition); *E.S.S*, 547 F.3d at 1101 ("Since the First Amendment defense applies equally to [Defendant's] state law claims as to its Lanham Act claim, the district court properly dismissed the entire case . . . .").

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |