1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
Ballon@gtlaw.com
NINA D. BOYAJIAN (SBN 246415)
BoyajianN@gtlaw.com
JULIANNA M. SIMON (SBN 307664)
SimonJu@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendant AJ Press, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUNCHBOWL, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>v.<br><br>AJ PRESS LLC, a Delaware limited liability company,<br><br>       Defendant. | CASE NO.: 2:21-cv-03010-SVW-MAR<br><br>**DEFENDANT AJ PRESS, LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**<br><br>*[Filed Concurrently with Declaration of Nina D. Boyajian, and Proposed Order]*<br><br>Date:       September 20, 2021<br>Time:       1:30 PM<br>Location:  Courtroom 10A, 10th Floor,<br>           350 W. 1st Street,<br>           Los Angeles, CA 90012<br>Judge:    Hon. Stephen V. Wilson |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on September 20, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson, via zoom, in Courtroom 10A, 10th Floor, 350 W. 1st Street, Los Angeles, CA 90012, Defendant AJ Press, LLC will and hereby does submit this Motion for Attorneys' Fees and Non-Taxable Costs.

This Motion is made on the ground this is an exceptional case under the Lanham Act, 15 U.S.C. § 1117(a). AJ Press respectfully requests an award of reasonable attorneys' fees and non-taxable costs in the amount of $239,832.97.

This Motion is based on this Notice, the concurrently filed Memorandum of Points and Authorities, the Declaration of Nina D. Boyajian, and the exhibits thereto, all matters upon which judicial notice may be taken, the complete files and records in this action, and any argument the Court may permit.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place between July 23, 2021 and July 26, 2021.


DATED: July 30, 2021                    GREENBERG TRAURIG, LLP

                                 By:    /s/ *Ian C. Ballon*
                                        Ian C. Ballon
                                        Nina D. Boyajian
                                        Julianna M. Simon
                                        Attorneys for Defendant AJ Press LLC

2

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   RELEVANT BACKGROUND ....................................................................2

     A.    Plaintiff Inappropriately Commenced this Lawsuit in an Improper Forum ...............................................................................................2

     B.    Procedural History in this Court.......................................................3

         1.    Plaintiff Re-Filed the Lawsuit in This Court .......................3

         2.    The Parties' Motion Practice ................................................3

III.  LEGAL STANDARD ................................................................................5

IV.  ARGUMENT.............................................................................................6

     A.    AJ Press Is The "Prevailing Party" on Each of Plaintiff's Claims ................6

     B.    This is an "Exceptional Case" Warranting an Award of Attorneys' Fees...............................................................................................6

         1.    Plaintiff's Claims Were Objectively Unreasonable, Not Supported by Any Evidence, and Contradicted by Established Case Law ...............................................................6

         2.    Plaintiff Made Misleading Statements of Law to the Court .............10

         3.    Fees Should be Awarded to Deter Future Litigation Misconduct and Compensate AJ Press For Unnecessary Litigation Costs Incurred ........................................................11

     C.    AJ Press is Entitled To Its Requested Attorneys' Fees................................11

         1.    The Hourly Rates for AJ Press' Timekeepers are Reasonable ..........12

         2.    The Hours Billed by AJ Press' Counsel are Reasonable ...................14

         3.    The Lodestar is Reasonable and No Adjustment is Warranted .........15

         4.    AJ Press' Counsels' Work on State and Common Law Claims is Inextricably Intertwined With The Lanham Act Claims ...................16

     D.    AJ Press is Entitled to Non-Taxable Costs .................................................17

V.   CONCLUSION........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbywho, Inc. v. Interscope Recs.*,
No. CV0606724MMMJTLX, 2008 WL 11406099 (C.D. Cal. Jan. 7, 2008) ............... 11

*Amusement Art, LLC v. Life Is Beautiful, LLC*,
768 F. App'x 683 (9th Cir. Apr. 23, 2019)..................................................... 6

*ANT v. McPartlin*,
No. CV 09-7672 PSG (RZX), 2010 WL 11520033 (C.D. Cal. Aug. 5, 2010) .............. 7

*Blackwell v. Foley*,
724 F. Supp. 2d 1068 (N.D. Cal. 2010)....................................................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984)......................................................................... 13

*Cain v. J.P. Productions*,
11 F. App'x 714 (9th Cir. 2001) ........................................................... 16

*Caiz v. Roberts*,
382 F. Supp. 3d 942 (C.D. Cal. 2019), *appeal dismissed,* No. 19-55611, 2019 WL
6331647 (9th Cir. Aug. 30, 2019).......................................................... 10

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) .............................................................. 13

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
79 F. Supp. 3d 1111 (C.D. Cal. 2015)...................................................... 6

*Chalmers v. City of L.A.*,
796 F.2d 1205 (9th Cir. 1985) ............................................................ 12

*Chloe SAS v. Sawabeh Info. Services Co.*,
No. CV1104147MMMMANX, 2015 WL 12763541 (C.D. Cal. Jun. 22, 2015) .......... 16

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986) ............................................................. 12

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ............................................................. 17

*Cyclone USA, Inc. v. LL & C Dealer Serv., LLC*,
No. CV 03-992AJW, 2010 WL 2104963 (C.D. Cal. May 24, 2010)........................ 15

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (2008)...................................................................... 17

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
   230 F. Supp. 3d 1146 (N.D. Cal. 2017) ................................................................ 6, 11

*Express LLC v. Forever 21*, 09-cv-04514 ODW (VBKx), 2010 WL 11512410
   (C.D. Cal. Nov. 15, 2010) ...................................................................................... 17

*Fernandez v. Vict. Secret Stores, LLC*,
   No. 06-cv-04149 MMM, 2008 WL 81508056 (C.D. Cal. July 21, 2008) ............... 12

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) .............................................................................................. 5, 6

*Gates v. Rowland*,
   39 F.3d 1439 (9th Cir. 1994) .................................................................................. 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................. 14

*HomeGoods, Inc. v. Papanicolaou*,
   No. CV1906912CJCPLAX, 2019 WL 7171541 (C.D. Cal. Dec. 4, 2019) .............. 14

*Intel Corp. v. Terabyte Int'l, Inc.*,
   6 F.3d 614 (9th Cir. 1993) ......................................................................... 11, 12, 14

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010) ....................................................................... 6, 10, 16

*Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*,
   No. CV 20-4822-PLA, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) ..................... 10

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) .................................................................................. 10

*Mattel, Inc. v. Walking Mountain Prods.*,
   No. CV99-8543RSWL(RZX), 2004 WL 1454100 (C.D. Cal. June 21, 2004) ......... 9, 17

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ............................................................................. 12, 15

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ......................................................................... 14, 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ................................................................................................ 1, 5

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............. 14

*Pom Wonderful, LLC v. Purely Juice, Inc.*,
   No. CV 07-2633 CAS, 2008 WL 4351842 (C.D. Cal. Jul. 17, 2008) ....................... 16

*Punchbowl, Inc. v. AJ Press LLC*,
    No. 1:21-CV-00136, 2021 WL 1178070 (E.D. Va. Mar. 26, 2021) ................. 1, 2, 3, 10

*Rivera v. City of Riverside*,
    763 F.2d 1580 (9th Cir. 1985) ................................................................... 15

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ........................................... 1, 2, 3, 4, 7, 8, 9, 10

*Saliba Corp. v. City of Hailey*,
    452 F.3d 1055 (9th Cir. 2006) ................................................................. 11

*San Diego Comic Convention v. Dan Farr Prods.*,
    807 F. App'x 674 (9th Cir. 2020)............................................................... 6

*San Diego Comic Convention v. Dan Farr Prods.*,
    No. 14-CV-1865-AJB-JMA, 2019 WL 1599188 (S.D. Cal. Apr. 15, 2019) *aff'd in part and vacated in part,* 807 Fed. App'x 674 (9th Cir. 2020)................................. 5

*Schwartz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ..................................................................... 13

*Secalt S.A. v. Wuxi Shenxi Construction Machinery Co., Ltd.*,
    668 F.3d 677 (9th Cir. 2012) ................................................................... 17

*Stilwell Dev., Inc. v. Chen*,
    No. CV86-4487-GHK, 1989 WL 418783 (C.D. Cal. Apr. 25, 1989) .................... 13, 15

*Stonebrae v. Toll Bros., Inc.*,
    No. C-08-0221 EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011)............................ 16

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
    839 F.3d 1179 (9th Cir. 2016) ................................................................... 5

*Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ................................................................... 7

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    130 F. Supp. 3d 1331 (C.D. Cal. 2015) ........................................................ 13

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    No. SACV1200329AGJPRX, 2015 WL 12733442 (C.D. Cal. Mar. 10, 2015)........... 11

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
    No. EDCV16600JGBDTBX, 2018 WL 6177237 (C.D. Cal. July 9, 2018)................. 14

*Widrig v. Apfel*,
    140 F.3d 1207 (9th Cir. 1998) ................................................................... 13

**Federal Statutes**

Lanham Act, 15 U.S.C. § 1117(a) ................................................................ 1, 2, 5, 8, 16, 17

**Rules**

Fed. R. Civ. P. 11 ................................................................................................. 2, 3

Fed. R. Civ. P. 12(b)(3) .......................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2

L.R. 54-1 .............................................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Under the Lanham Act (15 U.S.C. § 1117(a)), a Court may award reasonable attorneys' fees to the prevailing party in an "exceptional case" – one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated" after evaluating the "totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554, 554 n.6 (2014). The totality of the circumstances in this case warrants an award of fees to defendant AJ Press, LLC.

Plaintiff Punchbowl, Inc. pursued trademark infringement claims based on AJ Press' use of *Punchbowl News* in connection with an online membership-based news publication in the fields of government, politics, public policy, and current events, claiming that such use infringed on its right to use "punchbowl" in connection with party invitations and greeting cards. In addition to the implausibility that the parties' respective uses would result in consumer confusion, Plaintiff's claims were also barred by the application of the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Indeed, information publicly available to Plaintiff ***before*** it filed this lawsuit, including AJ Press' website, online news publications, and Twitter page, showed that Plaintiff could not establish either the artistic relevance prong or the explicitly misleading prong of the *Rogers* test. Such publicly available information incorporated in Plaintiff's Complaint evidenced the artistic relevance of *Punchbowl News* and further showed that AJ Press explicitly states that its renowned journalist co-founders – not Plaintiff – are the source of its news publications.

Notwithstanding this evidence, Plaintiff proceeded to aggressively litigate its positions, forcing AJ Press to reasonably incur significant attorneys' fees. First, Plaintiff initially filed this lawsuit in an improper venue, which was dismissed by the judge in the Eastern District of Virginia as "clearly an attempt at forum-shopping." *Punchbowl, Inc. v. AJ Press LLC*, No. 1:21-CV-00136, 2021 WL 1178070, at *3 (E.D. Va. Mar. 26, 2021). Second, after Plaintiff re-filed in this District and counsel for AJ Press attempted to quickly

1

resolve this matter to avoid incurring additional attorneys' fees by informing Plaintiff's counsel that each of Plaintiff's claims failed under the *Rogers* test, Plaintiff's counsel suggested that AJ Press' position was borderline violative of Fed. R. Civ. P. 11. Third, in response to AJ Press' motion to dismiss and later its converted motion for summary judgment, Plaintiff took groundless positions regarding Ninth Circuit authority interpreting *Rogers*, the parties' respective use of "punchbowl," the parties' target customers, and the admissibility of AJ Press' evidence. Fourth, and critically, ***Plaintiff failed to submit any admissible evidence to support its claims***. Plaintiff's claims were objectively unreasonable and the Court granted summary judgment in favor of AJ Press ***before*** AJ Press filed its reply brief.

Plaintiff's objectively unreasonable claims and aggressive approach to this litigation makes this an exceptional case under the standard set forth in *Octane Fitness*. For these reasons and those set forth below, AJ Press respectfully requests that the Court award it its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## II.    RELEVANT BACKGROUND

### A.    Plaintiff Inappropriately Commenced this Lawsuit in an Improper Forum

In a transparent act of forum-shopping, Plaintiff first filed this lawsuit, which included even a claim for federal trademark counterfeiting (Declaration of Nina D. Boyajian ("Boyajian Decl.") Ex. 7), in the Eastern District of Virginia, Alexandria Division (the "VA Action"), even though neither party had any particular connection to Virginia other than having websites accessible there (and everywhere else in America), none of the acts Plaintiff complained of took place in Virginia, and none of the alleged damages took place in Virginia. *Punchbowl, Inc. v. AJ Press LLC*, No. 1:21-CV-00136, 2021 WL 1178070, at *3 (E.D. Va. Mar. 26, 2021). AJ Press filed a motion to dismiss pursuant to Rule 12(b)(3) for improper venue and pursuant to Rule 12(b)(6) as to Plaintiff's counterfeiting claim. *Punchbowl, Inc.* at *1. The Virginia court granted AJ Press' motion and dismissed the case due to improper venue, stating:

Plaintiff's attorney filed this action in a district where no party could be said

to be at home and where the Defendant's connections to the district were thin at best. This is clearly an attempt at forum-shopping in the hopes of having the matter adjudicated quickly.

*Id.* at *3.[1]

## B.   Procedural History in this Court

### 1.   Plaintiff Re-Filed the Lawsuit in This Court

On April 7, 2021, Plaintiff filed its Complaint in this District for federal and common law trademark infringement, unfair competition, and false designation of origin, and violations of the California Unfair Competition Law. ECF No. 1. Noticeably absent from Plaintiff's Complaint is the claim for counterfeiting it alleged in the VA Action. In the Complaint, Plaintiff included evidence showing that "Punchbowl is the Secret Service nickname for the Capitol," AJ Press explicitly states on the *Punchbowl News* website that its journalist co-founders are the source of AJ Press' news publication, and AJ Press depicts a large picture of its co-founders on the *Punchbowl News* website. *Id.* at ¶ 20.

On May 3, 2021, Nina Boyajian and Julianna Simon, counsel for AJ Press, met and conferred with Plaintiff's counsel, Peter Willsey, regarding AJ Press' anticipated motion to dismiss on the ground that AJ Press' challenged use of *Punchbowl News* is protected by the First Amendment under *Rogers.* In response, Mr. Willsey stated that AJ Press' motion under *Rogers* would be borderline violative of Fed. R. Civ. P. 11. Boyajian Decl. ¶ 23. Mr. Willsey further advised counsel for AJ Press to merely file an answer to the Complaint so the parties can proceed to discovery. *Id.*

### 2.   The Parties' Motion Practice

On May 10, 2021, AJ Press filed a motion to dismiss on the ground that AJ Press' challenged use of *Punchbowl News* is protected by the First Amendment under the *Rogers* test. ECF No. 23. After briefing by both parties, the Court issued an Order holding that the

---

[1] The Virginia court further held that Plaintiff's arguments were contrary to Fourth Circuit law (*see, e.g., id.* at *2 ("[n]either this Court nor the Fourth Circuit have ever adopted the rule [that Plaintiff proposed]"); *id.* at *3 (Plaintiff's "statement is inconsistent with the Fourth Circuit's holding …")), and that Plaintiff's attorney reasonably should have foreseen that the forum in which he filed was improper. *Id.*

*Rogers* test applies in this case, converted AJ Press' motion to a motion for summary judgment, and sought additional briefing and evidence from the parties. ECF No. 27 at 1.

AJ Press' supplemental brief was supported by the declaration of one of AJ Press' co-founders, Jake Sherman, who provided evidence supporting AJ Press' use of *Punchbowl News* and the artistic relevance of *Punchbowl News* to AJ Press' news publication. ECF No. 28-1. Plaintiff's opposition to AJ Press' supplemental brief was accompanied by the declarations of Mr. Willsey and Plaintiff's CEO, Matt Douglas, which attached unauthenticated hearsay evidence ostensibly showing actual confusion. ECF Nos. 29, 29-1, 29-2. In its brief, Plaintiff asserted groundless positions, including that certain statements in Mr. Sherman's declaration were hearsay (ECF No. 29 at 18) and that the Court should allow Plaintiff to conduct discovery on various issues. *Id.* at 20.

On July 19, 2021, before AJ Press even had a chance to file its reply brief and evidentiary objections which otherwise were due that day, the parties received notice of the Court's Order granting summary judgment in favor of AJ Press dated July 16, 2020. ECF No. 31. The Court made the following findings, among others:

- "[N]o reasonable juror could find in favor of Plaintiff on the first prong of the *Rogers* test" in part because the term 'Punchbowl' is evocative of the Capitol building because it is the Secret Service's nickname of the building and AJ Press' logo makes that clear by including an image of the Capitol dome inverted. *Id.* at 5.

- "[T]he services operated by Plaintiff and Defendant are not similar. Instead, each party operates in 'entirely different market[s].' Defendant operates a news publication; Plaintiff operates a technology company that creates online invitations and greeting cards." *Id.* at 6 (internal citation omitted).

- "No reasonable jury could agree" with Plaintiff's argument that the parties' services are targeted the same category of consumers – AJ Press targets "individuals who follow politics closely" while Plaintiff "targets families and, specifically, mothers with young children." *Id.* at 7.

- Plaintiff's argument that the parties use the mark in the same way because they both use "punchbowl" as a source indicator contradicts Ninth Circuit law. *Id.* at 7-8.

4

- Plaintiff's argument that AJ Press use of *Punchbowl News* is explicitly misleading because both parties operate commercially and sell services to consumers is "foreclosed by *Twentieth-Century Fox*." *Id.* at 7.

- Plaintiff's argument that the parties use the mark in the same way "is inconsistent with the facts." *Id*. at 7-8.

- Plaintiff's alleged evidence of actual confusion does not establish that AJ Press is explicitly misleading consumers and the Ninth Circuit recently expressly rejected the relevance of actual confusion. *Id.* at 10.

- Plaintiff's evidentiary objections to Mr. Sherman's declaration are unavailing because Mr. Sherman has personal knowledge of AJ Press' decision-making process and his testimony is not hearsay. *Id.* at 12-13.

- Plaintiff's request for discovery is foreclosed by Ninth Circuit precedent. *Id.* at 13.

### III.   <u>LEGAL STANDARD</u>

The Lanham Act provides that the Court may award reasonable attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Supreme Court's decision in *Octane Fitness*, "lowered the bar for an exceptional case finding." *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-CV-1865-AJB-JMA, 2019 WL 1599188, at *2 n.3 (S.D. Cal. Apr. 15, 2019) *aff'd in part and vacated in part,* 807 Fed. App'x 674 (9th Cir. 2020). Under *Octane Fitness*, "an 'exceptional case' is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.[2] Determining whether a case is exceptional requires evaluating the "totality of the circumstances," including considerations such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554, n.6 (citing *Fogerty v. Fantasy, Inc.,* 510 U.S.

---

[2] In *SunEarth, Inc. v. Sun Earth Solar Power Co*., Ltd., 839 F.3d 1179 (9th Cir. 2016), an *en banc* Ninth Circuit held the *Octane Fitness* standard applies to Lanham Act cases.

517, 535 n.19 (1994)).

"Fees may be awarded where a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless exceptional." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015) (quoting *id.* at 555) (internal quotations omitted). The Ninth Circuit has stated that a case with "groundless and unreasonable" claims is exceptional as a matter of law. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 616 (9th Cir. 2010); *Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. Apr. 23, 2019) (affirming exceptional case as to claims that were "extremely weak"). Courts have also found that a party's re-litigation of issues already decided by the court (*San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020)) and a party's "misrepresentations and misleading statements to the Court" (*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1151 (N.D. Cal. 2017) ("*Ceiba Legal*")) are factors that contribute to exceptionality.

## IV.   ARGUMENT

### A.   AJ Press Is The "Prevailing Party" on Each of Plaintiff's Claims

AJ Press is the prevailing party by virtue of the Court's granting summary judgment in its favor on all of Plaintiff's claims. ECF No. 31 at 14 n.11; *see* L.R. 54-1 ("The 'prevailing party' entitled to costs under F.R.Civ.P. 54(d) is the party in whose favor judgment is entered, unless otherwise determined by the Court.").

### B.   This is an "Exceptional Case" Warranting an Award of Attorneys' Fees

1.   Plaintiff's Claims Were Objectively Unreasonable, Not Supported by Any Evidence, and Contradicted by Established Case Law

Each of Plaintiff's claims were objectively unreasonable from the outset. Publicly available information, including public information Plaintiff included in its Complaint – a screenshot of AJ Press' website showing the artistic relevance of *Punchbowl News* and AJ Press' explicit disclosure that its journalist co-founders are the source of its news publications – conclusively demonstrated that Plaintiff could not satisfy the two prongs of

*Rogers* test and therefore Plaintiff's claims failed as a matter of law. ECF No. 1 at ¶ 20. Despite this information, Plaintiff unnecessarily prolonged this litigation by repeatedly taking positions that have been explicitly rejected by the Ninth Circuit and district courts.

First, Plaintiff took the unreasonable position that AJ Press' use of *Punchbowl News* is not subject to the *Rogers* test. ECF No. 24 at 10-16. Despite the Court's prior determination that Plaintiff's "position is inconsistent with law" (ECF No. 27 at 1), Plaintiff re-litigated this issue in its subsequent brief. ECF No. 29 at 5-7.

Second, Plaintiff took the unreasonable position that AJ Press' use of *Punchbowl News* was not artistically relevant to AJ Press' news publications. ECF No. 24 at 16-17. But ***Plaintiff's own Complaint showed that Punchbowl News is artistically relevant*** to AJ Press' news publications. Namely, the Complaint demonstrated that AJ Press' news publications "focus relentlessly on the people in Washington who make decisions…" and that "Punchbowl" is the Secret Service nickname for the Capitol (ECF No. 1 at ¶ 20), and thereby established that *Punchbowl News* supports the themes and geographic settings of AJ Press' work. *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*, 875 F.3d 1192, 1195 (9th Cir. 2017). Plaintiff only conceded the artistic relevance of *Punchbowl News* (ECF No. 29) after AJ Press briefed this issue three times. *See* ECF Nos. 23, 25, 28.

Third, Plaintiff's assertion that AJ Press' use of *Punchbowl News* is explicitly misleading was unreasonable because: (a) the Complaint itself undermined this position, (b) Plaintiff's own evidence contradicted Plaintiff's claims, and (c) Plaintiff's evidence did not show actual confusion. As set forth above, the Complaint itself showed that AJ Press explicitly identifies that its co-founders, not Plaintiff, are the source of its news publication. ECF No. 1; *ANT v. McPartlin*, No. CV 09-7672 PSG (RZX), 2010 WL 11520033, at *4 (C.D. Cal. Aug. 5, 2010) (defendant's use was not explicitly misleading even though it used the same title at issue because the use was in conjunction with pictures of the persons affiliated with defendant's show); *see also* ECF No. 28 at 13:15-22. Plaintiff failed to present ***any*** evidence that showed that AJ Press' use was explicitly misleading. Indeed,

Plaintiff conceded that AJ Press has not made an explicit claim or misstatement about the source of its work and that AJ Press has added its own expressive content to its work. ECF No. 29. Indeed, Plaintiff's own evidence contradicted two of Plaintiff's claims about the explicitly misleading prong of the *Rogers* test. Namely, Plaintiff's own evidence contradicted its claims that the parties offer similar goods to the "same general category of consumers" (ECF No. 1 at ¶ 23; ECF No. 24 at 8; ECF No. 29 at 13), and instead demonstrated that Plaintiff is an "online invitations and digital greeting cards [company, whose] audience is primarily moms with young kids." ECF No. 29-2 at 20. Conversely, AJ Press "operates an online news publication focused on politicians, lobbyists, and aides in Washington, D.C." and "targets individuals who follow politics closely." ECF No. 31 at 7. Plaintiff's evidence likewise undercut its statements that the parties use "punchbowl" in the same way. ECF No. 24 at 19; ECF No. 29 at 13, 15.

Finally, Plaintiff's purported examples of confusion are based on inadmissible hearsay[3] but even if fully credited are not actionable under the Lanham Act for three separate reasons. First, Plaintiff mischaracterized AJ Press' tweet below as evidence of confusion. ECF No. 29-2 at 17. But it is clear that the express reference is specifically to Punchbowl.News, the *Punchbowl News* website.



Second, contrary to Plaintiff's suggestion (ECF No. 29 at 1), evidence of unrelated, third-

---

[3] The Declaration of Mr. Douglas attaches an unverified document which on its face appears to have been compiled for the lawsuit. The purported examples of confusion in the document have clearly been altered – for example, by redacting or omitting the punchbowl email address to which the emails were sent – and have not been authenticated. Moreover, Mr. Douglas claims neither personal knowledge nor that the attached litigation document was created in the ordinary course of business (which plainly it was not). Moreover, if Plaintiff genuinely believed there was a likelihood of confusion between its use of punchbowl and AJ Press' use of *Punchbowl News*, surely Plaintiff would have opposed AJ Press' trademark application for Punchbowl News. *See* ECF No. 29-1 at 17-18.

party news media companies abbreviating *Punchbowl News* to "Punchbowl" does not demonstrate that the companies were confused about the source of *Punchbowl News* (nor is it indicative of AJ Press' own use). The same is true for Twitter users abbreviating *Punchbowl News* when tweeting. Third, the text messages to Plaintiff's CEO from his acquaintances that offer unsolicited (and likely unqualified) legal advice are not instances of confusion. ECF No. 29-2 at 47, 48.



Indeed, the texts show that the public understands that Plaintiff and AJ Press are not related.

Aware that Plaintiff had no evidence to support its claims, Plaintiff attempted to exclude certain portions of Mr. Sherman's declaration on the ground that they were hearsay. Plaintiff's argument was baseless. The paragraphs that Plaintiff challenged (ECF No. 28-1 at ¶¶ 8-11, 19, 21) are statements regarding what actions Mr. Sherman, along with his co-founder and co-owner colleagues, took (e.g., "we selected the name…"), which cannot be considered hearsay. ECF No. 28-1 at ¶ 8.

The Court granted summary judgment in favor of AJ Press **before** AJ Press filed its reply brief, which goes to objective reasonableness and frivolousness. ECF No. 31. AJ Press is therefore entitled to recover its attorneys' fees. *See, e.g., Mattel, Inc. v. Walking Mountain Prods.*, No. CV99-8543RSWL(RZX), 2004 WL 1454100, at *3 (C.D. Cal. June 21, 2004) (after the Ninth Circuit affirmed summary judgment for defendant after applying the *Rogers*

9

test,[4] the court awarded defendant its attorneys' fees, holding that plaintiff's trademark claim was "groundless and unreasonable such that [d]efendant should receive attorney's fees for its defense" where defendant's titles at issue did not explicitly mislead and the defendant's use of the mark at issue was artistically relevant to his work); *Love*, 611 F.3d at 615 (9th Cir. 2010) (affirming fees where Plaintiff did not present "one item of evidence substantiating [its claim]" other than a misleading declaration and the cases cited by plaintiffs were "readily distinguishable and of no persuasive value").

       2.   <u>Plaintiff Made Misleading Statements of Law to the Court</u>

As noted above, Plaintiff made misleading statements to both the court in the VA Action (*see Punchbowl, Inc. v. AJ Press LLC*, 2021 WL 1178070, at *2-3 (E.D. Va. Mar. 26, 2021)) and this Court. Plaintiff's statements to the Court regarding the law applying the *Rogers* test were likewise misleading. *See* ECF No. 24 and 29. For example, Plaintiff contended that *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, No. CV 20-4822-PLA, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) supported its position that the parties use "punchbowl" in the same way (ECF No. 29 at 15), but in *Deus ex*, the court held that plaintiff *failed to allege that defendants' use of plaintiff's mark was explicitly misleading* about the source of defendants' film or the advertisements and promotions related to the film in part because, as here, the "defendants' use [of] the mark is different from plaintiff's *primary use* of the mark." *Id.* at 6 (emphasis added). Similarly, Plaintiff attempted to distinguish AJ Press' use of *Punchbowl News* from the defendants' use of "Mastermind" in *Caiz v. Roberts*, 382 F. Supp. 3d 942, 951 (C.D. Cal. 2019), *appeal dismissed,* No. 19-55611, 2019 WL 6331647 (9th Cir. Aug. 30, 2019) by arguing that defendants "employed other trademarks to identify its goods and services" (ECF No. 29 at 14-15), but the *Caiz* court did not mention defendants' use of any other trademarks, let alone hold that defendants' use was not explicitly misleading because of the use of the other marks. *Caiz*, 382 F. Supp. 3d at 951. Further, Plaintiff misleadingly claimed that "*New Kids* has also been criticized as being incorrectly decided" by relying on a 30 year-old student

---

[4] *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003).

law review case note that, by the same logic, also would be critical of more recent controlling Ninth Circuit precedent for giving too much deference to First Amendment concerns. ECF No. 24 at 15 n.5; ECF No. 25 at 4 n.1. Plaintiff's' repeated misleading statements warrant a finding of exceptionality. *Ceiba Legal*, 230 F. Supp. 3d at 1151.

> ### 3.   Fees Should be Awarded to Deter Future Litigation Misconduct and Compensate AJ Press For Unnecessary Litigation Costs Incurred

Awarding attorneys' fees resulting from Plaintiff's objectively unreasonable claims serves the policy goals of compensating AJ Press for unnecessary litigation costs and deterring Plaintiff from asserting similarly weak claims in the future. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV1200329AGJPRX, 2015 WL 12733442, at *8 (C.D. Cal. Mar. 10, 2015) ("[C]ompensation will be adequately served by requiring Plaintiff to pay for the portions of the case attributable to [two patent infringement claims and a motion for reconsideration found to be exceptional]. This will also serve as adequate deterrence."). This is particularly the case where, as here, AJ Press also incurred significant fees communicating with Plaintiff's counsel to see if a co-existence agreement could be reached to save both parties the cost of litigation. Boyajian Decl. ¶ 25; *Abbywho, Inc. v. Interscope Recs.*, No. CV0606724MMMJTLX, 2008 WL 11406099, at *2, *7 (C.D. Cal. Jan. 7, 2008).

## C.   AJ Press is Entitled To Its Requested Attorneys' Fees

An award of attorneys' fees is "within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006) (citation omitted). The district court first determines the presumptive lodestar figure by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The Court may adjust the "presumptively reasonable" lodestar figure based upon the following factors:

> 1. The time and labor required;
> 2. The novelty and difficulty of the questions;
> 3. The skill requisite to perform the legal services properly;
> 4. The preclusion of other employment due to acceptance of the case;

5. The customary fee;

6. The contingent or fixed nature of the fee;

7. The limitations imposed by the client or the case;

8. The amount involved and the results obtained;

9. The experience, reputation, and ability of the attorneys;

10. The undesirability of the case;

11. The nature of the professional relationship with the client; and

12. Awards in similar cases.

*Id.* (citation omitted). "There is a strong presumption that the lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996). "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Id*. (citations omitted). Factors one through five are subsumed in the lodestar calculation. *See id.* at 364 n.9. The experience, reputation, and ability of the attorneys is also treated as subsumed in the lodestar. *Fernandez v. Vict. Secret Stores, LLC*, No. 06-cv-04149 MMM (SHx), 2008 WL 81508056, *9 (C.D. Cal. July 21, 2008).

Here, the proper lodestar amount is $239,832.97 for fees AJ Press incurred from Plaintiff's filing of the Complaint in this action, from April 7 through July 19, 2021. Boyajian Decl. ¶ 11, Ex. 1.[5] Punchbowl News is not requesting fees for the Virginia lawsuit or fees otherwise incurred to have the case transferred to this district or prior to the filing of this suit on April 7, 2021.

1.   <u>The Hourly Rates for AJ Press' Timekeepers are Reasonable</u>

When calculating the lodestar, the Court first determines a reasonable hourly rate for the prevailing parties' attorneys. "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of L.A.*, 796

---

[5] Attorneys' fees incurred in seeking recovery of attorneys' fees are awarded when adequately documented. *See Gates v. Rowland*, 39 F.3d 1439, 1448-49 (9th Cir. 1994) (affirming award of attorneys' fees incurred in preparing application for attorneys' fees); *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("Time spent preparing a motion for attorneys' fees is generally compensable."). Here AJ Press' counsel has provided an estimated amount of hours spent to prepare the Motion, and will submit further documentation with their Reply brief. Boyajian Decl. ¶ 26; Ex. 1.

F.2d 1205, 1210-11 (9th Cir. 1985). The relevant community is that in which the district court sits. *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Because determining a reasonable rate is "inherently difficult," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), courts routinely rely on declarations of attorneys who practice in the relevant community to establish a reasonable hourly rate, *see Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998), as well as determinations of reasonable hourly rates in the district. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

The documentation supporting this motion demonstrates AJ Press' counsel's fees are reasonable. Greenberg Traurig is a leading international law firm, and is recognized for its expertise in complex litigation and intellectual property. Boyajian Decl. ¶ 9. The primary defense team has extensive expertise in complex litigation, trademark law, and media/First Amendment law. *Id.* ¶¶ 3-5. Ian Ballon has 35 years of experience litigating intellectual property, privacy, and media/First Amendment cases throughout the country, including in this district, and is recognized as a leading intellectual property lawyer. *Id.* ¶ 3; *see also Stilwell Dev., Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, * 6 (C.D. Cal. Apr. 25, 1989) ("The fact that counsel specialize in intellectual property matters is further justification for their hourly rates."). Similarly, Nina Boyajian has 15 years of litigation experience, with specific expertise in intellectual property and media/First Amendment cases. Boyajian Decl. ¶ 4. The primary associate on this case, Julianna Simon, is an experienced commercial litigator with substantial experience in intellectual property litigation. *Id.* ¶ 5.

AJ Press paid voluntarily discounted rates below GT's standard rates, with Mr. Ballon billing at an average of $1,058.25 per hour, Ms. Boyajian billing at an average of $668.31 per hour, and Ms. Simon billing at $567.16 per hour. Boyajian Decl. ¶ 18. These rates were in line with the rates customarily charged for cases in this district for work by attorneys of comparable skill, experience, and reputation (*id.* ¶ 16), as reflected by decisions throughout the Ninth Circuit. *See, e.g.*, *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (finding that rates of $750 to $975 for

13

partners at major law firm was in line with those in the community for similar services); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098-AB SHX, 2015 WL 1746484, at *16 (C.D. Cal. Mar. 24, 2015) (approving rates of $825 to $930 for partners, $350 to $690 for associates, and $240 to $290 for support staff at major law firm in trademark case); *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV16600JGBDTBX, 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (approving rates of $778.50 for senior counsel, $702 and $607.50 for mid-level associates, and $495 for junior associate at major law firm); *HomeGoods, Inc. v. Papanicolaou*, No. CV1906912CJCPLAX, 2019 WL 7171541, at *8 (C.D. Cal. Dec. 4, 2019) (approving rates of $850 to $915 for partners, $435 to $710 for associates, and $195 for support staff at major law firm in trademark case).

## 2. The Hours Billed by AJ Press' Counsel are Reasonable

The Court next determines the number of hours reasonably spent on the litigation. *Intel*, 6 F.3d at 622. A district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Fees may be awarded for time spent preparing pleadings, meeting with clients, and preparing the case for trial. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983). AJ Press had four primary timekeepers over this contentious case. Boyajian Decl. ¶ 19. Two other attorneys,[6] one paralegal, and two litigation support staff assisted with research and paralegal tasks. *Id.* ¶ 20. Courts find that even a high number of hours are reasonable where (a) the relief obtained or at stake is significant, or (b) where a party opponent makes a litigation particularly time consuming or burdensome. Both scenarios apply here.

---

[6] AJ Press does not request the significant attorneys' fees it incurred in connection with the VA Action. Nor does AJ Press request the $17,054.36 in fees it incurred from Susan Heller's work, Co-Chair of the firm's Global Trademark & Brand Management Group, who provided strategic counseling throughout this litigation. Nor does AJ Press request the $2,806.94 in fees it incurred from Tucker Chambers' work, who provided pertinent legal research on strategic trademark issues. Boyajian Decl. ¶ 18 n.2.

i.     *Relief Obtained or at Stake is Significant*

A high number of hours are appropriate where the relief obtained or at stake is significant. *Rivera v. City of Riverside*, 763 F.2d 1580, 1582 (9th Cir. 1985) (awarding attorneys' fees in excess of damages was appropriate to "'focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation.'"). Here, AJ Press' complete victory in both actions—dismissal of all Plaintiff's claims (ECF No. 31)—supports finding the fees reasonable. *Stilwell Dev., Inc.*, 1989 WL 418783 at *7 ("While the result is not necessarily indicative of counsel's effort, it is some evidence that the expenditure of time and effort was justified since total victory in litigation generally requires a substantial investment of time and resources.").

ii.     *Plaintiff Made This Litigation Unnecessarily Burdensome*

Burdensome and vexatious litigation tactics by a plaintiff lacking meritorious claims justify high hours. *Cyclone USA, Inc. v. LL & C Dealer Serv., LLC,* No. CV 03-992AJW, 2010 WL 2104963, *6 (C.D. Cal. May 24, 2010) (awarding requested fees where trademark infringement case was "hard-fought" and "bitterly contested"). Plaintiff's tactics caused AJ Press to incur unnecessary fees and expenses toward successfully moving to dismiss Plaintiff's complaint in the VA Action and successfully obtaining summary judgment on each of Plaintiff's claims in this Court.

3.     The Lodestar is Reasonable and No Adjustment is Warranted

There is a "strong presumption that the lodestar represents a reasonable fee" and should only be adjusted in "rare instances." *Morales*, 96 F.3d at 364 n.8. Here, AJ Press' attorneys have submitted the total hours billed by each timekeeper based on the contemporaneous time records for all billable work AJ Press seeks to recover. Boyajian Decl. ¶ 11. AJ Press' attorneys have reviewed each billing entry and attested that the bills represent time actually spent by counsel. *Id.*; *see Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [he] took the time claimed . . . is evidence of considerable weight on the issue of time required."). AJ Press has consistently made payments to Greenberg Traurig for legal services agreed upon

through May 2021. Boyajian Decl. ¶ 11. This further supports the conclusion that the requested fees are reasonable. *See Stonebrae v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011) (presumption that the lodestar is reasonable "is particularly forceful where . . . the fees were billed to and actually paid by the plaintiff during the course of the litigation, the relationship between counsel and the plaintiff was a valid business relationship, and the plaintiff, as client, exercise[d] business judgment in retaining and paying counsel.").

No adjustment of the lodestar is warranted, particularly in light of the result that AJ Press' attorneys obtained. In light of the exemplary results that AJ Press obtained, Defendants should receive their attorneys' fees equivalent to the unadjusted lodestar. *See Moreno*, 534 F.3d at 1112.

4.   AJ Press' Counsels' Work on State and Common Law Claims is Inextricably Intertwined With The Lanham Act Claims

No apportionment between Lanham Act and non-Lanham Act claims is needed where "the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Cain v. J.P. Productions*, 11 F. App'x 714, 716 (9th Cir. 2001); *see, e.g., Chloe SAS v. Sawabeh Info. Services Co*., No. CV1104147MMMMANX, 2015 WL 12763541, *15 (C.D. Cal. Jun. 22, 2015) ("As the Ninth Circuit has repeatedly recognized, state law unfair competition claims are 'substantially congruent' with trademark infringement claims under the Lanham Act; for this reason, the circuit court has repeatedly approved joint analysis of the sufficiency of such claims."); *Pom Wonderful, LLC v. Purely Juice, Inc.,* No. CV 07-2633 CAS (JWJX)*, 2008 WL 4351842, *7-8 (declining to apportion Lanham Act false advertising claims and related state law claims when awarding attorneys' fees because "[t]he same evidence was presented on all three of plaintiff's claims and the gravamen of those claims was defendants' deceptive advertising"); *Love*, 611 F.3d at 616 (affirming attorneys' fees for common law right of publicity claims when included with Lanham Act claims).

Here, the Court held that its "ruling applies to all claims asserted in this case, not just

the trademark infringement claims." ECF No. 31 at 14 n.11; *see also Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) (Plaintiff's "[s]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Mattel,* 296 F.3d at 901, 902 n.2 (successful First Amendment defense entitles defendant to summary judgment on state law claims for unfair competition); *E.S.S*, 547 F.3d at 1101 ("Since the First Amendment defense applies equally to [Defendant's] state law claims as to its Lanham Act claim, the district court properly dismissed the entire case . . . .")). Thus, no apportionment is warranted.

**D.   AJ Press is Entitled to Non-Taxable Costs**

When awarding attorneys' fees under the Lanham Act, courts may include reasonable out-of-pocket costs and expenses which are customarily billed to the client separate from hourly rates. *See Secalt S.A. v. Wuxi Shenxi Construction Machinery Co., Ltd*., 668 F.3d 677, 690 (9th Cir. 2012) ("attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'")

AJ Press incurred significant non-taxable costs from computerized research costs. Boyajian Decl. ¶ 21, Exs. 1-2. It is the prevailing practice to bill these costs separate from counsel's hourly rates. *Id*. at ¶ 21. These categories should be included as part of AJ Press' attorneys' fees award. *See Express LLC v. Forever 21*, 09-cv-04514 ODW (VBKx), 2010 WL 11512410 (C.D. Cal. Nov. 15, 2010) (awarding pursuant to 17 U.S.C. § 1117(a) costs for "computerized research costs; photocopy and printing costs; messenger and delivery costs; travel costs; and mediator costs").

The $8,821 in costs incurred by AJ Press are reasonable. The computerized research by AJ Press' counsel was vital to obtaining the successful result in this case, as the Court relied on AJ Press' authority in granting summary judgment. Boyajian Decl. ¶ 21.

## V.   CONCLUSION

In light of the foregoing, AJ Press respectfully requests that this Court GRANT its Motion and award attorneys' fees of $239,832.97 and $8,821 in costs.

17

DATED: July 30, 2021                          GREENBERG TRAURIG, LLP

                                         By:    /s/ *Ian C. Ballon*
                                               Ian C. Ballon
                                               Nina D. Boyajian
                                               Julianna M. Simon
                                               Attorneys for Defendant AJ Press, LLC