GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
Ballon@gtlaw.com
NINA D. BOYAJIAN (SBN 246415)
BoyajianN@gtlaw.com
REBEKAH S. GUYON (SBN 291037)
GuyonR@gtlaw.com
DAVID H. MARENBERG (SBN 329954)
MarenbergD@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendant AJ Press, LLC

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUNCHBOWL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AJ PRESS LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO.: 2:21-cv-03010-SVW-MAR<br><br>**DEFENDANT AJ PRESS, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with L.R. 56-3 Response to Statement of Genuine Disputes of Material Fact; Declaration of Rachel Schindler; Request for Judicial Notice; Declaration of David H. Marenberg in Support of Reply Request for Judicial Notice; Evidentiary Objections]*<br><br>Date:      March 25, 2024<br>Time:     1:30 p.m.<br>Location: Courtroom 10A, 10th Floor<br>               350 W. 1st Street<br>               Los Angeles, CA 90012<br>Judge:    Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. There is No Genuine Dispute That The Parties' Services Are Unrelated ..........2
    B. The Parties' Use of Search Engine and Social Media Marketing Is Irrelevant ..................................................................................................................4
    C. There is No Genuine Dispute that the Parties' Marks Are Dissimilar ................5
    D. Plaintiff Provides No Admissible Evidence of Actual Confusion as to Source or Affiliation, and Adds Evidence of the Absence of Confusion ............5
    E. Plaintiff's Mark is Weak and Entitled to Limited Protection.............................9
    F. Punchbowl News Subscribers Exercise a High Degree of Care ......................10
    G. Punchbowl News Was Adopted to Refer to the Capitol Building ....................10
    H. Plaintiff Provides No Evidence of AJ Press' Intent to Expand into the Customizable Event Invitations and Greeting Cards Market...........................11
    I. Plaintiff's Request for Continuance Under Rule 56(d) Should Be Denied .......11

III. CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*,
  2021 WL 3117239 (C.D. Cal. June 7, 2021), *aff'd*, 2022 WL 3210698 (9th
  Cir. 2022) ............................................................................................... 2, 4, 5, 9, 10

*Alzheimer's Disease and Related Disorders Ass'n, Inc. v. Alzheimer's Found.
  of Am., Inc.*,
  307 F. Supp. 3d 260 (S.D.N.Y. 2018) ......................................................................... 7

*Americana Trading Inc. v. Russ Berrie & Co.*,
  966 F.2d 1284 (9th Cir. 1992) ..................................................................................... 7

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ........................................... 4

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  976 F.3d 1074 (9th Cir. 2020) ............................................................................. 2, 11

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) .................................................................................. 4, 8

*Credit One Corp. v. Credit One Fin., Inc.*,
  661 F. Supp. 2d 1134 (C.D. Cal. 2009) ...................................................................... 7

*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*,
  402 F. Supp. 3d 902 (C.D. Cal. 2019) ..................................................... 5, 7, 8, 9, 11

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ................................................................................ 7, 9

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
  525 F.3d 822 (9th Cir. 2008) ..................................................................................... 12

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ....................................................................................... 7

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
  668 F. Supp. 3d 1025 (C.D. Cal. 2023) ...................................................................... 9

*His & Her Corp. v. Shake-N-Go Fashion Inc.*,
  2015 WL 13604255 (C.D. Cal. Apr. 6, 2015) ............................................................ 7

*Instant Media, Inc. v. Microsoft Corp.*,
  2007 WL 2318948 (N.D. Cal. Aug. 13, 2007) ........................................................... 6

*Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S 140 (2023). ................. 1, 12

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
  402 F. Supp. 3d 877 (N.D. Cal. 2019) .................................................................. 3

*Lang v. Retirement Living Pub. Co., Inc.*,
  949 F.2d 576 (2d Cir. 1991) .................................................................................. 8

*London Comp. Sys. v. Zillow, Inc.*,
  2020 WL 5366108 (S.D. Ohio Sept. 8, 2020) ...................................................... 3

*M2 Software, Inc. v. Madacy Entm't*,
  421 F.3d 1073 (9th Cir. 2005) ............................................................... 2, 9, 10, 11

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998) .............. 7

*Mintz v. Subaru of Am. Inc.*, 716 F. App'x 618 (9th Cir. 2017) ................................ 5

*Murray v. CNBC*,
  86 F.3d 858 (9th Cir. 1996) .................................................................................. 2

*Mytee Prods., Inc. v. Shop Vac Corp.*,
  2013 WL 5945060 (S.D. Cal. Nov. 4, 2013) ...................................................... 10

*Nabisco, Inc. v. PF Brands, Inc.*,
  191 F.3d 208 (2d Cir. 1999) .................................................................................. 9

*Nat'l Info. Corp. v. Kiplinger Wash. Editors, Inc.*,
  771 F. Supp. 460 (D.D.C. 1991) ........................................................................ 10

*Nevada Dep't of Corr. v. Greene*,
  648 F.3d 1014 (9th Cir. 2011) .............................................................................. 6

*Nutri/System v. Con-Stan Indus., Inc.*,
  809 F.2d 601 (9th Cir. 1987) ................................................................................ 9

*Orr v. Bank of Am., NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ................................................................................ 5

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) .............................................................................. 5

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) .............................................................................. 4

*Punchbowl, Inc. v. AJ Press, LLC*,
  54 F.4th 1091 (9th Cir. 2022), *opinion withdrawn on other grounds*, 78
  F.4th 1158 (9th Cir. 2023) ........................................................................... 1, 2, 3

*Punchbowl, Inc. v. AJ Press, LLC*,
  90 F.4th 1022 (9th Cir. 2024) ....................................................... 1, 2, 3, 5, 10, 11

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
  680 F. Supp. 2d 1107 (N.D. Cal. 2010) ................................................................ 3

*Self-Insurance Inst. of Am., Inc. v. Software and Info. Indus. Ass'n*,
    208 F. Supp. 2d 1058 (C.D. Cal. 2000) .................................................................. 4

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59
    F.3d 902 (9th Cir. 1995) ........................................................................................ 9

*SquirtCo. v. Seven-Up Co.*,
    628 F.2d 1086 (8th Cir. 1980) ............................................................................. 12

*Union Carbide Corp v. Ever-Ready Inc.*,
    531 F.2d 366 (9th Cir. 1976) ............................................................................... 12

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003) .................................................................................. 7

**Rules**

Fed. R. Civ. P. 56(c)(2) ................................................................................................ 7

Fed. R. Civ. P. 56(c)(4) ........................................................................................... 5, 7

Fed. R. Evid. 702(a) .................................................................................................. 12

Fed. R. Evid. 702(b) .................................................................................................. 12

Fed. R. Evid. 801 ........................................................................................................ 5

Fed. R. Evid. 802 ........................................................................................................ 5

Fed. R. Evid. 901(a) .................................................................................................... 5

## I. INTRODUCTION

Plaintiff Punchbowl, Inc. ("Plaintiff") has failed to present any genuine dispute of material fact precluding summary judgment for Defendant AJ Press, LLC ("AJ Press"). Rather, the undisputed material facts demonstrate that AJ Press' use of the expressive, common English-language word "punchbowl" in its registered mark *Punchbowl News* in connection with its reporting on insider politics is not likely to confuse consumers with Plaintiff's use of punchbowl in connection with its party planning and electronic invitations services.

No amount of discovery will change the fact that the two most pertinent factors, reaffirmed by recent guidance from the Supreme Court—the lack of relatedness or proximity of the parties' services, and the dissimilarity of the marks in commercial context—strongly favor AJ Press. The Ninth Circuit has already stated in no uncertain terms that AJ Press uses its mark "in an entirely different market." *Punchbowl, Inc. v. AJ Press, LLC*, 54 F.4th 1091, 1101, 1104 (9th Cir. 2022) (*"Punchbowl I"*), *opinion withdrawn on other grounds*, 78 F.4th 1158 (9th Cir. 2023). Namely, Plaintiff offers template party invitations and greeting cards-as-a-service, while AJ Press offers subscriptions to insider Beltway news and commentary, and, like many companies with an online presence, promotes itself and connects its readership through in-person events. The Ninth Circuit has also acknowledged that "punchbowl" is a common English-language word, that AJ Press' name *Punchbowl News* conveys a different expressive connotation, and that *Punchbowl News* is visually dissimilar in the commercial context to Plaintiff's use of "punchbowl." Plaintiff only adds to the record more inadmissible examples of consumers or third parties who are demonstrably <u>not</u> confused as to source or affiliation, <u>not</u> interested in Plaintiff's services, and/or <u>not</u> aware of Plaintiff's existence at all.

This case demonstrates why "not 'every infringement case involving a source-identifying use requires full-scale litigation,' and . . . some cases can be resolved at the Rule 12(b)(6) stage." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1032 (9th Cir. 2024) ("*Punchbowl II*") (citing *Jack Daniel's*, 599 U.S. at 157 n.2). No amount of discovery into immaterial issues will change that the parties offer unrelated services using marks that do not look or act alike in the commercial context, and the parties' concurrent use of their respective

marks for over three years has generated at most "negligible" amounts of non-actionable confusion, rather than source or affiliation confusion by an "appreciable number of people[.]" *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005); *Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*, No. 220CV03339SVWJEM, 2021 WL 3117239, at *2 (C.D. Cal. June 7, 2021) (Wilson, J.) ("Confusion on the part of a negligible number of consumers is insufficient for the trademark holder to prevail."), *aff'd*, 2022 WL 3210698 (9th Cir. 2022). Summary judgment should be granted to AJ Press.

## II.     ARGUMENT

### A.     There is No Genuine Dispute That The Parties' Services Are Unrelated

Plaintiff does not dispute that consumer confusion is unlikely if the parties' services are unrelated. *See Murray v. CNBC*, 86 F.3d 858, 860 (9th Cir. 1996). The Ninth Circuit has already acknowledged that "AJ Press uses the Mark '*in an entirely different market*.'" *Punchbowl I*, 52 F.4th at 1104 (emphasis added);[1] *Punchbowl II*, 90 F.4th at 1032 (stating that the fact that companies are "operating in different spaces" reduces likelihood of confusion); *see Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080 (9th Cir. 2020) ("[E]ven 'where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion' if . . . 'the alleged infringer is in . . . *a wholly different industry*.'") (emphasis added). Plaintiff does not dispute that it offers party planning services, sells customized digital invitations, and targets "primarily moms with young children." SUF 7-11. Its "focus" has always been on "celebrations, holidays, events and memory-making." *Punchbowl II*, 90 F.4th at 1025. AJ Press' focus, in contrast, is on offering its readers non-partisan Washington insider news reporting and political commentary. *Id.* at 1025-26; SUF 1, 5. The services are not related.

---

[1] Plaintiff argues that this finding was "not part of a likelihood of confusion analysis." Opp. 20 n.7. This is a distinction without significance. The Ninth Circuit specifically analyzed whether AJ Press "employed the mark in a different context—[such as] in an entirely different market—than [Plaintiff]" and concluded that "the parties have used a 'common English word,' . . . to describe *two different enterprises that do very different things*." *Punchbowl I*, 52 F.4th at 1101 (emphasis added). The same court reiterated after *Jack Daniel's* that this fact would reduce a likelihood of confusion. *Punchbowl II*, 90 F.4th at 1032. Plaintiff does not – and cannot – identify any discovery that would alter the basic nature of the parties' respective services.

Plaintiff claims the parties have an identical target audience that "includes high-income, college-educated, and urban and suburban consumers, as well as tech-savvy consumers and families with young children." Opp. 19 n.5. This contrived catch-all defies the very concept of a "target," comprising well over half of the consuming public. *See, e.g.*, *Punchbowl I*, 52 F.4th at 1101 ("The population consisting of 'consumers of online communication services' describes virtually all consumers."); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 893 (N.D. Cal. 2019) ("At a high enough level of abstraction, the goods are related: they are both food items, sold to people looking for food."). It is also undermined by Plaintiff's Chief Operating Officer, who, when speaking under conditions prompting far more candor than those animating its CEO now, stated that Plaintiff "primarily" targets moms with young children. SUF 14; *London Comp. Sys. v. Zillow, Inc.*, No. 1:18-CV-696, 2020 WL 5366108, at *10 (S.D. Ohio Sept. 8, 2020) (considering the "<u>typical</u> users" of the parties' respective services, rather than incidental overlap in target market). Though its customer base is undoubtedly comprised of some moms and dads, *Punchbowl News* does not target parents (or young children) in particular, nor would the subject matter of its publications be particularly interesting to young children.

It is also immaterial (and AJ Press does not dispute) that *Punchbowl News* organizes its own in-person events. (Reply to SUF 7.) *See Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1119 (N.D. Cal. 2010) (finding the parties offered unrelated services where the plaintiff offered real estate investment advice to others, and the defendant dealt and invested in commercial real estate "*for its own account*"). Plaintiff does not provide evidence of overlapping event sponsors, such as Dave and Busters or Chuck E. Cheese. *Punchbowl II*, 90 F.4th at 1025. Car companies, furniture stores, and phone service providers (companies whose customer bases resemble Plaintiff's broad purported target audience) all organize their own events, solicit sponsors, and build brand partnerships.[2] That does not mean that Plaintiff, Mercedes-Benz, Crate & Barrel, AT&T, and AJ Press offer related services under

---

[2] *See* https://www.mbusa.com/en/events-and-partnerships; https://www.crateandbarrel.com/stores/events; https://www.research.att.com/pages/events; Marenberg Reply RJN Decl., Ex. 3 at 4-5, Ex. 4 at 7, Ex. 5 at 10-11.

the Lanham Act. AJ Press' events are connected to its subject matter, insider Beltway politics. *See Self-Insurance Inst. of Am., Inc. v. Software and Info. Indus. Ass'n*, 208 F. Supp. 2d 1058, 1073 (C.D. Cal. 2000) (rejecting argument that generalized subject-matter agnostic activities such as "lobby[ing], provid[ing] information and organiz[ing] conferences" rendered the parties' services related, because "it is the content of each of these [activities] that is relevant to the Court's analysis"); Marenberg Reply RJN Decl., Ex. 6 at 13-17.

Plaintiff also fails to support its proposition that the reasonable consumer believes all services that use a subscription-based payment model (Opp. 19) would come from the same source if sold under the same mark. *AMF Inc. v. Sleekcraft*, 599 F.2d 341, 348 n.10 (9th Cir. 1979). Gyms, color printers, and movie theaters offer subscription-based pricing.[3] Yet no reasonable consumer would assume a Punchbowl gym, Punchbowl ink cartridges, or Punchbowl moviepass were provided by the same company.

**B.    The Parties' Use of Search Engine and Social Media Marketing Is Irrelevant**

Plaintiff contends, without supporting authority, that because both parties use search engine and social media marketing, this factor "strongly favor[s] a likelihood of confusion".. To the contrary, shared use of ubiquitous marketing channels is immaterial. *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the [i]nternet today, the same could be said for countless companies. Thus, this factor merits little weight."); *Aliign*, 2022 WL 3210698, at *1 ("That both companies use the Internet generally as a marketing channel 'does not shed much light on the likelihood of consumer confusion.'"). The cropped search results provided by Plaintiff also display both parties' respective logos and descriptions of their unrelated services, eliminating any likelihood of confusion.[4] *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (holding that "the advertisements themselves dispel[led] confusion" between two identical marks by prominently

---

[3] *See* https://www.planetfitness.com; https://www.moviepass.com/; https://www.hp.com/; Marenberg Reply RJN Decl., Ex. 7 at 19, Ex. 8 at 24, Ex. 9 at 25.
[4] An unaltered screenshot of the same search, using Google Chrome's incognito mode, confirms the parties' logos and respective services are displayed prominently alongside each party's mark, along with various other material distinguishing the two companies and services. Marenberg Reply RJN Decl., Ex. 10 at 28-30.

4

emphasizing house marks); *Aliign*, 2022 WL 3210698, at *2 (affirming grant of summary judgment to defendant where consumers were "provided with results that clearly indicate the products on the page are lululemon products").

### C. There is No Genuine Dispute that the Parties' Marks Are Dissimilar

*Punchbowl News* conveys an expressive and different connotation from Plaintiff's use of punchbowl (SUF 3; *Punchbowl II*, 90 F.4th at 1026; *Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, 402 F. Supp. 3d 902, 908 (C.D. Cal. 2019) (crediting a declarant's explanation of the meaning of defendant's mark)). The name generally appears in all capital letters with an overturned U.S. Capitol logo filled with "pink/purple" punch that also conveys a different expressive connotation than Plaintiff's orange punch ladle logo, as well as a credo and/or references to AJ Press' founders. *Punchbowl II,* 90 F.4th at 1025-26, 1032; SUF 4, 12; Reply to SUF 4; Dkt. 32-1 at 10; *Aliign*, 2022 WL 3210698, at *1 (noting that defendant's mark was "typically accompanied by" a distinctive house mark, "further diminishing any likelihood of confusion"). The *Punchbowl News* mark is presented similarly at in-person events. Marenberg Reply RJN Decl., Ex. 6 at 15-17. The only similarity between the parties' uses of their respective marks in context is the use of a common English-language word. *Punchbowl II*, 90 F.4th at 1032; *Mintz v. Subaru of Am. Inc.*, 716 F. App'x 618, 620 (9th Cir. 2017) ("Likelihood of confusion can be determined" on a motion to dismiss "where the parties have obviously dissimilar marks[,]" despite shared commonplace symbol); SUF 8. There is no dispute that this factor strongly favors AJ Press. Mot. 13-16 (citing cases).[5]

### D. Plaintiff Provides No Admissible Evidence of Actual Confusion as to Source or Affiliation, and Adds Evidence of the Absence of Confusion

Plaintiff's purported "documentation of confusion" (Dkt. 56-2, Ex. C) is an inadmissible series of cropped screenshots with editorialized summaries, clearly altered in preparation for litigation. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 801, 802, 901(a); *Orr v. Bank of Am., NT &*

---

[5] Plaintiff argues that "Defendants' color scheme mimics Punchbowl's, with both featuring a bright shade of purple." Opp. 23. The undisputed visual comparisons of the parties' respective websites demonstrate otherwise. *See, e.g.*, Mot. 14; SUF 6, 13; *see also* Dkt. 51-1, Exs. 1-2. Plaintiff's fixation on whether the color of the punch in AJ Press' logo is pink or purple is also irrelevant. Plaintiff no longer uses pink or purple in its mark—it is now black. SUF 13.

5

*SA*, 285 F.3d 764, 773, 777-78 (9th Cir. 2002) ("unauthenticated documents cannot be considered in a motion for summary judgment"); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) ("[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness.") (internal quotation marks and citations omitted). Matthew Douglas, Plaintiff's CEO, demonstrably lacks personal knowledge of many of the purported facts contained in the summary document.[6] Mr. Douglas purports to authenticate Exhibit C as a "true and correct" copy of "communications Punchbowl has received from confused consumers," but the exhibit plainly includes tweets from *Punchbowl News* readers to AJ Press' founders, a screenshot of recommended words on an iPhone, as well as communications from third-party media and employees. *See, e.g.*, Dkt. 56-2 at 39, 53, 56. Plaintiff's cited authorities (Opp. 16) permitting consideration of "out-of-court statements of potential customers" do not help Plaintiff, who is trying to introduce its own heavily edited *summaries* and (mis)characterizations. *See Instant Media, Inc. v. Microsoft Corp.*, No. C 07-02639 SBA, 2007 WL 2318948, at *14 (N.D. Cal. Aug. 13, 2007) ("**A summary of** purported telephone calls and written inquiries constitutes inadmissible hearsay.") (emphasis added).

AJ Press objects to this blunderbuss submission for good reason. Plaintiff's screenshots omit material information, such as the dates of relevant communications and the email addresses to which they were submitted. For a short period in early 2021 coinciding with the majority, if not all of these misdirected communications, the Terms of Service on the punchbowl.news website, which were created by a third party, included a typographical error that misidentified AJ Press' email address as accounts@punchbowl.com instead of accounts@punchbowl.news. Declaration of Rachel Schindler ¶¶ 4-6; *see also* Dkt. 56-2 at 31 (showing a *Punchbowl News* customer stating that "Punchbowl New's [sic] Help link takes

---

[6] In *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011), cited by Plaintiff, the Court affirmed the admission of admissible evidence that the objecting party only speculated lacked foundation. Here, it is apparent from the contents of Exhibit C that Mr. Douglas lacks relevant personal knowledge. *See, e.g.*, Dkt. 56-2 at 51 (sentence stating that COO, *not* Mr. Douglas, received a phone call from COO's parents, "who were confused," offered to prove her parents were confused), 55 (email forwarded to Mr. Douglas in which he states that *"[f]rom what I understand so far, it sounds like"* certain information was true, offered at Opp. 15 to prove the information was true) (emphasis added).

6

people to your link . . . a problem to fix [/] Sorry for your inconvenience"). Plaintiff identifies no other misdirected communications in the nearly three years since. (Dkt. 56-2 at 26-42.) Yet Plaintiff has intentionally[7] continued to offer only fragmented, inadmissible screenshots and summaries. *See Delta Forensic*, 402 F. Supp. 3d at 911 ("Further, Plaintiff failed to preserve the purportedly misdirected checks leaving insufficient evidence to evaluate the significance of these [misdirected] mailings."). Regardless, misdirected communications and checks are not evidence of relevant confusion, at most evidence of confusion in the abstract. *See* Dkt. 55-1, Ex. 13 at 15:3-17 ("It's one thing to get email addresses mixed up. It's another thing to think one company is another."); *Delta Forensic*, 402 F. Supp. 3d at 910 ("'[M]isdirected communications' are generally not evidence of actual confusion."); *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1139-40 (C.D. Cal. 2009) (same); *see also Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1149 (C.D. Cal. 1998) (holding that 29 unsolicited emails and 10 oral inquiries to Plaintiff, some "inquir[ing] about obtaining the [Defendant's] song," were "ambiguous, at best, as to whether the [senders] believe[d] [Plaintiff was] responsible for the song" and therefore *de minimis*); *Alzheimer's Disease and Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 294 (S.D.N.Y. 2018) (finding evidence of 11,000 misdirected checks, while probative of general confusion in the abstract, was not probative of *actionable* confusion as to source or affiliation).[8]

---

[7] Plaintiff was put on notice in December 2021 (*see* AJ Press' Answering Brief, *Punchbowl, Inc. v. AJ Press, LLC*, No. 21-55881, Dkt. 20 at 63-64), and then again in this Motion (Mot. 18) that this purported evidence was heavily edited and inadmissible in its current form, yet it resubmitted the cropped and editorialized screenshots. *See* Fed. R. Civ. P. 56(c)(2), (4).

[8] The cases Plaintiff cites addressed admissible evidence of actual source or affiliation confusion, not editorialized summaries of misdirected calls or checks. *See, e.g.*, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1149-51 (9th Cir. 2002) (denying Plaintiff's motion for summary judgment, holding that plaintiff had "prove[n] only one instance of actual confusion"; client testified that she believed that the defendant misleadingly offered to include her business in the plaintiff's magazine); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (plaintiff's employee was asked "one hundred times a week" if the plaintiff "was owned by the same people who own [the defendant]"); *His & Her Corp. v. Shake-N-Go Fashion Inc.*, No. 211CV05323CASVBKX, 2015 WL 13604255, at *9 (C.D. Cal. Apr. 6, 2015) (sworn declarations from six consumers who "encountered [Defendant's] hair extensions and incorrectly associated them with [Plaintiff]"); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) (testimony from *defendant*'s kiosk employee that unaffiliated individuals would ask him if the kiosk was affiliated with the plaintiff's stores); *Americana*

7

Plaintiff claims "a confused advertising agency . . . sent [Plaintiff] a $150,000 check intended to go to Defendant, made out with Punchbowl's name and corporate address, again evidencing strong actual confusion regarding the affiliation between the entities." Opp. 15 (citing Dkt. 56-2 at 54-57). The communications excerpted show instead that the agency realized *on its own* that it had sent the check to Plaintiff in error and that "Punchbowl" and "Punchbowl News" were not related. *Delta Forensic*, 402 F. Supp. 3d at 911 (crediting statement from package sender explaining that the package was misdirected to plaintiff "due to a clerical error"). Mr. Douglas then attempted to position the conversation for use in ongoing litigation against AJ Press, cc'ing two of AJ Press' founders to "make them aware of the confusion," and stating that "it appears that there was confusion by [the agency] . . . given the similarity of names." The agency responded without confirming any of Mr. Douglas' self-serving characterizations, so Mr. Douglas tried a second time to "concur" (with no one else) "that this is an instance of confusion . . . as a result of the similarity of our names." At no point during this conversation did the agency believe that punchbowl and *Punchbowl News* were affiliated, despite Mr. Douglas' repeated attempts to speak on the agency's behalf.

Plaintiff's other "evidence" is irrelevant or shows a lack of confusion as to source or affiliation. Various tweets show readers abbreviating *Punchbowl News* to refer to *Punchbowl News*. Dkt. 56-2, Ex. C at 15, 17, 29, 34, 38-39, 44. Other tweets show clear recognition of the distinction between the two companies. *Id.* at 33, 45. One employee speculates, without basis, that a thank-you note might have been intended for *Punchbowl News*.[9] Friends and family of Plaintiff's executives correctly distinguish between the two entities, asking whether AJ Press required Plaintiff's permission to use *Punchbowl News* or offering unqualified legal advice. Mot. 21 (citing cases); *see also Cohn*, 281 F.3d at 843 n.7 (several dozen inquiries about whether the parties were related were "too ambiguous to demonstrate actual confusion"). Various examples also show *Punchbowl News* customers who politely expressed no interest in

---

*Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992) (letter from a customer indicating the customer believed defendant's products were manufactured by plaintiff).
[9] *See* Dkt. 56-2 at 58. Neither party is mentioned in the charity's handwritten letter. *Id.* The charity at issue appears to be based in Massachusetts, where Plaintiff is located. *See* https://www.projectjustbecause.org/; Marenberg Reply RJN Decl., Ex. 11 at 31.

8

Plaintiff's unrelated services. (*Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (holding that 400 misdirected calls did not show a genuine issue of fact, where plaintiff failed to show the callers were "prospective purchasers of [Plaintiff's] products"); Dkt. 56-2 at 36-37. In light of Plaintiff's testimony that its "communications services are used by millions of consumers" (Dkt. 56-1 ¶ 4), and the dearth of examples from 2022, 2023, or 2024, Plaintiff has at most shown "negligible" amounts of confusion, *Aliign*, 2021 WL 3117239, at *2, so the factor is at best neutral, at worst "[a] powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999); *M2*, 421 F.3d at 1085; *Delta Forensic*, 402 F. Supp. 3d at 910-11 (holding that misdirected package and checks were "no more than misdirected communications unrelated to actual confusion[,]" inquiries to employees were *de minimis*, "and the disputed facts related to these enquiries are not material to the weight of this factor").

### E. Plaintiff's Mark is Weak and Entitled to Limited Protection

The remaining factors, though less probative, also favor AJ Press or are neutral. The parties agree Plaintiff's mark is suggestive, Opp. 17, and therefore weak. *Nutri/System v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) ("[D]escriptive or suggestive marks are 'weak.'"). Plaintiff's CEO's vague attestation that Plaintiff has invested in marketing and has received press recognition (Dkt. 55-2 ¶ 7) does not strengthen Plaintiff's weak mark, since Plaintiff does not "tie[] th[ose] expenditures to any evidence that such efforts have been effective in making consumers associate [punchbowl] with [Plaintiff.]" *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1041 (C.D. Cal. 2023) (holding that a similar attestation from a mark owner's executive had "low probative value" and "[did] not provide insight into actual consumer views"); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) ("Attestations from person[s] in close association and intimate contact with[the trademark claimant's] business do not reflect the views of the purchasing public"); *Entrepreneur Media*, 279 F.3d at 1144 (evidence of use of a mark on a magazine for over twenty years, with over half million monthly copies sold to over two million readers was insufficient to demonstrate a descriptive mark was strengthened).

9

Further, Plaintiff does not dispute that several other registered marks use the word "PUNCHBOWL" in connection with bars, catering, restaurants, bowling alleys, and entertainment services.[10] Mot. 16. Plaintiff specifically sells subscriptions for customizable party invitations at Dave and Buster's, an arcade, sports bar, and restaurant, so the argument that these services are "nowhere near in proximity to Punchbowl's" (Opp. 17 n.4) is not credible. *Punchbowl II*, 90 F.4th at 1025.

### F. Punchbowl News Subscribers Exercise a High Degree of Care

AJ Press' subscription prices are significantly more expensive than subscriptions to other benchmark publications, currently at $350 a year for a premium subscription or $1200 a year for a subscription that includes PUNCHBOWL NEWS: THE VAULT™ financial news and commentary. SUF 2; *Aliign*, 2021 WL 3117239, at *9 (considering relative pricing to comparator products); *Nat'l Info. Corp. v. Kiplinger Wash. Editors, Inc.*, 771 F. Supp. 460, 465 (D.D.C. 1991) (holding that consumers exercised higher degree of care in purchasing financial publication).[11] Plaintiff offers no authority that consumers only exercise a high level of care when purchasing yachts and sports cars. *See Mytee Prods., Inc. v. Shop Vac Corp.*, No. 13CV1610 BTM BGS, 2013 WL 5945060, at *5 (S.D. Cal. Nov. 4, 2013) (retail price of $70-80 for defendant's air movers supported finding that consumers would exercise care).

### G. Punchbowl News Was Adopted to Refer to the Capitol Building

Plaintiff confirms it has no evidence of any intent to infringe. Opp. 24. Instead, it seeks discovery "to understand . . . Defendant's knowledge of Punchbowl's longstanding rights in the PUNCHBOWL mark at the time of Defendant's adoption." But AJ Press' awareness of Plaintiff's mark at the time it adopted *Punchbowl News* would not establish intent to infringe. *M2*, 421 F.3d at 1084-85 (holding that this factor weighed in the defendant's favor where the evidence showed the defendant's good faith belief that it could "carve out a non-infringing mark," despite awareness of the plaintiff's mark). AJ Press had ample reason to believe it was

---

[10] *See also* Marenberg Reply RJN Decl., Ex. 10 at 29-30 (showing links to various other restaurants and bowling alleys using the word PUNCHBOWL in their names).
[11] AJ Press' pricing has increased since 2021. Reply to SUF 2.

entitled to use a completely dissimilar mark in commercial context to offer completely unrelated services, considering the Ninth Circuit's recent discussion.

Further, Plaintiff does not genuinely dispute that AJ Press' use of the common English-language word "punchbowl," the Secret Service nickname for the Capitol building, in the *Punchbowl News* name, was intended to "elicit the theme and geographic location" of the publication. *See Punchbowl II*, 90 F.4th at 1026; *Arcona*, 976 F.3d at 1081 (affirming there was no evidence of intentional copying where the plaintiff did not dispute the defendant's evidence that the term "EYE DEW" was meant to describe its own product); *Delta Forensic*, 402 F. Supp. 3d at 908 (crediting declarant's explanation of the meaning of defendant's mark).

## H. Plaintiff Provides No Evidence of AJ Press' Intent to Expand into the Customizable Event Invitations and Greeting Cards Market

Plaintiff fails to show a "*strong* possibility of expansion into competing markets" by either party. *See M2 Software*, 421 F.3d at 1085. Plaintiff argues only that AJ Press has "continued expansion beyond news coverage and further into event-related services such as those offered by Punchbowl," without identifying which "event-related services" offered by AJ Press are also "offered by Punchbowl." Opp. 22. The relative proportion of revenue AJ Press derives from its in-person events and news subscriptions (*id.*) is irrelevant, because Plaintiff does not dispute that AJ Press' content under the *Punchbowl News* mark, whether through publications or in person, revolves around Beltway insider politics, and Plaintiff's "event-related services" do not. The implication that *Punchbowl News'* live events, at which it will interview, for example, the Chair of the House Financial Services Committee,[12] are a stepping stone to subscriptions for customizable event invitations, directories for local DJs, and co-sponsorship of family outings at Legoland, is not credible.

## I. Plaintiff's Request for Continuance Under Rule 56(d) Should Be Denied

Plaintiff identifies no discovery that exists that would create a genuine dispute of material fact, considering the balance of the *Sleekcraft* factors leaning far in AJ Press' favor based on undisputed facts. As discussed above, the areas of discovery proposed by Plaintiff are

---

[12] *See* https://punchbowl.news/events/; Marenberg Reply RJN Decl., Ex. 6 at 13.

immaterial (such as additional misdirected communications or evidence of awareness of Plaintiff's mark), seek cumulative non-essential information to support an already-undisputed fact (such as the fact that AJ Press conducts in-person events), or are based entirely on speculative hope that evidence exists. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (holding that plaintiff must show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist[]; and (3) the sought-after facts are essential to oppose summary judgment" and denying request for "generically relevant" discovery); Dkt. 56-3 ¶¶ 5(1)-(6) (speculating that "[e]ach of these facts exist"). Plaintiff has had three years to prepare a survey on its own. Neither Plaintiff nor its expert, Robert Klein (Dkt. 56-5), explains why such a survey requires any discovery from AJ Press or would alter the outcome of the motion.[13] The majority of the Klein Declaration summarizes how surveys are ordinarily prepared, which is unhelpful to assessing a Rule 56(d) request. Fed. R. Evid. 702(a). In the only relevant paragraph, Mr. Klein opines without support that a laundry list of vague discovery topics are "necessary" to conduct a survey, without explaining how or why that information is "typically used to design [a] survey." Dkt. 56-5 ¶ 27; Fed. R. Evid. 702(b) (stating rule that expert testimony must be "based on sufficient facts or data").[14]

## III. CONCLUSION

AJ Press' motion for summary judgment should be granted in its entirety.

---

[13] To the extent Mr. Klein suggests he would need discovery to determine whether to run a "*Squirt*" or "*Eveready*" survey format, (Dkt. 56-5 ¶¶ 23-24), both formats simply present the marks or services to consumers under real-world conditions. *Union Carbide Corp v. Ever-Ready Inc.*, 531 F.2d 366, 385, 388 (9th Cir. 1976); *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1089 n.4 (8th Cir. 1980). Plaintiff already has access to this publicly available information, and claims the parties' target markets and marketing channels completely overlap.

[14] Recent Supreme Court guidance also suggests that "courts should treat the results of surveys with particular caution" where, as here, a defendant uses a word for different expressive purposes, so a survey would not be material. *See Jack Daniel's*, 559 U.S. at 164 (Sotomayor, J., and Alito, J., concurring). Mr. Klein proposes a survey question that would not "accurately track the experiences of actual consumers in the marketplace." *See id.* at 165-65 (cautioning against "[c]leverly designed surveys [that] could also prompt such confusion by making consumers think about complex legal questions around permission that would not have arisen organically out in the world"); Dkt. 56-5 ¶ 33 ("Did the company that uses this mark need to get the permission or approval of another company to use this mark?").

12

DATED: March 11, 2024          GREENBERG TRAURIG, LLP

By: /s/ *Ian Ballon*
    Ian C. Ballon
    *Attorneys for Defendant AJ Press, LLC*

**L.R. 11-6.2 Certification of Compliance**

The undersigned, counsel of record for Defendant AJ Press, LLC, certifies that this brief contains 3947 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 11, 2024             GREENBERG TRAURIG, LLP

By: /s/ *Ian Ballon*
    Ian C. Ballon
    *Attorneys for Defendant AJ Press, LLC*