# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [50]

## I.    Introduction

Before the Court is Defendant AJ Press LLC's ("Defendant") motion for summary judgment. For the reasons below, Defendant's motion is GRANTED.

## II.    Procedural and Factual History

### A.  Procedural History

On July 16, 2021, this Court granted Defendant's motion for summary judgment, relying on Ninth Circuit caselaw supporting the application of the *Rogers* test. ECF No. 31. That order was appealed to the Ninth Circuit, which affirmed. *Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091 (9th Cir. 2022) ("*Punchbowl I*"). Subsequently, the Supreme Court decided *Jack Daniel's Props. v. VIP Prods. LLC*, 599 U.S. 140 (2023), which cabined the applicability of the *Rogers* test used by this Court in granting Defendant's motion for summary judgment. Following the Supreme Court's decision in *Jack Daniel's*, the Ninth Circuit withdrew its opinion affirming this Court's grant of summary judgment. Conducting its analysis *de novo*, the Ninth Circuit remanded the matter back to this Court with the instruction to "proceed to a likelihood-of-confusion analysis." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1032 (9th Cir. 2024) ("*Punchbowl II*").

| Initials of Preparer | : |
|---|---|
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

On January 25, 2024, this Court ordered Defendant to move for summary judgment with briefing based on the traditional likelihood-of-confusion test. ECF No. 47. Defendant did so on February 15, 2024. ECF No. 50. The matter was fully briefed, and the Court heard oral argument on March 25, 2024. ECF No. 67.

In opposing Defendant's summary judgment motion, Plaintiff requested that it be allowed to conduct additional discovery pursuant to Rule 56(d). Specifically, Plaintiff wanted to better develop the evidentiary record on the following six issues: "(1) Defendant's intent in adopting a virtually-identical mark to the PUNCHBOWL mark; (2) Evidence of actual confusion in Defendant's possession; (3) Evidence of actual confusion to be established through consumer survey evidence, which will require discovery as to Defendant's target market and customer base; (4) The geographic, economic, and social characteristics of Defendant's target market and customer base, going to the proximity of the parties' services and the degree of consumer care likely to be exercised; (5) The full scope and array of Defendant's marketing channels and strategies, going to the similarity of the parties' marketing channels; and (6) The likelihood of continued expansion of Defendant's services to compete with Punchbowl." Pl.'s Opp'n to Def.'s Mot. for Summ. J. 28, ECF No. 55. While the Court noted that "[m]ost likely" this was a case that could "be decided without extensive discovery and litigation," it granted Plaintiff's request and allowed the parties 75 days to conduct discovery. Order Granting Pl. 75 Days to Conduct Discovery Pursuant to Rule 56(d) at 2, ECF No. 70. The Court ordered the parties to supplement their briefs with evidence obtained during that time. *Id.*

The parties have conducted discovery and updated their briefs. ECF Nos. 80, 88. No further hearing is warranted; the Court decides this matter on the papers.

### B. Factual Summary[1]

---

[1] All facts are undisputed unless otherwise stated and are derived from the parties' briefs and supporting materials. Nothing in this section should be construed as a factual finding; rather, this section is merely background information regarding the instant lawsuit. "To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

The facts of this case have been extensively catalogued by both this Court and the Ninth Circuit. For the reader's convenience, they will be briefly restated here.

      i.   **The Parties**

Plaintiff Punchbowl, Inc. ("Plaintiff") is "a technology company that develops online communications solutions for consumers, including online event and celebration invitations and greetings cards, sold as a subscription-based service." Douglas Decl. ¶ 3, ECF No. 29-2. "Plaintiff markets itself as being 'The Gold Standard in Online Invitations & Greeting Cards' and advertises and has offered template invitations and greeting cards under headings and categories that include 'Birthday,' 'Kids Characters,' 'Care & Concern,' 'Super Bowl®' and 'Wedding.'" Def.'s Response to Pl.'s Statement of Genuine Disputes of Material Fact ("RGD") 10, ECF No. 59-2. A screenshot of Plaintiff's website homepage as it stood on January 29, 2024, is reproduced below. Briefly, that screenshot depicts a website offering services to help plan parties (including downloadable smartphone apps), sometimes featuring well-known intellectual property from partner companies, styled predominantly in teal and beige.

---

consider them in reaching its decision." *Sarieddine v. Vaptio, Inc.*, 2021 WL 4731341, at *1 (C.D. Cal. June 15, 2021).

Initials of Preparer        :      PMC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |



*Marenberg Decl. Ex. 1, ECF No. 51-2*

Initials of Preparer    :    PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

      Defendant owns and operates a publication called *Punchbowl News*. Sherman Decl. ¶¶ 5–6, ECF No. 28-1. *Punchbowl News* was founded by journalists Jake Sherman, Anna Palmer, and John Bresnahan in January 2021. *Id.* ¶ 5. "Punchbowl News is an online membership-based news publication that provides newsletters, podcasts, and videos in the fields of government, politics, public policy, and current events." *Id.* "Punchbowl News offers free subscriptions to those who wish to receive email alerts, and paid subscriptions to those who wish to access premium content on the Punchbowl News website, www.punchbowl.news." *Id.* "Paid Punchbowl News subscriptions cost $30 per month or $300 annually." *Id.* A screenshot of Defendant's website homepage as it stood on February 13, 2024, is reproduced below. Briefly, that screenshot depicts a news website featuring various articles about U.S. politics often (but not always) accompanied by a relevant image, predominantly styled in black, white, and purple/pink.[2]

---

[2] See note 6 *infra* for a discussion of the parties' contention over what color is used in association with Defendant's mark.

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |



*Marenberg Decl. Ex. 9, ECF No. 51-2*

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

### ii.    The Marks

Plaintiff has used the mark PUNCHBOWL "since at least 2006." Douglas Decl. ¶ 5, ECF No. 29-2. "On March 28, 2013, the United States Patent & Trademark Office issued U.S. Trademark Registration No. 4,341,102 to Punchbowl for the PUNCHBOWL Mark in connection with online communications services." *Id*. Plaintiff has expended considerable resources to promote its mark. Douglas Decl. ¶ 7, ECF No. 54-3.[3] Plaintiff's registered mark "CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR." PUNCHBOWL, Registration No. 4,341,102.[4] Put differently, Plaintiff's registered mark is a word mark.

Plaintiff's word mark is often used alongside a punch ladle logo, shown below. That logo consists of a stylized white punch ladle set inside an orange circle. RGD 12. The ladle itself is made up of a swooping line that meets a semicircle. It is not a photorealistic depiction of a ladle, although what it is meant to depict is quite clear.



Defendant began using the mark PUNCHBOWL NEWS in 2021. PUNCHBOWL NEWS, Registration No. 6,472,932.[5] Defendant's registered mark "CONSISTS OF STANDARD

---

[3] "Punchbowl's investment in digital marketing and advertising for the 'PUNCHBOWL' mark and its associated services in the U.S. and Canada, including through Google, Bing, and social media channels including Facebook, X (Twitter), Instagram, Pinterest, and LinkedIn, has totaled ███████████████████████████████████████ Douglas Decl. ¶ 7, ECF No. 55-2.
[4] Plaintiff's trademark registration is available at the following link:
https://tsdr.uspto.gov/#caseNumber=85600766&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (https://perma.cc/HY2Y-ZF8E).
[5] Defendant's trademark registration is available at the following link:
https://tsdr.uspto.gov/#caseNumber=90292157&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR." *Id.* Like Plaintiff's mark, Defendant's registered mark is a word mark.

Defendant's mark often appears alongside a logo depicting the U.S. Capitol Building turned upside down and filled with a pink/purple liquid (presumably, punch), as shown below. The name PUNCHBOWL NEWS was selected to "elicit the theme and geographic location of [the] news publication – people and events in and near the U.S. Capitol." Sherman Decl. ¶ 8, ECF No. 28-1. The name was chosen because 'Punchbowl' is "the Secret Service nickname for the U.S. Capitol." *Id.* Additionally, the founders of PUNCHBOWL NEWS "thought it would be creative to incorporate a nickname created by insiders (i.e., the Secret Service) into the name of our publication, which provides news, analysis and commentary about the people and politics in the U.S. Capitol from an insider's perspective." *Id.* Lastly, the founders chose a "bright pink color [for the punch] because [their service] provide[s] non-partisan commentary and pink is nonpartisan." *Id.* ¶ 11.[6]



BY JOHN BRESNAHAN, ANNA PALMER AND JAKE SHERMAN

In addition to the logo depicting the U.S. Capitol, the PUNCHBOWL NEWS mark is often used

---

=statusSearch (https://perma.cc/CJ55-E7VG).

[6] There is some contention amongst the parties about the color of the punch in PUNCHBOWL NEWS' logo. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. 23 n.9, ECF No. 55 ("Defendant characterizes this color as 'bright pink' in an apparent attempt to distance itself from Punchbowl's purple logo and color scheme, but explains its color choice as a 'playful homage to a blend of the traditional red and blue'—in other words, purple."). More precisely, Jake Sherman's declaration reads as follows: "We also considered the theme of our publication when selecting which color to use for the punch inside the inverted Capitol building logo. We contemplated using purple for the color of the punch, a combination of the partisan blue and red colors, but ultimately decided against it because purple was not sufficiently vibrant and 'punchy.' We chose a bright pink color because we provide non-partisan commentary and pink is nonpartisan - neither blue nor red." Sherman Decl. ¶ 11, ECF No. 28-1. In this particular context, the Court finds splitting hairs over the precise shade of punch in Defendant's logo is unnecessary because the precise shade is irrelevant to the Court's analysis.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

alongside the credo, "Power. People. Politics." *Id.* ¶ 9. Lastly, Defendant often displays the PUNCHBOWL NEWS mark alongside the names of its founders: Jake Sherman, Anna Palmer, and John Bresnahan. *Id.* ¶ 12.

### C. New Evidence Obtained During Discovery

Plaintiff's updated opposition cites to "additional communications reflecting consumer confusion" which Plaintiff obtained during discovery, as well as new evidence of "a not-insignificant overlap in the proximity of services and identical marketing channels." Pl.'s Updated Opp'n to Def.'s Mot. for Summ. J. 1–2, ECF No. 80. *Inter alia*, Plaintiff specifically requested discovery to perform a survey on the likelihood of consumer confusion regarding its products and Defendant's products. Plaintiff does not rely on a survey in its updated opposition. Rather, it explains that its expert "reviewed the information provided by AJ Press, communicated with counsel, and completed some initial draft work toward running a full survey. The expert did not, however, complete the survey or prepare a report." *Id.* at 17. Plaintiff claims that its "counsel concluded that, in the short period of discovery remaining after AJ Press's responses were received, as balanced against competing resource needs, the best use of resources was to focus on the evidence in Punchbowl and AJ Press's possession and marshal that evidence for the Court's review." *Id.*

Defendant's updated reply cites to much of the same evidence uncovered on discovery but argues that such evidence weighs in Defendant's favor. However, in anticipation that Plaintiff was doing the same, Defendant hired an expert to perform a survey regarding consumer likelihood of confusion. Def.'s Updated Reply ISO Def.'s Mot. for Summ. J. 1–2, ECF No. 88. Plaintiff objects to the admissibility of this survey, which the Court addresses in Section IV-B *infra*.

### III.   Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|----------|----------------------|------|-----------------|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremukun*, 509 F.3d at 984.

## IV.    Evidentiary Objections

### A.  Defendant's Previous Evidentiary Objections Are Overruled as Moot

Before the Court permitted further discovery pursuant to Rule 56(d), Defendant had objected to numerous exhibits submitted by Plaintiff, alleging that those exhibits were improperly authenticated. Evid. Objs. to Pl.'s Opp'n, ECF No. 59-3. Those objections were well-taken and the Court was prepared to

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

sustain them.[7] However, Plaintiff's updated opposition replaces those exhibits with exhibits which contain materials obtained during discovery. Defendant has not objected to these new exhibits. Defendant's previous objections are therefore OVERRULED AS MOOT.

**B.  Plaintiff's Objection to Defendant's Survey is Overruled as Moot; the Court Did Not Rely on the Survey in Reaching Its Conclusion**

Plaintiff objects to the admission of Defendant's expert report. Specifically, Plaintiff argues that Defendant failed to comply with the disclosure requirements outlined in Rules 26(a)(2)(A)–(B) and 37(c)(1). "Only after the close of discovery permitted by the Court did Defendant disclose, for the first time, a survey expert and accompanying expert report. Indeed, Defendant did not disclose it to Plaintiff until publicly filing it on July 5, 2024, attached in support of its Further Reply." Pl.'s Evid. Objs. to Def.'s Further Reply ISO Mot. for Summ. J. 2, ECF No. 95 (emphasis omitted).

The Court did not rely on Defendant's survey in reaching its conclusion because that evidence was needlessly cumulative. "Like any other evidence, surveys should be understood as merely one piece of the multifaceted likelihood of confusion analysis." *Jack Daniel's Props.*, 599 U.S. at 163 (Sotomayor & Alito, Js., concurring); *see also* Def.'s Reply ISO Mot. for Summ. J. (hereinafter "Original Reply") 12 n.14, ECF No. 59 (same). The Court is not persuaded by Plaintiff's timeliness arguments. However, given the posture by which Defendant's survey was introduced,[8] the Court declines to consider it. The parties had ample time to conduct surveys earlier in the litigation, but Defendant argued that such surveys were unnecessary. *See* Original Reply 11–12 (opposing Plaintiff's request for further discovery because "Plaintiff has had three years to prepare a survey on its own"). The purpose of allowing discovery in this case was to prevent unfair prejudice to Plaintiff. *Cf. Hollway Cleaners & Laundry Co. v. Ctr. Nat'l Ins. Co. of Omaha, Inc.*,

---

[7] Defendant also objected to statements in various declarations that the Court did not rely upon. These objections are likewise OVERRULED AS MOOT.

[8] Defendant explains that it originally commissioned its survey as rebuttal evidence to Plaintiff's anticipated survey, which it then attempted to convert into affirmative evidence upon learning that Plaintiff would, in fact, not be introducing a survey. Def.'s Reply to Pl.'s Evid. Objs. to Def.'s Further Reply ISO Mot. for Summ. J. 1–2, ECF No. 98; *see also* Section II-C *supra*.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (citing *Celotex*, 477 U.S. at 326) ("The purpose of Rule 56(d) relief is to prevent the nonmoving party from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery."). Defendant does not face the same risk as the non-moving party. Because the Court did not rely on Defendant's evidence, and because the Court did not agree with the reasoning underpinning Plaintiff's objection, Plaintiff's objection is OVERRULED AS MOOT.

**V.      Discussion**

**A. Likelihood of Consumer Confusion**

Plaintiff has pleaded various causes of action against Defendant, including federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a); common law trademark infringement, unfair competition, and passing off; and violations of California unfair competition law under Cal. Bus. & Prof. Code § 17200. All of these claims depend on whether a consumer is likely to be confused by Defendant's use of the allegedly infringing mark.

"The touchstone for trademark infringement is likelihood of confusion, which asks whether a 'reasonably prudent' marketplace consumer is 'likely to be confused as to the origin of the good or service bearing one of the marks.'" *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017) (citing *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012)). *See also M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) ("The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion.") (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).

This inquiry is guided by the "well-established" *Sleekcraft* factors. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

*Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). When evaluating the *Sleekcraft* factors, "courts
do not merely count beans or tally points." *Id.* (citing *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142
F.3d 1127, 1129 (9th Cir. 1998)). "Not all factors are created equal, and their relative weight varies based
on the context of a particular case." *Id.* (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137, 1145 (9th Cir. 2011)).

The *Sleekcraft* factors are as follows: (1) strength of the mark, (2) proximity of the goods, (3)
similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods
and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark,
and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.3d at 348–49. Factors 2 and 3
(proximity of the goods and similarity of the marks, respectively) are "particularly probative." *Stone
Creek*, 875 F.3d at 432 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986)).

i.  **Plaintiff's Mark is Suggestive; There Is Inadequate Evidence of Strengthening
to Entitle That Suggestive Mark to Anything More Than Weak Protection**

"Trademarks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." *M2
Software*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,
768 (1992)). "A generic mark is the least distinctive, and an arbitrary or fanciful mark is the most
distinctive." *Id.* (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000)). "The
more distinctive a mark, the greater its conceptual strength; in other words, a mark's conceptual strength
is proportional to the mark's distinctiveness." *Id.*

The parties agree that Plaintiff's mark is suggestive. Pl.'s Updated Opp'n to Def.'s Mot. for Summ.
J. (hereinafter "Updated Opp.") 15, ECF No. 80 (explaining that "[t]he parties agree that the
PUNCHBOWL Mark is suggestive"); Def.'s Updated Reply ISO Def.'s Mot. for Summ. J. (hereinafter
"Updated Reply") 11 (arguing that "Plaintiff's mark remains a presumptively weak suggestive mark").
Suggestive marks are "deemed inherently distinctive and are entitled to protection." *Two Pesos*, 505 U.S.
at 768. Because suggestive marks sit in the middle of the "conceptual distinctiveness spectrum," they are

| Initials of Preparer | : PMC |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|----------|------------------------|------|------------------|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

entitled to more protection than distinctive marks but less protection than arbitrary marks. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126 (9th Cir. 2014). This middle-of-the-spectrum positioning leaves suggestive marks "still 'presumptively weak.'" *Id.* (quoting *Brookfield Commc'ns Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999)). But a suggestive mark can be strengthened by factors such as extensive advertising, length of exclusive use, and public recognition. *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002).

Plaintiff argues that its mark is entitled to strengthened protection because it has expended significant sums promoting its mark.[9] Updated Opp. 16. According to Plaintiff, "Punchbowl's substantial investment and longstanding marketing efforts over the past eighteen years have increased public recognition of its already suggestive mark, further bolstering the strength of the Punchbowl mark." Pl.'s Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Original Opp.") 18, ECF No. 55. These investments include "various digital channels, including through its website, via search engines such as Google and Bing, and through social media services such as Facebook, X (Twitter), Instagram, Pinterest, and LinkedIn." Douglas Decl. ¶ 6, ECF No. 55-2.

Defendant cites several cases to argue that Plaintiff has failed to establish that its advertising has resulted in an actual strengthening of its mark. Original Reply 9–10. First, Defendant cites *Harman Int'l Indus., Inc. v. Jem Access., Inc.*, 668 F. Supp. 3d 1025, 1041 (C.D. Cal. 2023), for the proposition that attestations from Plaintiff's executives about the extent of their advertising spending are entitled to low probative value. The *Harman* Court offered two reasons for assigning low value to such attestations: (1) such expenditures were not "tied . . . to any evidence that such efforts have been effective" in making consumers associate the mark with Plaintiff's services, and (2) such attestations are "based on the statements of [the plaintiff's] executives, and thus [do] not provide insight into actual consumer views." 668 F. Supp. 3d at 1041. Defendant also cites *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995), for the proposition that evidence of a mark's strength based on the attestations of those personally connected to the mark are worth little weight. "Trademark

---

[9] See note 3 *supra*.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark." *Id.* "Attestations from persons in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public." *Id.* (quoting *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1297 (9th Cir. 1971)). Defendant's citations are persuasive.

As applied here, the logic of *Harman* and *Self-Realization* support the conclusion that Plaintiff has not offered sufficient evidence that its PUNCHBOWL mark is entitled to strengthened protection. There are only two pieces of evidence of any consequence before the Court on this issue. Updated Opp. 15–16. The first is that Plaintiff has spent a significant amount of money promoting its mark and that Plaintiff has been doing so for close to two decades. The second is that Plaintiff's mark is federally registered. However, Plaintiff has offered no evidence showing that its efforts to strengthen its mark have borne fruit; there is no evidence (beyond a declaration from Plaintiff's founder) that consumers consider Plaintiff's PUNCHBOWL mark to be particularly strong. *See Brookfield*, 174 F.3d 1036, 1058 ("Brookfield, however, has not come forth with substantial evidence establishing the widespread recognition of its mark; although it argues that its strength is established from its use of 'MovieBuff' for over five years, its federal and California state registrations, and its expenditure of $100,000 in advertising its mark, the district court did not clearly err in classifying 'MovieBuff' as weak."). Because Plaintiff's mark is suggestive and there is no evidence of successful strengthening, Plaintiff's mark is only entitled to weak protection.

ii. **The Goods Sold by Plaintiff and Defendant Are Not Proximate, Strongly Weighing Against a Finding of Likelihood of Confusion**

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Network Automation*, 638 F.3d at 1150 (quoting *Brookfield*, 174 F.3d at 1055). "[T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638 F.3d at 1150 (citing

| Initials of Preparer | : | PMC |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|

| Title | *Punchbowl, Inc. v. AJ Press LLC* |
|---|---|

*Sleekcraft*, 599 F.2d at 350).

Plaintiff cites language from the Ninth Circuit that district courts should not "overemphasize differences in principal lines of business." *Brookfield*, 174 F.3d at 1056. "[T]he relatedness of each company's prime directive isn't relevant." *Dreamwerks*, 142 F.3d at 1131. But Plaintiff misunderstands the Ninth Circuit's guidance. In *Brookfield*, distinctions drawn by a district court between a website that provided movie information to casual consumers and another website that offered such information to current or aspiring entertainment industry professionals were misguided because "both companies offer products and services relating to the entertainment industry generally, and their principal lines of business both relate to movies specifically and are not as different as guns and toys . . . or computer circuit boards and the Rocky Horror Picture Show." 174 F.3d at 1056 (citing *Toys "R" Us, Inc. v. Feinberg*, 26 F. Supp. 2d 639, 643 (S.D.N.Y. 1998) (comparing toys and guns); *Interstellar Starship Servs. v. Epix, Inc.*, 983 F. Supp. 1331, 1336 (D. Or. 1997) (comparing computer circuit boards and the Rocky Horror Picture Show); *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (concluding that although the parties were not direct competitors, they both provided financial services and that customer confusion could result in light of the similarities between the companies' services)). In *Dreamwerks*, the district court erroneously "emphasized that Dreamwerks has carved out a narrow niche in the entertainment marketplace, while DreamWorks controls a much broader segment. Dreamwerks targets trekkies; DreamWorks targets everyone." 142 F.3d at 1131. The mistake made by the district court in both of those cases was to overly partition a market into segments, such that a firm targeting one segment was not competing with a firm targeting another segment. If the rule against considering "prime directives" was as broad as Plaintiff thinks it is, it would make no sense that the Ninth Circuit has repeatedly instructed that if two companies "did not compete to any extent whatsoever, the likelihood of confusion would probably be remote." *Brookfield*, 174 F.3d at 1056. "A Web surfer who accessed 'moviebuff.com' and reached a web site advertising the services of Schlumberger Ltd. (a large oil drilling company) would be unlikely to think that Brookfield had entered the oil drilling business or was sponsoring the oil driller." *Id.*

Here, all three of the factors used to measure the proximity of goods point to the obvious

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

conclusion that the goods sold by Plaintiff and Defendant are not proximate. First, the products are neither complementary nor similar in use and function (factors 1 and 3 of the proximity analysis). A platform offering tools for online party planning is not at all related to a news publication focusing on insider news from the nation's seat of government. Plaintiff attempts to circumvent this clear conclusion by arguing that "both parties offer digital subscription products providing online communications services." Original Opp. 19. Plaintiff also argues that "in addition to providing news and commentary, Defendant's services include online newsletters, podcasts, videos, as well as 'invites to small member-only dinners, cocktail hours, newsmaker interviews and New York, D.C., and West Coast parties and networking events.'" Original Opp. 20. Defendant rightly points out that Plaintiff's argument about the similarity of their subscription models is unpersuasive: "Gyms, color printers, and movie theaters offer subscription-based pricing. Yet no reasonable consumer would assume a Punchbowl gym, Punchbowl ink cartridges, or Punchbowl moviepass were provided by the same company." Original Reply 4 (footnote omitted). Likewise, the fact that Defendant offers in-person events to its subscribers does not mean that its "event-related services are related to [Plaintiff's] event-related services." Original Opp. 20. There is a significant difference between (1) providing customers the tools to invite people to their own parties and (2) hosting parties to which one's customers are invited. "Car companies, furniture stores, and phone service providers . . . all organize their own events, solicit sponsors, and build brand partnerships. That does not mean that Plaintiff, Mercedes-Benz, Crate & Barrel, AT&T, and [Defendant] offer related services under the Lanham Act." Original Reply 3–4. Additionally, "Plaintiff does not provide evidence of overlapping event sponsors." *Id.* at 3. Plaintiff's argument that some of its users "use its platform to send online invitations to a variety of political-themed events, from political-related conventions, to political leader gatherings, to political roundtable discussions" is unpersuasive. Updated Opp. 14. First, as Defendant points out, these instances are *de minimis*. "As of 2019, Plaintiff claimed to have sent out over 150 million digital invitations and greeting cards, so it is immaterial as a matter of law that 43 of Plaintiff's customers from 2019-2024 organized their own politically themed events." Updated Reply 4 (citation omitted). Second, the fact that some users of Plaintiff's non-political service use it for political purposes does not convert its service into a political service. For example, the use of disposable cups at a political campaign rally does not mean that the producer of those cups operates a political business.

| | | : | |
|---|---|---|---|
| Initials of Preparer | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

The products are not sold to the same class of purchasers. The similarities between purchasers highlighted by Plaintiff are unpersuasive. Plaintiff argues that both parties' businesses "target moderate to high-income households," and then immediately downplays the fact that the business's customer bases have a significant gender divergence; Plaintiff's customers are mostly women, while Defendant's customers are mostly men. Updated Opp. 12–13. Plaintiff also argues that both businesses "target and acquire customers interested in political news." Updated Opp. 13–14. As support for this proposition, Plaintiff cites a Google analytics report that allegedly shows that "over ▓▓▓▓ of [Plaintiff's] current site visitors identify as having interest in 'News & Politics/Avid News Readers/Entertainment News Enthusiasts.'" *Id.* Plaintiff slightly mischaracterizes the document. The Google analytics report does not show how individuals identify **themselves**; rather, these interests are determined by Google, and Plaintiff does not know how Google arrives at its assessments. Marenberg Decl., Ex. 11 (Google Analytics Report), ECF No. 83-3. Further, the document contains data about individuals who **visit** Plaintiff's site and not product purchasers; the document itself indicates that $0.00 in revenue was generated from any of the site visitors analyzed. *Id.* Regardless, the Court finds that this line of argument misses the point. The relevant inquiry is not whether there is any overlap between those individuals who want to use an online platform to invite their children's friends to a birthday party and those who want to stay informed on the latest wheeling-and-dealing happening in the Senate Finance Committee; the nature of the human experience is that we contain multitudes. But the parties' services appeal to different types of consumers acting as agents of consumption in different contexts. No one who sets out to buy party planning services will have their attempted purchase converted into a subscription to a news publication focused on political insiders, **even if** those individuals seeking to plan a party have a separate interest in political news.

Lastly, in *Punchbowl I*, The Ninth Circuit clearly expressed that "[t]he companies' ventures operate in different spaces." That conclusion was in no way based on the *Rogers* test, the cabining of which led the Ninth Circuit to retract *Punchbowl I* and instead reach the decision that it came to in *Punchbowl II*.

In sum, no reasonable jury could find that the services offered by the parties here are proximate. This factor strongly weighs against finding a likelihood of confusion.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

### iii.    The Similarity of the Marks Slightly Favors Finding a Likelihood of Confusion

"Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351 (citing *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 638 (9th Cir. 1963)). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054 (citing *Dreamwerks*, 142 F.3d at 1131; *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993)). "Similarities are weighed more heavily than differences." *Goss*, 6 F.3d at 1392 (citing *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987)). "Marks should be considered in their entirety as they appear in the marketplace . . . ." *Entrepreneur Media*, 279 F.3d at 1144.

While similarity of the marks "will always be important," it is not inherently dispositive. *Brookfield*, 174 F.3d at 1045. "Even where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion - and thus no trademark infringement - if the alleged infringer is in a different geographic area or in a wholly different industry." *Id.* (citing *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 515–16, 521–22 (C.C.P.A. 1980)).

With regards to sight, the parties' marks are displayed in visually distinct ways. For example, Plaintiff typically displays its PUNCHBOWL mark in all lower-case letters (as in, "punchbowl"). By contrast, Defendant displays its PUNCHBOWL NEWS mark in all upper-case letters (as in, "PUNCHBOWL NEWS"). Both marks are also frequently displayed next to their respective logos, which do not resemble one another. Plaintiff's logo depicts a white ladle on an orange background, while Defendant's logo depicts an upside-down U.S. Capitol building filled with purple/pink punch.

Evaluating the similarity of sound between the marks lends some support to Plaintiff. Both services use the word 'punchbowl' in their names; therefore, they sound similar. Defendant's mark, however, adds the word 'news.' And in *Punchbowl I*, the Ninth Circuit found that the inclusion of this additional word created a meaningful distinction between the marks: "We reject [Plaintiff]'s assertion that [Defendant]'s

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

use of the mark with the word 'News' 'does nothing to distinguish' Punchbowl News from Punchbowl's use of the mark. 52 F.4th at 1101. The Court finds this reasoning persuasive.[10] But Plaintiff argues further that "Defendant's mark as it is routinely used is nearly identical to Plaintiff's PUNCHBOWL mark" because "Defendant has frequently used the mark 'PUNCHBOWL' standing alone, both across its websites and throughout the marketplace, and as a result is often referred to as simply 'PUNCHBOWL' by third party news media." Original Opp. 23. Defendant concedes as much. *See* Def.'s Mot. for Summ. J. (hereinafter, "MSJ") 19, ECF No. 50 (noting that, at least sometimes, individuals who intend to refer to Punchbowl News will drop the word 'News' and shorthand their reference to just Punchbowl). *See also Newport Pac. Corp. v. Moe's Sw. Grill, LLC*, No. 05-995-KI, 2006 U.S. Dist. LEXIS 74481, 2006 WL 2811905, at *34 (D. Or. Sep. 28, 2006) (assuming that the shortening of a mark will occur for the purposes of evaluating a summary judgment motion).

The Court is persuaded by the reasoning in *Newport Pacific Corp. v. Moe's Southwest Grill, LLC*, No. 05-995-KI, 2006 U.S. Dist. LEXIS 74481, 2006 WL 2811905 (D. Or. Sep. 28, 2006), which found that similarities between shortened names slightly weighs in favor of a likelihood of confusion. In that case, Mo's Restaurants sued Moe's Southwest Grill for trademark infringement. The *Newport* court noted that "[t]he marks used in the logos . . . are not similar at all due to the vastly different fonts and, of course, the jalapeno pepper [used as an apostrophe in Moe's logo]." *Id.* at *35–36. However, "[t]he shortened form of the marks are identical when spoken and very similar when used in print without the logo font." *Id.* at *36. To the *Newport* court, the result of this analysis was that "this factor slightly favor[ed] plaintiffs." *Id.* As applied here, Plaintiff and Defendant have marks that are different when used in full – PUNCHBOWL and PUNCHBOWL NEWS. Moreover, when these marks are used with their respective logos and color schemes, they look nothing alike. However, the parties do have identical marks when those marks are shortened; this is true both orally and in writing (assuming a non-logo font is used). The evidence in the record suggests that such shortening happens. Because the Court must weigh similarities between marks as more significant than differences, this factor "slightly" favors Plaintiff. *Id.*

---

[10] Consider, for example, the meaningful distinction between Apple Records and Apple Inc. (formerly Apple Computer, Inc.). Consumers are shrewd enough to be aware that, sometimes, the names of unrelated things sound similar.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

 

 

 

     **iv.**    **Plaintiff Has Offered No Valid Evidence of Actual Confusion; This Factor is
Neutral**

"Evidence of actual confusion is strong evidence that future confusion is likely, . . . but the absence
of such evidence is not dispositive." *Goss*, 6 F.3d at 1393 (citing *Nutri/System, Inc. v. Con-Stan Indus.*,
809 F.2d 601, 606 (9th Cir. 1987); *Eclipse Assocs. v. Data Gen. Corp.*, 894 F.2d 1114, 1118 (9th Cir.
1990)). "To constitute trademark infringement, use of a mark must be likely to confuse an *appreciable*
number of people as to the source of the product." *Entrepreneur Media*, 279 F.3d at 1151 (citing *Int'l
Ass'n. of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir.
1996)). "That there are a few consumers who do not pay attention to obvious differences, and assume
common sources where most other people would not, may not demonstrate the requisite likelihood of
confusion." *Id.*

"Proving actual confusion is difficult . . . and the courts have often discounted such evidence
because it was unclear or insubstantial." *Sleekcraft*, 599 F.2d at 352. *See also Carter-Wallace, Inc. v. P&G
Co.*, 434 F.2d 794, 800 (9th Cir. 1970) (noting that complaint letters are not evidence of actual confusion);
*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 673 F. Supp. 3d 1017, 1032 (D. Ariz. 2023) (noting
that 236 logged calls were merely *de minimis* evidence of isolated incidents of confusion because hundreds
of thousands of consumers were exposed to the situation that created the potential for confusion). *Cf.
Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) (holding that an expert
report showing actual confusion in at least 20% of consumers was sufficient to preclude summary
judgment).

It is important to be precise about the type of confusion that trademark law seeks to prevent because
not all confusion offends trademark law. The relevant confusion is whether members of the buying public
would mistakenly purchase one party's product because they believed it to be the other party's product.
*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC(ANx), 2013
U.S. Dist. LEXIS 24824, 2013 WL 655314, at *28 (C.D. Cal. Feb. 21, 2013) (citing *Echo Drain v.*

 

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

*Newsted*, 307 F. Supp. 2d 1116, 1126 (C.D. Cal. 2003)). *See also Sunenblick v. Harrell*, 895 F. Supp. 616, 631 (S.D.N.Y. 1995) (citing *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582–83 (2d Cir. 1991)) ("[T]he relevant confusion to be avoided is that which affects purchasing decisions, and not confusion generally."). Mistaken inquiries about affiliation which are easily clarified do not constitute evidence of actual confusion for the purposes of the *Sleekcraft* test. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.7 (9th Cir. 2002) (citing *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1451 (9th Cir. 1988)) (explaining that, standing alone, evidence showing inquiries about the relatedness of two parties is not sufficient to show actual confusion).

Here, Plaintiff cites to "about 100 examples of customers contacting Punchbowl and/or Punchbowl News, believing that they are either one in the same company, or at least affiliated with one another." Updated Opp. 6. But these instances are not legally significant. All instances of confusion were easily remedied. Plaintiff sent the same message to multiple individuals who mistakenly contacted them: "You have reached out to Punchbowl, Inc., a platform for online invitations and digital greeting cards. It seems like you intended to reach out to Punchbowl News, which is a completely different company. We are in no way affiliated with Punchbowl News so if you would like to reach them, you'll need to contact them directly." Fader Decl., Ex. A (Misdirected Communications) at PUNCHBOWL_00000099, ECF No. 77-3; *see also, e.g., id.* at PUNCHBOWL_00000111, PUNCHBOWL_00000128, PUNCHBOWL_00000172, PUNCHBOWL_00000195.[11] Moreover, Plaintiff has not identified a single customer who purchased (or came close to purchasing) the wrong product as a result of confusion between the parties' services. "The fact that a plaintiff can point to some evidence of confusion in the abstract does not automatically mean that such confusion affects actual purchasing decisions." *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1148 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) (citing *Lang*, 949 F.2d at 583). "Indeed, '[b]efuddlement is part of the human condition. No matter how clear the

---

[11] The record contains variations on this template, but the differences are negligible. *E.g.*, Fader Decl., Ex. A (Misdirected Communications) at PUNCHBOWL_00000208, ECF No. 77-3 ("Happy to help! You have reached Punchbowl Support Center. Punchbowl (https://www.punchbowl.com/) is an online invitations and digital greeting cards service. From what I've seen on the screenshot you attached, it looks like you're trying to reach out for Punchbowl News, not us. If you need any help regarding Punchbowl News membership, you can try to contact them through this mail: members@punchbowl.news.").

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

markings, no matter how different the names, no matter how distinctive the bottles, some confusion is inevitable.'" *Id.* (quoting *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 912 (7th Cir.1996)). The incidents of confusion that Plaintiff points to are legally insignificant.

Even if the above communications were legally significant, their quantity is *de minimis*. 100 instances of confusion carry little weight when properly contextualized against the number of support inquiries that the parties receive annually. Plaintiff receives "thousands" or "tens of thousands" of help requests per year, and Defendant has received over 10,000 help inquiries since its launch in 2021. Marenberg Decl., Ex. 11 (Plaintiff Rule 30(b)(6) Deposition) at 74:6–13, ECF No. 83-3; Marenberg Decl., Ex. 26 (Defendant Rule 30(b)(6) Deposition) at 121:1–6. Out of thousands of communications, only approximately 100 were misdirected; that amount is insignificant. *Nutri/Sys.*, 809 F.2d at 606 (affirming district court's decision that "in light of both parties' high volume of business, the misdirection of several letters and checks proved insignificant"); *Lerner*, 673 F. Supp. 3d at 1032 (noting that 236 logged calls were merely *de minimis* evidence of isolated incidents of confusion because hundreds of thousands of consumers were exposed to the situation that created the potential for confusion).

Because there is no evidence of the sort of actual confusion that is legally significant, this factor is neutral in the Court's analysis. *See Pom Wonderful*, 775 F.3d at 1132 ("The absence of any proof regarding actual confusion, the defendant's intent, and product expansion does not affect our likelihood-of-confusion analysis.").

     **v.**    **There Is No Evidence of Anything More Than a Superficial Overlap in the Marketing Channels Used by the Parties; This Factor is Neutral**

"In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130 (citing *Nutri/System*, 809 F.2d at 606). "Marketing channels can converge even when different submarkets are involved so long as 'the general class of . . . purchasers exposed to the products overlap.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 353). The Court has already addressed whether the general class of purchasers

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

overlap. *See* Section V-A-ii *supra*. Therefore, analysis under this subsection will focus on the marketing channels used by the parties.

Here, Plaintiff argues that "the parties both appear to market and promote their respective web-based services through the same and overlapping online channels, including online search engines like Google and Bing, and through social media sites like Facebook, Instagram, Linked[I]n, and X (Twitter)." Original Opp. 18–19. Of course they do. For better or worse, to market at all in the modern economy is to market using these services. *See Playboy*, 354 F.3d at 1028 ("PEI and the advertisers use identical marketing channels: the Internet. . . . Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight."); *Network Automation*, 638 F.3d at 1151 ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."). This shared use of the Internet as a marketing channel does not constitute the sort of similarity contemplated by *Sleekcraft*.[12] In that case, the Ninth Circuit found "parallel" marketing channels existed because each party sold their goods through authorized retail dealers in diverse localities, each party used the same sales methods, each party sold goods at the same price range, each party advertised extensively, and retail dealers promoted the parties' goods in smaller boat shows and by advertising in local newspapers and classified telephone directories. *Sleekcraft*, 599 F.2d at 353. In today's world, a shared use of online marketing is not enough to constitute overlapping marketing channels; a more specific level of overlap is required.

> vi.    **The Type of Goods and Purchaser Care Factor Tilts Against Finding a Likelihood of Confusion**

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353 (citing *HMH Publishing Co. v. Lambert*,

---

[12] Plaintiff cites to *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002), to argue that it is legally meaningful that both parties advertise over the Internet. But *Entrepreneur Media* is 22 years old. The world of digital commerce has changed since that case was decided, as reflected in the more recent Ninth Circuit cases cited in this opinion.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

482 F.2d 595, 599 n. 6 (9th Cir. 1973)). "Although the wholly indifferent may be excluded . . . the standard includes the ignorant and the credulous." *Id.* (citing *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 358 (9th Cir. 1948)). "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id.* (citing *American Drill Bushing Co. v. Rockwell Mfg. Co.*, 342 F.2d 1019, 1019 (C.C.P.A. 1965)). "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id.* (citing *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). Conversely, "[c]onsumer care for inexpensive products is expected to be quite low." *Playboy*, 354 F.3d at 1028 (citing *Brookfield*, 174 F.3d at 1060). But "[n]o clear standard exists for analyzing moderately priced goods, such as non-designer clothing." *Trader Joe's Co. v. Trader Joe's United*, No. 2:23-cv-05664-HDV-MARx, 2024 U.S. Dist. LEXIS 15511, 2024 WL 305697, at *18 (C.D. Cal. Jan. 12, 2024) (quoting *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005), *superseded by statute on other grounds*).

The Court is not convinced that this *Sleekcraft* factor bears much, if any, weight in the present analysis given how disparate the services offered by Plaintiff and Defendant are. *See Playboy*, 345 F.3d at 1028. In *Playboy*, both parties were selling pornography; the Ninth Circuit supposed that "the average searcher seeking adult-oriented materials on the Internet is easily diverted from a specific product he or she is seeking if other options, particularly graphic ones, appear more quickly." *Id.*; *see also Trader Joe's*, 2024 U.S. Dist. LEXIS 15511, 2024 WL 305697, at *19 ("Beyond price, the context surrounding purchase of these goods shows that a reasonable buyer exercising ordinary caution would not be confused."). Here, no matter how cheap the services, it strains the mind's imaginative faculties to hypothesize that an individual looking to purchase a subscription to an online event-planning and invitation service could be diverted into purchasing a subscription to an online political news site based on the price of the services; the 'wholly indifferent' are excluded from the applicable standard of a typical buyer exercising ordinary caution.

But for the sake of completeness, the Court performs the analysis anyway. There is only evidence in the record concerning the cost of Defendant's services, which range from annual rates of $350.00–$1,200.00. Reply 10. The record does not reveal the cost of a subscription to Plaintiff's service, but

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Plaintiff's website shows annual subscription costs ranging from $47.88–$191.88.[13] These amounts are likely best characterized as moderately priced goods; they cost more than a single bottle of pomegranate juice as in *Pom Wonderful*, but less than a speedboat as in *Sleekcraft*. These moderate prices are high enough to prompt a consumer to, at the very least, check what kind of service they are subscribing to. *Cf. Pom Wonderful*, 775 F.3d at 1127 (low consumer care for beverages that cost between $1.99 and $2.49).

Additionally, the fact that these services are both subscriptions—which involve recurring, indefinite transactions—suggests that consumers are likely to exercise a higher degree of care when signing up for them. *Cf. Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1178 (9th Cir. 2010) ("Consumers who use the internet for shopping are generally quite sophisticated about such matters and won't be fooled into thinking that the prestigious German car manufacturer sells boots at mercedesboots.com, or homes at mercedeshomes.com, or that comcastsucks.org is sponsored or endorsed by the TV cable company just because the string of letters making up its trademark appears in the domain."); *Network Automation*, 638 F.3d at 1152 ("We have recently acknowledged that the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace.").

> **vii.    Defendant Has Provided Evidence That It Did Not Intend to Infringe on Plaintiff's Mark; Regardless, this Factor is Neutral and Does Not Weigh Against Plaintiff**

An intent to copy or appropriate is not required to establish a likelihood of confusion. *GoTo.com*, 202 F.3d at 1208. The Ninth Circuit has characterized a defendant's intent as being of only "minimal importance" to the likelihood of confusion analysis. *Id.* (citing *Brookfield*, 174 F.3d at 1059). With that

---

[13] Based on the lowest discounted rate shown for a "Plus" membership ($3.99/month) and the highest undiscounted rate shown for a "Platinum" membership ($15.99/month). This information may be accessed at the following URL: https://perma.cc/WRZ7-MTPZ. The Court may take judicial notice of this publicly available website. *See Trader Joe's*, 2024 U.S. Dist. LEXIS 15511, 2024 WL 305697, at *18–19 (taking judicial notice of the cost of goods listed on a party's website because that information was not in the record).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|----------|----------------------|------|-----------------|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

said, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157–58 (9th Cir. 1963)).

The evidence in the record overwhelmingly supports Defendant's claim that the name "Punchbowl News" was chosen to evoke the U.S. Capitol building because of the Secret Service's use of 'Punchbowl' as a codename for that structure. It is unclear what possible benefit Defendant could have obtained by choosing to associate its political news site with an online invitation company.

This factor is neutral in the Court's analysis. *See GoTo.com*, 202 F.3d at 1208 ("For even if we . . . concluded that Disney was as innocent as a fawn with *no* intent to copy or appropriate GoTo's logo, it would prove nothing since no such intent is necessary to demonstrate a likelihood of confusion. We need inquire no further into Disney's intent.").

> **viii.    Plaintiff Has Offered No Evidence of Product Expansion by Defendant; This Factor is Neutral and Does Not Weigh Against Plaintiff**

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (citing Restatement of Torts § 731(b) & Comment c). Like evidence of a defendant's intent to confuse customers, "evidence of product expansion is not required for a finding of likelihood of confusion." *Pom Wonderful*, 775 F.3d at 1132 (citing *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011)).

Plaintiff unconvincingly argues that there is a likelihood of future expansion because Defendant has a growing events business. Original Opp. 22. "The implication that *Punchbowl News*' live events, at which it will interview, for example, the Chair of the House Financial Services Committee, are a stepping stone to subscriptions for customizable event invitations, directories for local DJs, and co-sponsorship of family outings at Legoland, is not credible." Original Reply 11.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

This factor is neutral and does not weigh against Plaintiff. *See Pom Wonderful*, 775 F.3d at 1132 ("The absence of any proof regarding actual confusion, the defendant's intent, and product expansion does not affect our likelihood-of-confusion analysis.").

      **ix.**    **Weighing of the *Sleekcraft* Factors**

The *Sleekcraft* factors are not mechanically tallied. *See Pom Wonderful*, 775 F.3d at 1132 ("Sheer numerosity of Sleekcraft factors, however, is not by itself dispositive of the ultimate likelihood-of-confusion determination."); *Network Automation*, 638 F.3d at 1154 (tailoring the court's focus to specific *Sleekcraft* factors "[g]iven the nature of the alleged infringement here"). Moreover, the *Sleekcraft* factors are not exhaustive. *Network Automation*, 638 F.3d at 1153–54 (citing *Sleekcraft*, 599 F.2d at 348 n.11).

The following *Sleekcraft* factors are the most important factors to determine the likelihood of confusion in this case: (1) the proximity of the goods, and (2) the similarity of the marks. *See Stone Creek*, 875 F.3d at 432 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986)) (noting that proximity of the goods and similarity of the marks are "particularly probative" factors in the likelihood of confusion analysis). Here, the goods are not at all proximate; this factor strongly weighs in Defendant's favor. The marks are, in certain contexts and when shortened, similar; this factor slightly weighs in Plaintiff's favor. The remaining *Sleekcraft* factors are either neutral or slightly favor Defendant. Plaintiff's failure to provide evidence of certain factors does not justify weighing those factors against Plaintiff.

Ultimately, the dissimilarity and lack of proximity between the services provided by Plaintiff and Defendant carry the day. This conclusion is the obvious one. At worst, some consumers might mistakenly contact one party when they mean to contact the other party. A misaddressed email, Facebook comment, or X post is a negligible friction that stems from the fact that both parties have named their services after a common word. No reasonable consumer would purchase a subscription to a party planning software platform when they intended to subscribe to a news website (or vice versa) because they thought they came from the same source. No reasonable jury could find otherwise. It is therefore appropriate to

|  |  | : |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

conclude, at the summary judgment stage, that there is no likelihood of confusion between the parties' services.

### B. With No Likelihood of Confusion, All of Plaintiff's Claims Fail

A claim for federal trademark infringement under 15 U.S.C. § 1114 requires that a defendant's "use is likely to cause confusion, or to cause mistake, or to deceive." § 1114(1)(a). With no likelihood of confusion, Plaintiff's first claim (federal trademark infringement) fails.

A claim for false designation of origin under 15 U.S.C. § 1125 similarly requires that a defendant's use of the challenged mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." § 1125(a)(1)(A). With no likelihood of confusion, Plaintiff's second claim (false designation of origin) fails.

"Likelihood of confusion is the basic test for common law trademark infringement, and the same standard for likelihood of confusion is used for both common law trademark infringement and federal trademark infringement under 15 U.S.C. § 1114." *AAA, Inc. v. AAA Auto Body & Repair, Inc.*, No. 14-cv-04131-KAW, 2015 U.S. Dist. LEXIS 25172, at \*13 (N.D. Cal. Feb. 9, 2015) (citing *Thane Int'l., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 n.3 (9th Cir. 2002)). With no likelihood of confusion, Plaintiff's third claim (common law trademark infringement) fails.

"The Ninth Circuit has consistently held that 'actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims made under the Lanham Act.'" *Simple Design Ltd. v. Funsol Techs. PVT Ltd.*, No. CV 22-04352-DSF (MARx), 2023 U.S. Dist. LEXIS 166799, 2023 WL 6469551, at \*14 (C.D. Cal. Sep. 18, 2023). Because there is no likelihood of confusion and because Plaintiff's claim for federal trademark infringement fails, Plaintiff's fourth and final claim (violation of Cal. Bus. & Prof. Code § 17200) also fails.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03010-SVW-MAR | Date | August 22, 2024 |
|---|---|---|---|
| Title | *Punchbowl, Inc. v. AJ Press LLC* | | |

Defendant is entitled to summary judgment in its favor on all of Plaintiff's claims.

**VI.    Conclusion**

Having applied the *Sleekcraft* factors, the Court finds that no reasonable jury could find that there is a likelihood of confusion between Plaintiff's service and Defendant's service. All of Plaintiff's claims fail without a likelihood of confusion. Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |